# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA
# MIAMI DIVISION

| | |
|---|---|
| VERONICA DORADO, individually and on behalf of a class of similarly situated persons,<br><br>Plaintiff,<br><br>v.<br><br>BANK OF AMERICA, N.A.,<br><br>Defendant. | Civil Action<br><br>File No. _____<br><br>CLASS ACTION<br>JURY TRIAL |

## COMPLAINT

Brett M. Amron
BAST AMRON LLP
One Southeast Third Ave Ste 1400
Miami, FL 33131

Steven Rosenwasser
Naveen Ramachandrappa
BONDURANT, MIXSON & ELMORE, LLP
1201 W Peachtree St NW Ste 3900
Atlanta, GA 30309
*Pro Hac Pending*

Adam Hoipkemier
Matthew Wetherington
THE WERNER LAW FIRM
2860 Piedmont Rd NE
Atlanta, GA 30305
*Pro Hac Pending*

Jeffrey W. DeLoach
Kevin E. Epps
FORTSON, BENTLEY AND GRIFFIN, P.A.
2500 Daniell's Bridge Rd Bldg 200, Ste 3A
Athens, GA 30606
*Pro Hac Pending*

**Attorneys for Plaintiff**

## TABLE OF CONTENTS

Summary ........................................................................................................................................ 1

Parties............................................................................................................................................. 2

Jurisdiction..................................................................................................................................... 2

Fact Allegations ............................................................................................................................. 3

      A.      Borrowers Pay For And The FHA Supplies Mortgage Insurance To Lenders............................................................................................................... 3

      B.      The FHA Prohibits Lenders From Charging Post-Payment Interest On FHA-Insured Loans, Unless They First Provide The FHA-Approved Form. ................................................................................................................... 3

      C.      Lenders Have Collected Billions Of Dollars In Post-Payment Interest On FHA-Insured Loans. ....................................................................................... 7

      D.      Bank of America Did Not Provide The FHA-Approved Form To Veronica Dorado Before Collecting Post-Payment Interest................................................... 9

Class Action Allegations.............................................................................................................. 11

Count One – Breach Of Contract................................................................................................. 13

Relief Requested .......................................................................................................................... 14

**Summary**

1. Defendant Bank of America, N.A. has a systematic practice of collecting "post-payment" interest on loans insured by the Federal Housing Administration without first complying with the uniform provisions of the promissory notes and the FHA regulations governing these loans. As a result, Bank of America has collected hundreds of millions of dollars in post-payment interest in an unlawful manner, and through this breach of contract class action, Plaintiff seeks to recover damages on behalf of herself and the class.

2. Post-payment interest refers to interest that a lender collects **after** the borrower has paid the **full** unpaid principal of the loan. For example, if a borrower pays off the loan in full on August 5, and the lender continues collecting interest for the remainder of August, the interest collected after August 5 is post-payment interest.

3. A promissory note governs the contractual relationship between borrowers and lenders, and lenders issuing FHA-insured loans must include certain uniform provisions in the notes for these loans. Among other things, the uniform provisions provide that the lender may collect post-payment interest for the remainder of the month in which full payment is made, but only "**to the extent** . . . **permitted by** [**FHA**] **regulations**." FHA Multistate Adjustable Rate Note, attached as Exhibit 1, at 2.

4. The FHA regulations prohibit lenders from collecting post-payment interest unless two strict conditions are met: (a) the borrower makes payment of the full unpaid principal on a day "**other than** [the first of the month]" and (b) the lender must provide the borrower with "**a form approved by the** [**FHA**]." 24 C.F.R. § 203.558 (c) (2014) (emphasis added).

5. The FHA requires use of its approved form because the form explains to borrowers, at the appropriate time, that the lender is seeking to collect post-payment interest, the terms under which the lender can collect post-payment interest, and how they can avoid such charges. *See* HUD Housing Handbook, Administration of Insured Home Mortgages, 4330.1 REV-5 Appendix 8 (C), attached as Exhibit 2.

6. Although both the uniform provisions of the note and the FHA regulations prohibit lenders from collecting post-payment interest unless they provide borrowers with the FHA-approved form, Bank of America did not use the FHA-approved form. Instead, Bank of America used its own unauthorized form, which is not approved by the FHA and does not fairly disclose the terms under which Bank of America can collect post-payment interest or properly

explain how borrowers can avoid such charges.

7. Because Bank of America did not use the FHA-approved form as required by both the uniform provisions of the note and the FHA regulations, Bank of America had no right to collect post-payment interest from borrowers. Yet, Bank of America has unlawfully collected hundreds of millions of dollars in post-payment interest from Plaintiffs and the class, and through this class action, Plaintiff seeks to recover damages for herself and the class.

**Parties**

8. Plaintiff Veronica Dorado is a citizen of California, residing in Lynwood, California. In 2013, Dorado paid off an FHA-insured loan held by Defendant Bank of America, N.A.

9. Defendant Bank of America, N.A. is a national banking association. Bank of America held FHA-insured loans for Dorado and other class members, for which class members have paid the full unpaid principal of the loans.

10. Bank of America's Articles of Association state that its main office shall be in Charlotte, North Carolina. Thus, Bank of America is a citizen of North Carolina. *See* 28 U.S.C. § 1348.

**Jurisdiction**

11. This Court has subject matter jurisdiction over this class action. Dorado is a citizen of a State different from Bank of America, and so are many other class members. *See* 28 U.S.C. § 1332 (d)(2). And the claims of the class in the aggregate exceed the minimally required amount in controversy. *See* 28 U.S.C. § 1332 (d)(6). In fact, the amount in controversy involves hundreds of millions of dollars.

12. This Court has personal jurisdiction over Bank of America. *See* Fla. Stat. § 48.193. Among other things, Bank of America conducts business in Florida, holds mortgages on real property in Florida, has breached contracts with persons located in Florida, has caused injuries in Florida, and generally engages in substantial activity in Florida.

13. Bank of America can be served through the Secretary of State of Florida. *See* Fed. R. Civ. P. 4 (h); Fla. Stat. § 48.181. Bank of America can also be served through its agents at a branch office located at One Southeast Third Avenue, Miami, Florida 33131.

14. This Court is also a proper venue for this action. Bank of America is subject to personal jurisdiction in the Southern District of Florida, which "[f]or purposes of venue," means

that Bank of America resides in this judicial district. 28 U.S.C. § 1391 (b)(1), (c).

## Fact Allegations

A.     **Borrowers Pay For And The FHA Supplies Mortgage Insurance To Lenders.**

15.     Department of Housing and Urban Development is a department within the executive branch of the United States government. HUD was established in 1965 by the Department of Housing and Urban Development Act. *See* 42 U.S.C. § 3532. Federal Housing Administration was established in 1934 by the National Housing Act of 1934. *See* 12 U.S.C. § 1701. When HUD was created, Congress re-organized the FHA as an agency within HUD.

16.     Among other things, the FHA provides mortgage insurance to FHA-approved lenders for loans on single-family homes. *See* U.S. Dep't of Housing and Urban Devt., http://portal.hud.gov/hudportal/HUD?src=/program_offices/housing/fhahistory. The FHA is the largest insurer of mortgages in the world, currently insuring approximately 4.8 million single family homes. *Id.*

17.     Mortgage insurance protects lenders against losses that are caused by borrower defaults. The lenders bear less risk on FHA-insured loans because the FHA will pay lenders in the event of a borrower default. *Id.* In exchange for FHA mortgage insurance, borrowers pay an upfront mortgage insurance premium and also make monthly premium payments.

18.     To be eligible to receive FHA mortgage insurance, lenders must be pre-approved by the FHA. Lenders must also comply with FHA regulations, including but not limited to the regulations contained in Title 24, Subtitle B, Chapter II, Subpart B, Part 203 of the Code of Federal Regulations. Among other things, FHA regulations require that, for any FHA-insured loan, the lender must include certain uniform provisions in every promissory note. As a result, each of the approximately 4.8 million FHA-insured loans is documented by a promissory note containing certain uniform provisions.

B.     **The FHA Prohibits Lenders From Charging Post-Payment Interest On FHA-Insured Loans, Unless They First Provide The FHA-Approved Form.**

19.     One uniform provision lenders must include in the promissory note for every FHA-insured loan addresses the borrower's promise to pay interest for unpaid principal:

> 2.     BORROWER'S PROMISE TO PAY; INTEREST
> In return for a loan received from Lender, Borrower promises to pay the principal sum of _____ Dollars (U.S. $ _____), plus interest, to the order of Lender. **Interest will be charged on unpaid principal**, from the date of

disbursement of the loan proceeds by Lender, at the rate of _____ percent ( _____ %) per year **until the full amount of the principal has been paid**.

FHA Multistate Adjustable Rate Note at 1 (emphasis altered).

20. Under this provision, the borrower agrees to pay interest only on the **unpaid principal**, and once the borrower pays the full unpaid principal, interest no longer accrues. This makes sense because, by definition, interest is calculated from the amount of the outstanding principal loaned by the lender to the borrower.

21. In fact, when lenders issue loans backed by Fannie Mae, Freddie Mac, and the Department of Veterans Administration, interest charges stop on the day the borrower pays the full unpaid principal of the loan, and the lender cannot collect any post-payment interest.

22. However, for nearly thirty years, the FHA maintained a policy different from the other government agencies. For mortgages insured by the FHA on or after August 2, 1985 and through January 20, 2015, the FHA allows lenders, subject to strict limitations, to collect interest even after the borrower has paid the full amount of the unpaid principal.

23. This type of interest is often referred to as "post-payment" interest. Post-payment interest is interest that a lender collects even after the borrower has paid the full unpaid principal. It is also considered a "penalty" because, at that point, the borrower owes the lender **nothing**; the full unpaid principal has been paid, and the lender has all the money it was owed. The lender is penalizing the borrower for paying the loan before the maturity date.

24. Although the FHA permits lenders to collect post-payment interest, the FHA has imposed strict limitations on the lender's ability to do so. The FHA prohibits lenders from collecting post-payment interest unless the lender complies with FHA regulations. And the FHA regulations require the lender to provide the borrower with the FHA-approved disclosure form.

25. The limitations on post-payment interest are reflected in a uniform provision of the note, which again must be included in the note for every FHA-insured loan:

> 6.  BORROWER'S RIGHT TO PREPAY
> **Borrower has the right to pay the debt** evidenced by this Note, in whole or in part, **without charge or penalty, on the first day of any month**. Lender shall accept prepayment **on other days** provided that **Borrower pays interest** on the amount prepaid for the remainder of the month **to the extent required by Lender and permitted by regulations of the Secretary**. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of

the monthly payment unless Lender agrees in writing to those changes.

FHA Multistate Adjustable Rate Note at 2-3 (emphasis altered).[1]

26.   Under this provision, the borrower has the right to prepay the full unpaid principal without charge or penalty on the **first** of the month.  The borrower also has the right to prepay the full unpaid principal on days **other than** the first; provided however that, in such cases, the lender can collect post-payment interest for the remainder of that month **if the lender complies with FHA regulations**.

27.   The relevant FHA regulation is titled "Handling Prepayments" and provides that:

> (a) Notwithstanding the terms of the mortgage, the [lender] may accept a prepayment at any time and in any amount.  **Except as set out below, monthly interest on the debt must be calculated on the actual unpaid principal balance** of the loan.
> . . .
> (c) If the prepayment is offered on other than an installment due date [the first of the month], the [lender] may refuse to accept the prepayment until the next installment due date (the first day of the month), or may require payment of interest to that date, **but only if the [lender] so advises the [borrower], in a form approved by the Commissioner**, in response to the [borrower's] inquiry, request for payoff figures, or tender of prepayment.
> . . .
> (e) If the [lender] fails to meet the full disclosure requirements of paragraphs (b) and (c) of this section, the [lender] may be subject to forfeiture of that portion of interest collected for the period beyond the date that prepayment in full was received and to such other actions as are provided in part 25 of this title.

24 C.F.R. § 203.558 (2014) (emphasis added).

28.   Under this regulation, if payment of the full unpaid principal is made on a day other than the first of the month, and the lender provides the borrower the FHA-approved form, then, and only then, can the lender collect post-payment interest for the remainder of the month in which payment of the full unpaid principal was made.

29.   For mortgages insured on or after August 2, 1985 and through January 20, 2015, the FHA-approved form is Appendix 8 (C) to the HUD Housing Handbook:

MORTGAGEE NOTICE TO MORTGAGOR

---

[1] Dorado's note is an adjustable rate note, and for FHA adjustable notes, the uniform provision regarding the borrower's right to prepay is located at section 6.  For FHA fixed rate notes, the same uniform provision regarding the borrower's right to prepay is located at section 5.  There is no difference in the relevant language.

00375891 DOCX 2                      5 of 15

(In response to prepayment inquiry, request for payoff or tender of prepayment in full)

Mortgagor: _____        Date: _____
Address: _____          Loan #: _____
_____           FHA#: _____

This is in reply to your _____(date)_____ inquiry/request for payoff figures or offer to tender an amount to prepay in full your FHA-insured mortgage which this company is servicing.

This notice is to advise you of the procedure which will be followed to accomplish a full prepayment of your mortgage.

The _____(mortgagee name)_____ will:

(a)   [ ]   accept the full prepayment amount whenever it is paid and collect interest only to the date of that payment; or

(b)   [ ]   only accept the prepayment on the first day of any month during the mortgage term; or accept the prepayment whenever tendered with interest paid to the first day of the month following the date prepayment is received[.]

---

NOTE: It is to your advantage to arrange closings so that the prepayment reaches us on or before (as close to the end of the month as possible) the first work day of the month.

If you have any questions regarding this notice, please contact ____(name and/or department) ___at___(telephone number)___.


_____
Mortgagee

Attachment (Pay off Statement)

HUD Housing Handbook, 4330.1 REV-5 Appendix 8 (C) at 1-2.

30. As HUD explains, "[t]he **basic disclosure** language is necessary because it pertains to the [borrower's] rights under the mortgage." HUD Housing Handbook, Administration of Insured Home Mortgages, 4330.1 REV-5, Chapter 5-1 (C), at 2, attached as Exhibit 3 (emphasis added).

31.     HUD also confirms that the lender "**must disclose** the procedures that must be followed with respect to the payoff and **must explain** how the amount of the prepayment has been determined.  **Otherwise**, **the [lender] must forfeit any interest collected after the date of prepayment**." *Id.* at 6. (emphasis added)

32.     And HUD expressly instructs lenders that "[n]**one of the HUD-required language should be deleted**." *Id.* at 2 (emphasis added).

33.     In sum, pursuant to the uniform provisions of the note and FHA regulations, lenders cannot collect post-payment interest on FHA-insured loans unless (a) the borrower pays the full unpaid principal on a day **other than** the first of the month and (b) the lender has provided the borrower **the FHA-approved form**.  If the lender satisfies both of those requirements, only then can the lender collect post-payment interest for the remainder of the month in which payment of the full unpaid principal was made.

C.      **Lenders Have Collected Billions Of Dollars In Post-Payment Interest On FHA-Insured Loans.**

34.     From August 2, 1985 through January 20, 2015, lenders including Bank of America have collected billions of dollars in post-payment interest.

35.     The National Association of Realtors estimates that "more than 40 percent of FHA borrowers close during the first 10 days of the month, exposing them to at least 20 days of interest payments."  Kenneth R. Harney, *Interest Costs Don't End With Payoff Of FHA Loan*, Chicago Tribune, Apr. 11, 2004, http://articles.chicagotribune.com/2004-04-11/business/0404110057_1_fha-loan-ginnie-mae-fha-borrowers, attached as Exhibit 4.  The NAR further "estimate[s] that during 2003, . . . FHA customers who terminated their loans paid an average of $528 in 'excess interest fees,' a cumulative 'prepayment penalty' to those borrowers of **$587 million**." *Id.* (emphasis added).

36.     "HUD doesn't get the interest, lenders do.  In effect, **lenders are getting interest for money that isn't outstanding**.  This may not sound like a big deal, but according to HUD, such post-payment interest charges cost borrowers **$449 million** in 2012."  Peter Millar, *The Very New Deal: How FHA Mortgages Are Changing For 2015*, The Simple Dollar, Jan. 9, 2015, http://www.thesimpledollar.com/the-very-new-deal-how-fha-mortgages-are-changing-in-2015/, attached as Exhibit 5 (emphasis added).

37.     "This practice . . . has cost consumers staggering amounts, with estimates ranging

into the **hundreds of millions of dollars a year** during periods when mortgage rates were high." Kenneth R. Harney, *FHA Will Stop Lenders From Charging Extra Interest When Homeowners Sell or Refinance*, Washington Post, Sep. 5, 2014, https://www.washingtonpost.com/realestate/fha-will-stop-lenders-from-charging-extra-interest-when-homeowners-sell-or-refinance/2014/09/04/478a2a04-32a6-11e4-8f02-03c644b2d7d0_story.html, attached as Exhibit 6 (emphasis added).

38. "[T]**he clear loser** in the full-month interest policy **is 'the one who can least afford it, the consumer**.'" Harney, Chicago Tribune, Apr. 11, 2004 (emphasis added). "**Hundreds of thousands of home sellers have had their pockets picked** at closings during the past decade: They've been charged interest on their mortgages after their principal debts had been fully paid off." Harney, Washington Post, Sep. 5, 2014 (emphasis added).

39. Meanwhile, "**the true beneficiaries** of the long-standing practice were [the lenders], who could earn interest on the 'float' – the money they collected from borrowers and had free use of until the end of the month, when they had to disburse final interest payments to bond investors." Kenneth R. Harney, *Controversial FHA Payoff Rule to End*, Los Angeles Times, Mar. 30, 2014, http://articles.latimes.com/2014/mar/30/business/la-fi-harney-20140330, attached as Exhibit 7 (emphasis added).

40. All of the relevant government agencies now agree that collecting post-payment interest is an unfair prepayment penalty and is against public policy.

41. On August 26, 2009, the Board of Governors of the Federal Reserve System proposed a rule "to amend Regulation Z, which implements the Truth in Lending Act (TILA)," which regulates prepayment penalties. 74 Fed. Reg. 43232, 43232 (Aug. 26, 2009). The Board stated that "[o]ne such example [of a prepayment penalty] is 'interest charges for any period after prepayment in full is made.' **When the loan is prepaid in full, there is no balance to which the creditor may apply the interest rate**." *Id.* at 43257 (emphasis added).

42. On January 30, 2013, the Consumer Financial Protection Bureau issued a final version of its rule titled "Ability-to-Repay and Qualified Mortgage Standards under the Truth in Lending Act (Regulation Z)." *See* 78 Fed. Reg. 6408, 6408 (Jan. 30, 2013). Regulation Z broadly defines "prepayment penalty" as the "charge imposed for paying all or part of the transaction's principal balance before the date on which the principal is due." *Id*. at 6444.

43. This definition includes "charges resulting from FHA's monthly interest accrual

amortization method." 79 Fed. Reg. 50835, 50835 (Aug. 26, 2014). As CFPB explains:

> [I]t is appropriate to designate higher interest charges for consumers based on accrual methods that treat a loan balance as outstanding for a period of time after prepayment in full as prepayment penalties . . . . In such instances, **the consumer submits a payment before it is due, but the creditor nonetheless charges interest on the portion of the principal that the creditor has already received**. The Bureau believes that charging a consumer interest after the consumer has repaid the principal is the functional equivalent of a prepayment penalty.

78 Fed. Reg. 6408, 6445 (Jan. 30, 2013) (emphasis added).

44. Based on Regulation Z's definition, charges for post-payment interest are now subject to the Truth in Lending Act. *See* 79 Fed. Reg. 50835, 50835 (Aug. 26, 2014); 75 Fed. Reg. 58539, 58586 (Sep. 24, 2010) ("[T]he Board believes that the charging of interest for the remainder of the month in which prepayment in full is made should be treated as a prepayment penalty for TILA purposes, even when done pursuant to the monthly interest accrual amortization method.").

45. In response to those changes by FRB and CFPB, on March 13, 2014, "HUD published a proposed rule in the Federal Register, at 79 FR 14200, to eliminate post-payment interest charges to borrowers resulting from FHA's monthly interest accrual amortization method for calculating interest." 79 Fed. Reg. 50835, 50835. And, on August 26, 2014, HUD issued a final version of its rule titled "Federal Housing Administration (FHA): Handling Prepayments: Eliminating Post-Payment Interest Charges." *Id.*

46. Under the new regulation, "[w]ith respect to FHA-insured mortgages closed on or after January 21, 2015, notwithstanding the terms of the mortgage, the [lender] shall accept a prepayment at any time and in any amount." 24 C.F.R. § 203.558 (a). "Monthly interest on the debt must be calculated on the actual unpaid principal balance of the loan as of the date the prepayment is received, and not as of the next installment due date." *Id.*

47. Although CFPB, FRB, and HUD have now all prohibited post-payment interest charges for FHA-insured mortgages closed on or after January 21, 2015, they **did not** make this change retroactive. "[T]he estimated **7.8 million existing FHA mortgage borrowers** who are not covered by the forthcoming policy change **will continue to be vulnerable** to paying more than they should." Harney, Los Angeles Times, Mar. 30, 2014 (emphasis added).

**D.     Bank of America Did Not Provide The FHA-Approved Form To Veronica Dorado**

**Before Collecting Post-Payment Interest.**

48. On March 8, 2011, Pinnacle Capital Mortgage Company loaned Veronica Dorado money for the purchase of a home in Lynwood, California. Bank of America later acquired Dorado's loan. Dorado's loan was insured by FHA, and so Bank of America was required to comply with FHA regulations with respect to her loan.

49. Pursuant to FHA regulations, Dorado's promissory note contains certain uniform provisions found in the note for every FHA-insured loan. These uniform provisions include, among others, section 2 titled "Borrower's Promise to Pay; Interest" and section 6 titled "Borrower's Right to Prepay." *See* FHA Multistate Adjustable Rate Note at 1-2.

50. In 2013, Dorado refinanced. So that she could pay off her loan with Bank of America, Dorado requested that Bank of America provide her with a payoff statement.

51. Bank of America provided a payoff statement dated March 19, 2013. The statement is a form document, in which Bank of America uses form language throughout the document and fills in only the particular numbers and address information that correspond to a specific borrower. *See* Mar. 19, 2013 Payoff Statement, From Bank of America, To Veronica Dorado, attached as Exhibit 8.

52. The form includes the statements "Principal Balance"; "Interest"; and "Total Amount Required to Release Lien"; and "Total Amount Due." *Id.* at 1.

53. The statement contains the following specific numbers for Dorado's loan: "Principal Balance as of 02/01/2013 $239,226.90"; "**Interest from 02/01/2013 to 03/31/2013 [$] 1,345.66**"; "Uncollected Late Charges [$] 65.92"; "Mortgage Insurance Premium [$] 179.23"; "Escrow Balance Due [$] 639.32"; "Total Amount Required to Release Lien (As of March 29, 2013) $241,457.03"; "Payoff Statement via Facsimile Fee [$] 5.00"; and "Total Amount Due $241,462.03." *Id.* (emphasis added).

54. Dorado's interest payments were $672.83 per month. Thus, by representing that Dorado owed $1,345.66 in interest, Bank of America charged and sought to collect interest for **two months** – interest for the entire month of February 2013 and interest for the entire month of March 2013, even though the payoff statement was issued on March 19, 2013. *Id.*

55. On March 20, 2013, Dorado paid Bank of America $241,462.03, which includes $1,345.66 in interest Bank of America represents as part of the "Total Amount Required to Release Lien." *Id.* And because Bank of America required Dorado to pay interest for the entire

month of March 2013 – even though Dorado paid full unpaid principal on March 20, 2013 – Bank of America collected post-payment interest.

56.     However, Bank of America did not first provide Dorado with the FHA-approved form. For one, the form used by Bank of America is not an FHA-approved form, and FHA approval is an **express** requirement of FHA regulations.

57.     Moreover, Bank of America's unauthorized form is both misleading and confusing. It represents that interest will be calculated on a whole, per month basis and this interest is included as part of the "Total Amount Required to Release Lien." *Id.* It does not disclose, in any way, that Bank of America cannot collect post-payment interest if payment is made on the first of the month.

58.     Because the language in Bank of America's form is unconditional, Bank of America wrongly tells Dorado that, even if payment is made on the first of any month, interest will be calculated on a whole, per month basis and this interest is included in the "Total Amount Required to Release Lien" – which both the uniform provisions of the note and FHA regulations prohibit Bank of America from doing. *See* FHA Multistate Adjustable Rate Note at 2 ("Borrower has the right to pay the debt . . . without charge or penalty, on the first day of any month."); 24 C.F.R. § 203.558 (c) (2014).

### Class Action Allegations

59.     Plaintiff asserts claims on behalf of herself and on behalf of a class similarly-situated persons pursuant to Rule 23 (b)(3). *See* Fed R. Civ. P. 23 (b).

60.     Plaintiff proposes the following class, while reserving the right to modify this definition – any person who had a loan (a) insured by the FHA at any time during the period beginning on August 2, 1985 and ending on January 20, 2015, (b) that was held by Bank of America as of the day payment of the full unpaid principal was made, and (c) for which Bank of America collected interest for any period after payment of the full unpaid principal was made. *See* Fed. R. Civ. P. 23 (c).

61.     Plaintiff proposes certification of all issues, while reserving the right to alternatively seek certification as to any specific claim or issue. *See* Fed. R. Civ. P. 23 (c).

62.     Dorado would serve as the class representative.

63.     Plaintiff satisfies the requirements of Rule 23 (a).

  a.     <u>Numerosity</u> – The class is so numerous that joinder is impracticable. FHA

is the largest insurer of mortgages in the world. FHA currently insures around 4.8 million single family homes. And Bank of America is one of the nation's largest mortgage lenders. Plaintiff estimates that the class consists of tens of thousands of persons.

b. <u>Commonality</u> – There are numerous common questions of law and fact, including but not limited to the following:

  i. The promissory notes for FHA-insured loans contain uniform provisions that require lenders to comply with FHA regulations before collecting post-payment interest. The essential issue in this case is whether, before collecting post-payment interest, Bank of America complied with the FHA regulation requiring that it provide the borrower "a **form** approved by the Commissioner, in response to the [borrower's] inquiry, request for payoff figures, or tender of prepayment." 24 C.F.R. § 203.558 (c) (2014) (emphasis added). Because Bank of America uses **form** payoff statements, the answer to this essential question will be common to all members of the class. The forms used by Bank of America either are or are not the FHA-approved form and that answer will be true for the entire class.

  ii. Another common question is whether Bank of America is liable in breach of contract for not providing borrowers with the FHA-approved form before charging post-payment interest on FHA-insured loans held by Bank of America.

c. <u>Typicality</u> – Plaintiff's claims are typical of the claims of the class. Plaintiff's promissory note is not just typical of the rest of the class, but is identical with respect to relevant provisions at issue in this case. Further, because Bank of America uses form payoff statements, Plaintiff has been subject to conduct that is typical of the rest of the class. Bank of America has sought to collect post-payment interest from Plaintiff in the same manner that it has sought to collect post-payment interest from the rest of the class.

      d.     <u>Adequacy</u> – Plaintiff would adequately protect the class's interests. Plaintiff has a genuine interest in protecting the rights of the class and Plaintiff's counsel is experienced in handling complex class actions. Indeed, Plaintiff's counsel has been designated and approved as class counsel in numerous state and federal courts. Further, because Plaintiff challenges form payoff statements used by Bank of America, the interests of Plaintiff and the classes are aligned.

64. Plaintiff satisfies the requirements of Rule 23 (b)(3).

      a.     <u>Predominance</u> – The answers to the common questions in this case will decide liability for the entire class. If Plaintiff establishes that Bank of America breached or would breach the contracts by not complying with FHA regulations, it will establish liability for all class members, without the need for any additional proof as to liability. Thus, common issues predominate over individual issues.

      b.     <u>Superiority</u> – A class action is superior to other available remedies. The common questions would predominate over any individual questions, and thus no other form of litigation could be superior to a class action. Further, because of the low dollar amounts at stake for each class member, a class action is the only way for Plaintiff and other class members to obtain redress. Moreover, the most efficient way to resolve the class's claims is for a court to decide all claims in a single class. Requiring hundreds of thousands of class members to individually litigate their claims over and over again in various courts would be vastly inefficient. It also raises the possibility of inconsistent judgments.

## Count One – Breach Of Contract

65. Dorado asserts a breach of contract claim against Bank of America, on behalf of herself and the class. Dorado seeks damages for Bank of America's improper collection of post-payment interest payments.

66. Dorado and each member of the class had a contract with Bank of America. The terms of the contract are set forth in the promissory note. The note is a form contract containing certain provisions that are identical to provisions found in the notes for every FHA-insured loan.

67. In section 2 of the note, "BORROWER'S PROMISE TO PAY; INTEREST," Bank of America agreed that "[i]nterest will be charged on **unpaid** principal" and only "until the full amount of the principal has been paid." FHA Multistate Adjustable Rate Note at 1 (emphasis altered).

68. In section 5 of the note, "BORROWER'S RIGHT TO PREPAY," Bank of America agreed that it would charge "interest on the amount prepaid for the remainder of the month" only "to the extent . . . **permitted by regulations of the Secretary**." *Id.* at 2 (emphasis altered).

69. The relevant FHA regulation, titled "Handling Prepayments," provides that, "[**e**]**xcept as set out** [**in this regulation**], monthly interest on debt must be calculated on the actual unpaid principal balance of the loan." 24 C.F.R. § 203.558 (a) (2014) (emphasis added). "If the prepayment is offered on other than an installment due date [the first of the month], the [lender] . . . may require payment of interest to that date, but **only if** [the lender] so advises the [borrower], **in a form approved by the Commissioner**, in response to the [borrower's] inquiry, request for payoff figures, or tender of prepayment." 24 C.F.R. § 203.558 (c) (2014) (emphasis added).

70. In addition to the express terms of the promissory note, the law implies a duty of good faith and fair dealing, and Bank of America is subject to this duty as well.

71. Bank of America breached the contract by collecting post-payment interest payments from Dorado and the other members of the class without first providing the FHA-approved form.

72. Dorado and the other members of the class were injured by Bank of America's breach and seek damages for Bank of America's unlawful collection of post-payment interest. They seek damages for interest collected for the period beyond payment of the full unpaid principal.

### **Relief Requested**

73. Plaintiff asks this Court to:
    a. certify this action as a class action, including certifying Plaintiff as class representative and undersigned counsel as class counsel;
    b. grant judgment as a matter of law in favor of Plaintiff and the class on any or all issues or, in the alternative, hold a jury trial to decide any disputed

        fact questions;

c.    award Plaintiff any damages they are entitled to, including but not limited to, compensatory damages, statutory damages and penalties, attorney fees, pre-judgment interest, post-judgment interest, and costs;

d.    and order any other relief as the Court may deem proper and just.

Plaintiff submits this complaint on March 31, 2016.

/s/ Brett M. Amron
Brett M. Amron
Fla. Bar No. 148342
BAST AMRON LLP
One Southeast Third Ave Ste 1400
Miami, FL 33131
305-379-7904
bamron@bastamron.com

Steven J. Rosenwasser
Ga. Bar No. 614908
Naveen Ramachandrappa
Ga. Bar No. 422036
BONDURANT, MIXSON &
ELMORE, LLP
1201 W Peachtree St NW
Ste 3900
Atlanta, GA  30309
404-881-4151
rosenwasser@bmelaw.com
ramachandrappa@bmelaw.com
*pro hac pending*

Adam Hoipkemier
Ga. Bar No. 745811
Matthew Wetherington
Ga. Bar No. 339639
THE WERNER LAW FIRM
2860 Piedmont Rd NE
Atlanta, GA 30305
404-564-4329
adam@wernerlaw.com
matt@wernerlaw.com
*pro hac pending*

Jeffrey W. DeLoach
Ga. Bar No. 081669
Kevin E. Epps
Ga. Bar No. 785511
FORTSON, BENTLEY AND GRIFFIN, P.A.
2500 Daniell's Bridge Rd
Bldg 200, Ste 3A
Athens, GA 30606

706-548-1151
jwd@fbglaw.com
kee@fbglaw.com
*pro hac pending*

**Attorneys for Plaintiff**

00375891 DOCX 2