IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No.: 1:16-CV-21147-RNS

VERONICA DORADO, individually and on
behalf of a class of similarly situated persons,

        Plaintiff,

v.

BANK OF AMERICA, N.A.,

        Defendant.
_____/

**DEFENDANT BANK OF AMERICA, N.A.'S MOTION TO DISMISS
AND INCORPORATED MEMORANDUM OF LAW**

Defendant Bank of America, N.A. ("BANA") requests the Court to dismiss the Putative Class Action Complaint. Grounds for this motion are set forth in the following incorporated memorandum of law.

## I.    INTRODUCTION

This case is not a referendum on the Federal Housing Administration's regulations for calculating interest on FHA-insured mortgages. Although Plaintiff Veronica Dorado devotes the bulk of her Complaint to how "unfair" it is for lenders to charge a full month's interest when borrowers pay off FHA-insured mortgages mid-month, FHA regulations have permitted this practice for decades. It was a mechanism legally available to lenders in 2011, when Ms. Dorado received the benefit of her FHA-insured loan, and it was still the law in 2013, when Ms. Dorado requested her payoff amount from the servicer of her loan, BANA.

Rather, this case is about only Ms. Dorado's contention that one of the notices she received did not conform exactly to the format provided for under FHA regulations—and her belief that she can somehow enforce those regulations through a breach-of-contract claim. She cannot. Her claim fails as a matter of law because it is an improper attempt to evade the universally recognized rule that no private right of action exists under federal housing regulations. After all, those regulations govern BANA's duty to FHA, not to borrowers like Ms. Dorado, and thus, only FHA can enforce them. And because BANA had a preexisting duty to follow federal housing regulations, Ms. Dorado cannot invoke the breach of that duty as the basis for a private contract claim. Under controlling California law, breach-of-contract theories seeking to circumvent this bar against private enforcement must be dismissed. *See Pfeifer v. Countrywide Home Loans, Inc.*, 211 Cal. App. 4th 1250, 1255 (2012).

Even assuming that Ms. Dorado could get past the well-established legal barriers to her claim, the Complaint fails for the additional reason that she alleges no facts showing that BANA's alleged breach caused her to suffer damages. Indeed, based on the Complaint's own allegations, it would be impossible for her to do so. Ms. Dorado requested and received her BANA payoff statement ***during*** the month of March. Unless Ms. Dorado believes she was entitled to go back in time and rewind the clock to March 1, her mid-March payoff was necessarily going to trigger a full March's interest, even if the notice came in another format. Moreover, nowhere in her Complaint does she even allege what her damages are. Ms. Dorado received BANA's payoff statement on March 19, 2013, which, consistent with FHA regulations, included interest for that entire month; she paid off her loan on March 20.

On the basis of this inadequate pleading, Ms. Dorado seeks to recover not only for herself but for every other borrower who made similar FHA-regulated interest payments to BANA

during a three-decade period.  Complaints this deficient cannot survive.

## II.   BACKGROUND

### 1.   FHA plays a critical role in the U.S. Housing Market [1]

Founded in 1934, the Federal Housing Administration provides mortgage insurance for qualified borrowers, many of them first-time homeowners.  *See* Ex. A.  By insuring home loans, FHA helps keep credit available even in difficult economic times; it both protects lenders against the risk of default and permits borrowers to purchase homes for as little as 3.5% down.  *See* Compl. Ex. 5; Ex. A.  Since its inception, FHA has insured more than 34 million homes.  Ex. B.  In doing so, the agency has been credited with making the dream of home ownership available to historically underserved populations, with commentators noting that "[FHA] is a critical part of our economy, helping first-time homebuyers and other low-wealth borrowers access the long-term, low down-payment loans they need to afford a home."  Ex. C.

Though FHA insures mortgages, it does not fund them.  Instead, the vast majority of FHA-insured loans are funded by capital market investors, which purchase mortgage-backed bonds guaranteed by Ginnie Mae, the Government National Mortgage Association.  *See* Compl. Ex. 4.  For these investors, it is important that the bonds guarantee a full month of interest every month for the duration of the loans, regardless of when final payoff occurs.  Indeed, investors pay a premium for this guarantee—which then allows lenders to offer borrowers lower interest rates in return.  *See id.*  Because borrowers sometimes pay off their loans after a month has commenced, FHA has for at least 30 years given lenders a tool for collecting the full month's interest investors were promised in their original investment: If that borrower pays off a loan on

---

[1] Exhibits A - J are attached to the Declaration of William K. Pao in Support of Bank of America's Motion to Dismiss.  Exhibits 1-8 are attached to Ms. Dorado's Complaint.  *See* D.E. # 1.

any day other than the first of the month, federal regulations permit the lender to assess interest for the remainder of the month ("Full-Month Interest Rule").  *See id.*; Compl., ¶ 29

The Full-Month Interest Rule is not a secret.  Besides being spelled out in FHA-backed loan documents, it has received national media coverage for at least a decade, much of which discusses strategies for minimizing its impact on borrowers.  *See, e.g.*, Compl. Ex. 4.  Countless online articles and columns advise borrowers to pay off their FHA-backed loans toward the end of the month, thereby limiting the number of days that a borrower is required to pay interest on a balance that has been fully discharged.  *See, e.g.*, Compl. Exs. 4, 7; *see also* Exs. D, E, F.

A borrower seeking to act on this advice—and synchronize a final payoff—faces an uncertain timeline.  Circumstances outside the borrower's control usually dictate when a loan or refinance closes.  As the National Association of Realtors has observed, "[g]iven the high rate of refinancing and new mortgages in this current market, it is difficult to select the date of closing.  Even when consumers are aware of the [Full-Month Interest Rule], they are on the timetable of the buyer, the settlement company, title company and mortgage lender and cannot always close on the last day of the month."  *See* Ex. G.  A borrower who begins the process early in the month is thus still likely to pay additional interest on the remaining days; a borrower who waits too late in the month risks missing the target date and spilling into the next month.  In either case, even when borrowers have notice of the Full-Month Interest Rule, many still ultimately pay interest on the full final month of their loan.

Last year, FHA changed the rule so that lenders could no longer assess Full-Month Interest for loans that originated after January 21, 2015.  *See* Compl., ¶ 47.  Nonetheless, FHA chose to keep the rule in place for loans that originated before that date.  *See id.*

### 2. Plaintiff's FHA-insured loan requires her to pay Full-Month Interest

On March 8, 2011, Ms. Dorado obtained an FHA-insured loan from Pinnacle Capital Mortgage Company to purchase a three-bedroom single-family home in the southeast Los Angeles community of Lynwood.  *See* Compl. ¶ 48.  Because of the FHA's commitment to low-wealth homebuyers, she was allowed to place a down payment of less than 3.5%, or $9,000, on a home that was reportedly sold for $255,000.  *See* Compl. ¶ 48, Ex. 1; Ex. H.  The starting interest rate for Ms. Dorado's loan was 3.375%.  Compl. Ex. 1.  Under paragraph 6 of Ms. Dorado's Promissory Note, the lender was specifically authorized to assess Full-Month Interest if she chose to pay off her loan on any day other than the first of the month: "Lender shall accept prepayment on other days provided that Borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary."  Compl. Ex. 1.  Shortly thereafter, BANA became the servicer of Ms. Dorado's loan. Compl. ¶ 48.

Two years later, Ms. Dorado sought to refinance her loan, presumably because she obtained even more favorable terms.  *Id.* at ¶ 50.  In March 2013, Ms. Dorado requested her payoff statement, which BANA promptly sent to her.  *See id.*  at ¶ 51. The payoff statement, which was dated March 19 and valid until March 29, 2013, did not contain the FHA-approved language that Ms. Dorado contends was necessary to notify her of the Full-Month Interest Rule, but it did make clear that, consistent with the Full-Month Interest Rule, BANA would assess interest through the end of the month, i.e., until March 31, 2013.  *See* Compl. Ex. 8.  To illustrate the effect of Full-Month Interest, the payoff statement plainly showed the same payoff balance, day after day, from March 19 through March 29.  *Id.*  On March 20, 2013, Ms. Dorado paid off

her loan, and because she did not pay on the first of the month, she was assessed approximately $250 in interest for the 11 days remaining in March.  *See* Compl., ¶ 53.

For the next three years, BANA heard nothing from Ms. Dorado.  Then, on March 31, 2016, Ms. Dorado brought this putative class action against BANA in the Southern District of Florida, alleging one count of breach of contract.  Notwithstanding that Ms. Dorado lives in California, that the property at issue is in California, that the loan documents at issue were signed in California, and that California law applies in this case, Ms. Dorado decided to file suit nearly 3,000 miles away.

Throughout her Complaint, Ms. Dorado takes umbrage at the Full-Month Interest Rule, denouncing it as "unfair" and a "penalty."  *See* Compl. ¶ 40.  She even attaches news articles that describe lenders as "the true beneficiaries" and borrowers as "the clear loser," adding that **"[h]undreds of thousands of home sellers have had their pockets picked."**  *See* Compl. Exs. 5, 6, 7 (emphasis in the original).  The sole ground for Ms. Dorado's Complaint, however, is purely administrative: BANA's alleged failure to send her an FHA-approved form disclosing the Full-Month Interest Rule.  *See* Compl., ¶ 71.  Specifically, Ms. Dorado contends that paragraph 6 of the Promissory Note permitted BANA to collect Full-Month Interest only in accordance with U.S. Department of Housing and Urban Development ("HUD") regulations and that HUD regulations require BANA to use a specific FHA-approved form notifying her of the Full-Month Interest Rule.  *Id.*, ¶ 71.

Ms. Dorado does not allege that she was unaware of the Full-Month Interest Rule at any point, either when she took out her loan or when she paid off her loan.  Nor does she allege that she failed to receive BANA's annual disclosure form, which BANA sends out every January and which served to remind Ms. Dorado of the Full-Month Interest Rule just weeks before she

requested her payoff statement. Ms. Dorado also does not allege that, had she received the FHA-approved form she claims not to have received, she could have—and would have—done anything differently to avoid paying Full-Month Interest. She offers no scenario in which her receipt of the FHA-approved form in mid-March would have caused her to alter a payoff process she had already initiated, much less how the FHA-approved form would have saved her from paying the approximately $250 in Full-Month Interest. And although her Complaint cites a news article making the assertion that "more than 40 percent of FHA borrowers close [their new loans] during the first 10 days of the month, exposing them to at least 20 days of interest payments," Compl. Ex. 4, Ms. Dorado does not allege that she suffered this fate. She acknowledges that borrowers are advised to pay off their loans toward the end of the month, but does not address the fact that she paid off her loan on March 20, very close to the ideal payoff window. Despite all of the above, Ms. Dorado now seeks to recover unspecified damages on behalf of not only herself but all borrowers who had FHA-insured loans from August 2, 1985, through January 20, 2015, and from whom BANA collected Full-Month Interest. *See* Compl. ¶ 60.

### III.    ARGUMENT

Under Federal Rule of Civil Procedure 12(b)(6), a complaint that "fail[s] to state a claim upon which relief can be granted" must be dismissed. As the Supreme Court made clear in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), "a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do" (internal quotations omitted). Thus, courts "need not accept factual claims that are internally inconsistent, facts which run counter to facts of which the court can take judicial notice, conclusory allegations, unwarranted deductions, or mere legal conclusions asserted by a party." *Campos v. I.N.S.*, 32 F. Supp. 2d 1337, 1343

(S.D. Fla. 1998). And courts also need not "ignore specific factual details of the pleading in favor of general or conclusory allegations." *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1206 (11th Cir. 2007).

Here, California law applies to Ms. Dorado's breach-of-contract claim. A "federal court sitting in a diversity action applies state law using the choice of law rules of the forum state." *Travelers Prop. Cas. Co. of Am. v. Moore*, 763 F.3d 1265, 1270 (11th Cir. 2014). "Under Florida's choice-of-law rules, *lex loci contractus* applies in contract matters." *Prime Ins. Syndicate, Inc. v. B.J. Handley Trucking, Inc.*, 363 F.3d 1089, 1091 (11th Cir. 2004). "*Lex loci contractus* 'provides that the laws of the jurisdiction where the contract was executed govern[] interpretation of the substantive issues regarding the contract.'" *Id.* at n.1 (citation omitted). In this case, not only was the Promissory Note executed in California, but the property at issue is in California, and Ms. Dorado herself lives in California.

### A. Ms. Dorado cannot recover for breach of contract under California law

#### 1. Numerous courts have rejected plaintiffs' attempts to enforce HUD regulations via a breach-of-contract claim.

Ms. Dorado's breach-of-contract claim fails because courts have universally rejected a private right of action under both the National Housing Act ("NHA") and its accompanying regulations promulgated by HUD. "[T]he weight of authority around the country roundly rejects the notion that either the NHA or associated HUD regulations support either direct or implied private causes of action for their violation." *Wells Fargo Home Mortgage Inc. v. Neal*, 922 A.2d 538, 543-544 (Md. 2007).[2] California courts subscribe to this position as well, prohibiting

---

[2] *See also Christenson v. Citimortgage, Inc.*, No. 12-cv-02600-CMA-KLM, 2013 WL 5291947, at *7 (D. Colo. Sept. 18, 2013) ("HUD Regulations do not, on their own, establish a private right of action."); *Dixon v. Wells Fargo Bank, N.A.*, No. 12-10174, 2012 WL 4450502, at *6 (E.D.

private rights of action based on alleged violations of HUD regulations. *See Pfeifer v. Countrywide Home Loans, Inc.*, 211 Cal. App. 4th 1250, 1255 (2012) ("[W]e agree with those courts that refuse to permit any private right of action for failure to comply with the HUD regulations."). Such regulations are aimed solely at "govern[ing] the relationship between the mortgagee and the government rather than . . . the mortgagee and the mortgagor." *Neal*, 922 A.2d at 546. Thus, BANA's duty under the NHA and HUD regulations is to the government and not to the mortgagor—here, Ms. Dorado—and the mortgagor has no "claim for duty owed" to sue for enforcement. *Mitchell v. Chase Home Fin. LLC*, No. 3:06-CV-2099-K, 2008 WL 623395, at *3 (N.D. Tex. Mar. 4, 2008).

Where, as here, a plaintiff advances a breach-of-contract theory to circumvent this bar against private enforcement, California courts have rejected that, too. *See Pfeifer*, 211 Cal. App. 4th at 1269 ("[W]e agree with the reasoning of those courts that hold that the [borrowers] cannot bring a private right of action against the lenders."); *Fonteno v. Wells Fargo Bank, N.A.*, 228 Cal. App. 4th 1358, 1371 (2014) (refusing to reconsider the holding in *Pfeifer* that borrowers cannot bring breach-of-contract cause of action against lenders for alleged violations of HUD regulations); *Urenia v. Public Storage*, No. CV 13-01934 DDP (AJWx), 2013 WL 4536562, at *2 (C.D. Cal. Aug. 27, 2013) (HUD regulations "may not be invoked by the mortgagor as a sword in an offensive cause of action against the mortgagee.") (quoting *Pfeifer*, 211 Cal. App. 4th at 1270).

In *Pfeifer*, arguing that the lender-defendant violated HUD regulations referenced in the deed of trust, the plaintiffs sued for breach of contract and declaratory relief to enjoin foreclosure. Specifically, paragraph 9 of the plaintiff's deed of trust provided that "[w]hen a

---

Mich. Sept. 25, 2012) ("It appears well accepted, and Plaintiff cannot really dispute, that no private right of action exists under the HUD regulations.").

default occurs . . . the [l]ender may, *except as limited by regulations issued by the Secretary*, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument," and that the "Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary." *Id.* at 1258-59 (emphasis added). Claiming that the deed of trust incorporated HUD regulations, the plaintiffs contended that their lender violated those regulations when it initiated foreclosure proceedings without first offering a face-to-face meeting. *See id.* at 1255, 1264.

Interpreting California law, the *Pfeifer* court unequivocally rejected plaintiffs' breach-of-contract claim, reasoning that the "principal purpose of the HUD regulations is to benefit HUD," and thus, "[plaintiffs] cannot bring a private right of action against the lenders." *Id.* at 1269. While the court allowed the plaintiffs to raise the alleged regulatory violations as an affirmative defense and seek equitable relief, *see id.* at 1281, it drew a sharp distinction between a defensive claim for equitable relief and an offensive claim for damages.

The former allows borrowers to raise alleged regulatory violations only defensively, to prevent lenders from foreclosing on them. *See id.* at 1268 (noting that permitting plaintiffs to challenge foreclosure "does not require this court to enforce provisions of NHA, but simply prevents a nonjudicial foreclosure when the borrower has an equitable defense based on the failure to comply with federal regulations designed to prevent foreclosures that are incorporated into the FHA deed of trust"); *Fonteno*, 228 Cal. App. 4th at 1371 ("The Pfeifers were allowed to pursue equitable relief because, although brought as part of an affirmative claim for wrongful foreclosure, it was essentially defensive in nature, i.e., a proverbial shield, while their pursuit of damages was not allowed because it was offensive in nature, i.e., a proverbial sword."). By contrast, if an offensive claim for damages were permitted, it would provide a cause of action for

16-CV-21147-RNS

borrowers to sue for alleged regulatory violations—thereby creating a loophole to the universal bar against private enforcement of the NHA.  *Cf. Dixon*, 2012 WL 4450502, at *8 ("This Court is not inclined to permit Plaintiffs to merely restate or redress their claim based on a violation of HUD regulations, which otherwise is clearly foreclosed, as a breach of contract claim based on paragraph 9(d) of the mortgage agreement."); *Mitchell*, 2008 WL 623395, at *4 (holding that plaintiffs' breach-of-contract claim was "merely a restatement of Plaintiffs['] claims for violations of the HUD regulations incorporated into the Deed of Trust").[3]

The facts here closely resemble those in *Pfeifer*.  As with the *Pfeifer* plaintiffs, Ms. Dorado seeks a breach-of-contract cause of action to enforce HUD regulations, which she claims were incorporated into the loan documents—in this case, her Promissory Note.  The agreement language at issue is also strikingly similar: The provision in *Pfeifer* permitted the lender to accelerate the loan upon default "except as limited by regulations issued by the Secretary,"[4] while the provision here permits the lender to assess Full-Month Interest "to the extent . . . permitted by regulations of the Secretary."  (*See* Compl. ¶ 25.)   Accordingly, there is no

---

[3] The majority of courts nationwide subscribe to California's position that a private cause of action cannot be manufactured via a breach-of-contract claim.  *See Christenson*, 2013 WL 5291947, at *7 ("[A]lthough some courts have determined that the HUD Regulations become enforceable by a private cause of action if they are incorporated into a mortgagor's loan documents, those courts represent the minority position."); *Dietz v. Quality Loan Serv. Corp. of Washington*, No. C13-5948 RJB, 2014 WL 1245269 (W.D. Wash. Mar. 25, 2014); *Wernet v. Mortgage Elec. Registration Sys., Inc.*, No. 1:12-CV-986, 2013 WL 3776298 (W.D. Mich. July 17, 2013); *BAC Home Loans Servicing, LP v. Taylor*, 986 N.E.2d 1028 (Ohio App. 2013); *In re McGinley*, 490 B.R. 723 (Bankr. D. Md. 2013); *Dixon*, 2012 WL 4450502; *Wells Fargo Bank, N.A. v. Favino*, No. 1:10 CV 571, 2011 WL 1256771 (N.D. Ohio Mar. 31, 2011); *Lacy-McKinney v. Taylor, Bean & Whitaker Mortgage Corp.*, 937 N.E.2d 853 (Ind. Ct. App. 2010); *In re Shirk*, 437 B.R. 592 (Bankr. S.D. Ohio 2010); *Mitchell*, 2008 WL 623395; *Neal*, 922 A.2d 538.  *But see, e.g., Bates v. JPMorgan Chase Bank, NA*, 768 F.3d 1126 (11th Cir. 2014) (finding that, under Georgia law, HUD regulations had been incorporated into deed and could form basis for breach-of-contract claim)

[4] *Pfeifer*, 211 Cal. App. 4th at 1266.

justification to stray from established California law, and Ms. Dorado's breach-of-contract claim should be dismissed.

### B. Ms. Dorado cannot recover for breach of contract because BANA already had a preexisting duty to follow HUD regulations

Even if Ms. Dorado were somehow able to evade California's bar against private enforcement of HUD regulations through a breach-of-contract claim, her Complaint still fails because BANA already had a preexisting duty to follow those regulations—and a promise to follow the law is unenforceable as a matter of contract law. To recover under breach of contract, Ms. Dorado must first establish a valid contract upon which she can bring suit, which requires showing: "(1) [p]arties capable of contracting; (2) [t]heir consent; (3) [a] lawful object; and, (4) [a] sufficient cause or consideration." Cal. Civ. Code § 1550. Under the preexisting-duty rule, however, "[a] statutory or legal obligation to perform an act may not constitute consideration for a contract." *O'Byrne v. Santa Monica-UCLA Med. Ctr.*, 94 Cal. App. 4th 797, 808 (2001); *see also Podolsky v. First Healthcare Corp.*, 50 Cal. App. 4th 632, 655 (1996) ("When the recited consideration consists of nothing more than a preexisting obligation or duty, it cannot be consideration of a promise."). Thus, promises to abide by existing laws and regulations cannot give rise to a breach-of-contract claim. *See Start v. Apple Computer*, No. C95-20149 PVT, 1996 WL 161630, at *3 (N.D. Cal. Mar. 29, 1996) (finding that plaintiff cannot recover for breach of contractual provision not to violate law because "Apple's promise not to discriminate is a preexisting legal obligation").

Where plaintiffs have sought to enforce a lender's alleged promises to abide by HUD regulations, courts have dismissed breach-of-contract actions for this precise reason. *See Dixon*, 2012 WL 4450502, at *8 (finding defendant's argument persuasive that "[defendant] was under an independent statutory duty to comply with the HUD regulations," and, thus, "Plaintiffs cannot

invoke the breach of that duty as a basis for a private contract claim"); *Houston v. U.S. Bank Home Mortg. Wis. Servicing*, 505 F. App'x 543, 550 (6th Cir. 2012) (affirming that defendant's promise to follow NHA did not constitute sufficient consideration, as "there is no legal value in [defendant] promising to perform a service that it was already required by law to perform").

Here, Ms. Dorado's breach-of-contract claim violates the preexisting-duty rule. After all, the crux of Ms. Dorado's claim is that FHA regulations allegedly require BANA to provide borrowers who had FHA-insured loans with an "FHA-approved form" when they request payoff information. *See* Compl. ¶¶ 26-27. Thus, by Ms. Dorado's own admission, BANA allegedly has a preexisting duty under HUD regulations to provide the "FHA-approved form"—which means that she cannot then "invoke the breach of that duty as a basis for a private contract claim." *See Dixon*, 2012 WL 4450502, at *8.

C.  **Ms. Dorado's breach-of-contract claim also fails because she has not alleged facts to show damages caused by BANA's alleged breach**

Finally, assuming somehow that California law does not bar Ms. Dorado from proceeding under a breach-of-contract theory, Ms. Dorado's claim still fails because she has not alleged damages flowing from BANA's alleged breach—nor can she. To sufficiently state a claim for breach of contract, a plaintiff must allege "(1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to plaintiff." *Reichert v. General Ins. Co.*, 68 Cal. 2d 822, 830 (1968). It is thus not enough for plaintiffs to contend that defendants breached the contract; plaintiffs must also contend that the alleged breach caused them to suffer damages. *See Bramalea California, Inc. v. Reliable Interiors, Inc.*, 119 Cal. App. 4th 468, 473 (2004) ("A breach of contract is not actionable without damage."). And where plaintiffs fail to properly plead damages, courts regularly dismiss breach-of-contract claims at the pleadings stage. *See, e.g.*, *Rudgayzer v. Yahoo! Inc.*, No. 5:12-CV-01399 EJD, 2012 WL

5471149, at *6 (N.D. Cal. Nov. 9, 2012) (dismissing plaintiff's claim for failure to sufficiently plead breach of contract because "[a]n allegation of actual damage as a result of the alleged contractual breach is a requirement for a prima facie breach of contract claim under California law"); *Loiseau v. VISA USA Inc.*, No. 09-CV-2177-H (JMA), 2010 WL 4542896, at *2 (S.D. Cal. Feb. 10, 2010) (dismissing breach-of-contract claim under California law for failure "to plead an essential element of the breach of contract action").

Here, Ms. Dorado purports to seek "damages" on behalf or herself and the putative class, but fails to make clear exactly what those damages are—or even specify the amount of her own alleged damages. *See* Compl. ¶ 1 ("Bank of America has collected hundreds of millions of dollars in post-payment interest in an unlawful manner, and through this breach of contract class action, Plaintiff seeks to recover damages on behalf of herself and the class."); *Id.* ¶ 65 ("Dorado seeks damages for Bank of America's improper collection of postpayment interest payments."). Such vague and conclusory allegations of damages do not suffice. *Stein v. Bank of Am., N.A.*, No. 2:10-cv-02827-GEB-EFB, 2011 WL 4594916, at *3 (E.D. Cal. Feb. 23, 2011) (dismissing breach-of-contract claim for failure to allege damages when complaint "merely alleged conclusory allegations"); *Adobe Sys. Inc. v. A & S Elecs., Inc.*, No. C15-2288 SBA, 2015 WL 9478236, at *7 (N.D. Cal. Dec. 29, 2015) (same). Under contract law, "[i]t is fundamental that damages which are speculative, remote, imaginary, contingent, or merely possible cannot serve as a legal basis for recovery." *McDonald v. John P. Scripps Newspaper*, 210 Cal. App. 3d 100, 104 (1989).

To the extent that Ms. Dorado seeks damages for the approximately $250 she paid in Full-Month Interest,[5] that $250 payment was not caused by BANA, and thus under California law cannot be the basis for damages. *See Rosenburg v. Bank of Am., N.A.*, No. CV 11-10597-CAS (CWx), 2013 WL 1191436, at *5 (C.D. Cal. Mar. 21, 2013) (granting motion to dismiss where plaintiff "failed to allege that any damages were caused by a breach of the agreement"). As an initial matter, as Ms. Dorado admits, FHA regulations permitted BANA to assess Full-Month Interest as long as Ms. Dorado paid off her loan on any day other than the first of the month. *See* Compl. ¶ 22. Thus, her $250 payment to BANA was caused by Ms. Dorado's own decision to pay off her loan on a day other than the first of the month, not by BANA's alleged failure to send her an FHA-approved form.

Further, even if that alone were not enough to disprove causation, Ms. Dorado still needs to allege facts that would show: (i) that she did not otherwise know about the Full-Month Interest Rule and (ii) that if she had, she could have avoided paying the $250. *See Synopsys, Inc. v. ATopTech, Inc.*, No. C13-cv-02965SC, 2013 WL 5770542, at *12 (N.D. Cal. Oct. 24, 2013) (granting defendant's motion to dismiss breach-of-contract claim because plaintiff did "not assert that Plaintiff was damaged by Defendant's seeking commercial gain or competitive advantage [in violation of the contract]—the mere fact that Defendant sought those things does not indicate harm to Plaintiff"); *Crowley Am. Transp., Inc. v. Richard Sewing Mach. Co.*, 172 F.3d 781, 784 (11th Cir. 1999) (dismissing breach-of-contract claim based on contractual provision requiring notification when party to receive notification already had knowledge, thus making failure to notify immaterial); *Allied Grape Growers v. Bronco Wine Co.*, 203 Cal. App. 3d 432, 449 (1988) (finding evidence of plaintiff's failure to notify defendant insignificant, where defendant already

---

[5] *See* Compl. ¶ 72 ("[Ms. Dorado and the putative class] seek damages for interest collected for the period beyond payment of the full unpaid principal.").

- 15 -

had knowledge of pertinent facts and thus was "not prejudiced" by failure to notify).  After all, if Ms. Dorado already knew about the Full-Month Interest Rule, BANA's alleged failure to send her an FHA-approved form did not cause her to incur additional interest; her own decision to pay off the loan on a day other than the first of the month did.  Indeed, in that scenario, Ms. Dorado voluntarily paid the additional interest, and the "voluntary payment doctrine" bars her from recovering those funds as a matter of law.  *Steinman v. Malamed*, 185 Cal. App. 4th 1550, 1557 (2010) (noting that "[p]ayments voluntarily made, with knowledge of the facts, cannot be recovered" (internal quotation marks and citation omitted)).  Similarly, if Ms. Dorado could not have closed on the first day of the month, even if she had known about the Full-Month Interest Rule, BANA's alleged failure to send her an FHA-approved form also did not cause her to incur additional interest; Ms. Dorado would have incurred the additional interest even if she had received the form.

Ms. Dorado fails to allege anything beyond "labels and conclusions." *Twombly*, 550 U.S. at 555.  First, Ms. Dorado does not allege that she was unaware of the Full-Month Rule.  If she had, such a claim would be incredible in light of her loan documents and BANA's annual disclosures, which spelled out the Full-Month Interest Rule to her as recently as January 2013, on the eve of Ms. Dorado's request for the payoff statement.  It would also fly in the face of the news media's extensive coverage of the Full-Month Interest Rule, which she cites in her Complaint.  Second, Ms. Dorado does not allege that she could have avoided paying the $250 in interest even if she had known about the Full-Month Interest Rule.  The Complaint itself shows why that would be impossible.  Ms. Dorado received her payoff statement on March 19, 2013, *see* Compl. ¶ 51, the same month she requested it.  By that time, there was no way for her to rewind the clock and pay on March 1; even if she had notice on an FHA-approved form, Ms.

Dorado could not have avoided paying interest for the remainder of the month. Without adequately alleged damages, her Complaint cannot proceed.

## IV.     CONCLUSION

To comply with financial reforms under the Dodd-Frank Act, FHA announced in 2014 that it would begin phasing out the Full-Month Interest Rule, but only for loans originating after January 21, 2015. While that development has significance to those in the housing market—real estate agents, mortgage bankers, first-time homebuyers—it has no bearing on this case. FHA's decision to discontinue the Full-Month Interest Rule for loans that originated years *after* Ms. Dorado received the benefit of her FHA-insured loan is entirely irrelevant to her breach-of-contract claim.

Ms. Dorado paid her Full-Month Interest to BANA on March 20, 2013, without complaint. And then three years went by, still without a word. The same day that Ms. Dorado brought this putative class action against BANA, her lawyers filed nearly identical suits in the Southern District of Florida[6]—including entire paragraphs replicated verbatim—against Wells Fargo and U.S. Bank. *See* D.E. #8. California law precludes her claim, which is nothing more than an attempt to create a private right of action to enforce federal housing regulations—exactly what courts have consistently rejected. Even if she could proceed, Ms. Dorado does not, and cannot, allege facts that would prove any damages as a result of BANA's supposed contractual breaches. The Complaint must be dismissed with prejudice.

---

[6] *See* Exs. I, J.

DATED:  May 6, 2016                                    Respectfully submitted,

                  s/*Allen W. Burton*
                 Allen W. Burton (*pro hac vice*)
                 O'MELVENY & MYERS LLP
                 7 Times Square
                 New York, NY  10036
                 (212) 326-2000
                 aburton@omm.co

                 William K. Pao (*pro hac vice*)
                 O'MELVENY & MYERS LLP
                 400 South Hope Street
                 Los Angeles, CA  90071
                 (213) 430-6000
                 wpao@omm.com

                 *Attorneys for Defendant Bank of America, N.A.*

## **CERTIFICATE OF SERVICE**

  **I HEREBY CERTIFY** that a true and correct copy of the foregoing was served via transmission of Notice of Electronic Filing generated by CM/ECF this 6th day of May, 2016, and upon the parties named in the attached service list.

                 s/ Alex J. Sabo
                 Alex J. Sabo, Esq. (FBN 262821)
                 E-Mail: asabo@bressler.com
                 BRESSLER, AMERY & ROSS, P.C.
                 SunTrust International Center
                 One SE 3rd Avenue, Suite 1980
                 Miami, FL 33131
                 Telephone: (305) 501-5480
                 Fax:     (305) 501-5499
                 *Counsel for Defendant, Bank of America, N.A.*

## SERVICE LIST

Brett M. Amron, Esq.
BAST AMRON, LLP
One SE 3rd Avenue, Suite 1400
Miami, FL 33131
Email: bamron@bastamron.com
*Counsel for Plaintiff*

Jeffrey W. DeLoach, Esq.
FORTSON, BENTLEY & GRIFFIN, P.A.
2500 Daniell's Bridge Road, Bldg. 200, Suite 3A
Athens, GA 30606
Email: jwd@fbglaw.com
*Counsel for Plaintiff*

Steven Rosenwasser, Esq.
Naveen Ramachandrappa, Esq.
BONDURANT, MIXSON & ELMORE, LLP
1201 W. Peachtree Street NW, Suite 3900
Atlanta, GA 30309
Email: rosenwasser@bmelaw.com
  ramachandrappa@bmelaw.com
*Counsel for Plaintiff*

Adam Hoipkemier, Esq.
Matthew Wetherington, Esq.
THE WERNER LAW FIRM
2860 Piedmont Road NE
Atlanta, GA 30305
Email: adam@wernerlaw.com
  matt@wernerlaw.com
*Counsel for Plaintiff*