IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

VERONICA DORADO, individually and on behalf of a class of similarly situated persons,

    Plaintiff,

vs.

BANK OF AMERICA, N.A.,

    Defendant.

CIVIL ACTION
NO. 1:16-cv-21147-UU

CLASS ACTION
JURY TRIAL DEMANDED

**PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL
OF CLASS SETTLEMENT**

Plaintiff Veronica Dorado ("Plaintiff") has negotiated a proposed settlement (the "Settlement") of the class claims she asserted against Bank of America, N.A. ("BANA"). Plaintiff respectfully moves this Court to enter an order in the form proposed as Exhibit 1, thereby:

(1) Certifying a class for the purpose of Settlement;

(2) Granting preliminary approval of the Settlement;

(3) Approving the forms of notice agreed to by the parties to notify the class members of the Settlement;

(4) Setting deadlines for opting out, objecting and filing fee and service award applications; and

(5) Scheduling a final approval hearing to consider any comments or objections and to make a final ruling on Settlement approval.

As detailed below, the Settlement calls for BANA to (i) pay $29 million to Settlement Class Members and Class Counsel; (ii) disclose post-payment interest in a form that complies with 24 C.F.R. § 203.558 for a period of at least three years; and (iii) incur all fees and costs associated with providing notice and administering the Settlement. The class will obtain these benefits without the risk of litigation, and without the substantial delay that would occur if this Settlement was not reached and this case instead proceeded through class certification, trial, and

appeal, which could take an additional several years. As set forth below, the Settlement is fair, reasonable, and adequate, and should be preliminarily approved.

## I. SUMMARY OF THE CLASS ALLEGATIONS

In this putative class action, Plaintiff alleges that BANA breached Plaintiff's and the putative class members' promissory notes by collecting post-payment interest without the contractual authority to do so.

Pursuant to HUD regulations, all notes underlying FHA-insured loans must contain certain uniform provisions. Dkt. No. 1 ¶ 18. One of those uniform provisions can be found in Section 2, which provides that "[i]nterest will be charged on **unpaid principal**" and "**until** the full amount of principal has been paid." Dkt. No. 1-4 at 2; Dkt. No. 1 ¶ 20 (emphasis added). Plaintiff alleges that Section 2 of the uniform note prohibits BANA from collecting post-payment interest; i.e., interest for the remainder of the month of payoff after the full outstanding balance of the loan has been paid.

While Section 5 permits BANA to collect post-payment interest, it does so only "to the extent . . . **permitted by regulations of the [HUD] Secretary**."[1] Dkt. No. 1 ¶ 68 (emphasis added). Plaintiff contends that BANA did not comply with HUD regulations, yet still collected post-payment interest from Plaintiff and the class. *Id.* ¶¶ 65-72. Specifically, Plaintiff contends that BANA did not comply with 24 C.F.R. § 203.558, which requires that, in response to an inquiry, request for payoff figures or tenders of prepayment, BANA must make certain disclosures regarding post-payment interest "in a form approved by the [HUD/FHA] Commissioner." *Id.* ¶ 69. Plaintiff contends that BANA did not comply with this regulation because the form documents it provided to Plaintiff and the putative class in response to prepayment inquiries, requests for payoff figures or tenders of prepayment were not approved by the HUD/FHA Commissioner. *Id.* ¶ 71. In short, Plaintiff contends that BANA did not comply with HUD regulations incorporated into the uniform note, and thus was not permitted to collect post-payment interest and breached the note by doing so.

---

[1] This same uniform language appears in Section 5 for fixed-rate notes for FHA-insured loans and Section 6 for adjustable-rate notes for FHA-insured loans. Other than placement in a different section, the language addressing post-payment interest is the same for both types of notes.

## II. SUMMARY OF THE PROPOSED SETTLEMENT

### A. Principal Settlement Terms

Plaintiff has negotiated and executed a formal Settlement with BANA, subject to Court approval. The full Settlement Agreement is attached as Exhibit 2.[2] In short, the Settlement provides that:

(i) BANA must pay $29 million, which will be used to compensate class members, as well as to pay any class representative service award and any award of attorneys' fees and expenses;

(ii) For a period of three years, BANA must provide to borrowers of FHA-insured loans who make a pre-payment inquiry, request for payoff figures or tender of prepayment, a disclosure in a form that complies with 24 C.F.R. § 203.558;[3] and

(iii) BANA must pay all fees and costs associated with providing notice and administering the Settlement, which shall be in addition to the $29 million payment referenced above.

*See* Ex. 2 ¶¶ II and III.

With respect to the $29 million settlement amount, those funds will be allocated to class members who will be divided into two groups; i.e., Group 1 Class Members and Group 2 Class Members.[4] Approximately 81% of the class members are classified as Group 1 Class Members. Group 1 Class Members are class members who, in response to a prepayment inquiry, request for payoff figures or tender of prepayment, were sent a form that BANA contends contains all of the required language found on the HUD-approved form at Appendix 8(c) to the HUD Handbook. $17 million of the $29 million in settlement funds will be allocated to Group 1 Class Members.

Approximately 19% of the class members are classified as Group 2 Class Members. Group 2 Class Members are class members who, in response to a prepayment inquiry, request for payoff figures or tender of prepayment, were *not* sent one of the above-referenced forms, but

---

[2] Exhibit 2 does not include the Confidential Supplemental Agreement, but Plaintiff has an executed copy of that addendum and will provide the Court with a copy for *in camera* review if the Court requests.

[3] This injunctive relief pertains solely to the types of loans at issue in this case; i.e., FHA-insured loans originated prior to January 20, 2015.

[4] BANA is compiling a list identifying which class members fall into each group.

rather were sent information about post-payment interest on a form with language that Plaintiff contends differs from that found on Appendix 8(c).  $12 million of the $29 million in settlement funds will be allocated to Group 2 Class Members.  Given that Group 2 Class Members arguably have stronger claims than Group 1 Class Members, Group 2 Class Members are receiving 41.4% of the settlement funds even though they represent only 19% of the Class.

In exchange for these benefits, class members who do not opt out of the Settlement will release any claims they have against BANA and other releasees "with respect to post-payment interest as well as any claim or issue relating to or arising out of any of the claims that were asserted in the *Dorado* Litigation, including any and all claims for damages, injunctive relief, interest, attorneys' fees, and litigation expenses." *Id.* ¶ VII(C)(1).

### B.   Settlement Class Definition

Plaintiff seeks certification of the following class for settlement purposes only (the "Class"):

> Any person who had a FHA-insured loan for which (i) the loan was originated between June 1, 1996 and January 20, 2015; (ii) one of the Releasees (as defined in Section VII(C)(1) of the Settlement Agreement)—as of the date the total amount due on the loan was brought to zero—was the lender, mortgagee, or otherwise held legal title to the note;  (iii) one of the Releasees collected interest for any period after the total amount due on the loan was brought to zero (i.e., BANA collected "post-payment interest"); and (iv) one of the Releasees collected post-payment interest during the statute of limitations period applicable for the loan as shown by Exhibit A.[5]

*Id.* ¶ I.  For purposes of notice, BANA will compile a mailing list of the Class members using BANA's mortgagee data.

### III.   THE COURT SHOULD CERTIFY A CLASS FOR SETTLEMENT PURPOSES

Plaintiff asks the Court to certify the Class described above for the purpose of entering a Settlement with BANA.  "Federal courts have long recognized a strong policy and presumption in favor of class action settlements."  *Gevaerts v. TD Bank*, *N.A.*, No. 11:14-cv-20744-RLR, 2015 WL 6751061, at *4 (S.D. Fla. Nov. 5, 2015).  "Settlement agreements are highly favored in the law and will be upheld whenever possible because they are a means of amicably resolving

---

[5] A copy of Exhibit A is attached hereto at Exhibit 2 at Exhibit A.

doubts and uncertainties and preventing lawsuits." *In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1105 (5th Cir. 1977).

"Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) (citation omitted). However, the Court must find that the other requirements of Rule 23(a) and (b) are satisfied. *Id.* "Subdivisions (a) and (b) focus court attention on whether a proposed class has sufficient unity so that absent members can fairly be bound by decisions of class representatives." *Id.* at 621. That unity is present here.

First, the federal case law emphasizes that class certification is an appropriate and important remedy in consumer cases, particularly where, as here, if class certification is denied, the costs of an individual lawsuit would exceed the recovery any individual Class member could receive. *See, e.g.*, *Lilly v. Jamba Juice Co.*, No. 13-cv-02998-JST, 2014 WL 4652283, at *4 (N.D. Cal. Sept. 18, 2014) ("where the injury to any individual consumer is small, but the cumulative injury to consumers as a group is substantial, [] the class action mechanism provides one of its most important social benefits"); *Laumann v. Nat'l Hockey League*, 105 F. Supp. 3d 384, 407 (S.D.N.Y. 2015) (in consumer cases, class actions are "an important enforcement device"); *McDowell Valley Vineyards, Inc. v. Sabate USA, Inc.*, No. C-04-078 SC, 2004 WL 1771574, at *5 (N.D. Cal. Aug. 6, 2004) (consumer class actions "serve important roles in the enforcement of consumers' rights").

Second, Plaintiff satisfies the four requirements of Rule 23(a)—numerosity, commonality, typicality and adequacy:

Numerosity – The numerosity requirement is satisfied if the proposed class "is so numerous that joinder of all members is impracticable." FED. R. CIV. P. 23(a)(1). "Rule 23(a)(1) imposes a 'generally low hurdle' and a plaintiff need not show the precise number of members in the class." *Palm Beach Golf Center-Boca, Inc. v. Sarris*, 311 F.R.D. 688, 695 (S.D. Fla. 2015). "[W]hile there is no fixed numerosity rule, generally less than twenty-one is inadequate, more than forty adequate, with numbers between varying according to other factors." *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986). Here, the proposed class consists of over 500,000 members, satisfying numerosity. *See* Exhibit 3 (Newman Affidavit) ¶ 6.

Commonality – The commonality requirement demands only that there be "questions of law or fact common to the class." *Piazza v. Ebsco Indus., Inc.*, 273 F.3d 1341, 1346 (11th Cir. 2001). "The commonality requirement 'does not require that all the questions of law and fact raised by the dispute be common or that the common questions of law or fact predominate over individual issues.'" *Delta/AirTran Baggage Fee Antitrust Litig.*, No. 1:09-md-2089-TCB, 2016 WL 3770957, at *4 (N.D. Ga. July 12, 2016). Indeed, "for purposes of Rule 23(a)(2) even a single common question will do." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011). The Eleventh Circuit has described the commonality requirement as a "low hurdle" to overcome. *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1356 (11th Cir. 2009).

The commonality requirement is met here, as there are several material common questions of law and fact. For example, the common questions include, but are not limited to:

* Plaintiff's contention that the promissory notes for Plaintiff and the Class, which are uniform pursuant to HUD regulations, prohibit the collection of post-payment interest unless such interest is collected as "permitted by regulations of the [HUD] Secretary";

* Plaintiff's contention that the HUD regulations incorporated into the uniform note require BANA to provide borrowers who have made a prepayment inquiry, request for payoff figures, or tender of prepayment, certain disclosures relating to post-payment interest in "a form approved by the Commissioner";

* BANA's contention that the form documents discussing post-payment interest that BANA provided to Class members who have made a prepayment inquiry, request for payoff figures, or tender of prepayment, complied with 24 C.F.R. § 203.558;

* Plaintiff's contention that a class member can prove his/her claim by showing that BANA collected interest in breach of the contract or BANA's contention that the class member is also required to show he/she would have moved the closing date if the proper form was provided; and

* BANA's contention that class members' claims are barred by the voluntary payment doctrine.

Commonality is further established because Plaintiff's and the Class's claims arise out of a form contract, and "the alleged breach of standard-form contracts are particularly appropriate for class action." *Dupler v. Costco Wholesale Corp.*, 249 F.R.D. 29, 46 (E.D.N.Y. 2008); *see also In re Universal Serv. Fund Tel. Billing Practices Litig.*, 219 F.R.D. 661, 667 (D. Kan. 2004) (commonality satisfied because claims involve "standard form contract"); *Flanagan v. Allstate*

*Ins. Co.*, 242 F.R.D. 421, 428 (N.D. Ill. 2007) ( "Claims arising out of form contracts are particularly appropriate for class action treatment"). Indeed, "claims arising from interpretations of a form contract appear to present the classic case for treatment as a class action, and breach of contract cases are routinely certified as such." *Steinberg v. Nationwide Mut. Ins. Co.*, 224 F.R.D. 67, 74 (E.D.N.Y. 2004).

<u>Typicality</u> – Typicality is satisfied when the Plaintiff's claims and the Class's claims "arise from the same event or pattern or practice and are based on the same legal theory." *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984). To satisfy this standard, the Plaintiff's "interest in prosecuting [her] own case must simultaneously tend to advance the interests of the absent class members." *Deiter v. Microsoft Corp.*, 436 F.3d 461, 466 (4th Cir. 2006). However, "[t]he interests and claims of Named Plaintiffs and class members need not be identical to satisfy typicality." *DG ex rel. Strickland v. Devaughn*, 594 F.3d 1188, 1198 (10th Cir. 2010). Rather, "[w]hen the class representative's claim and the claims of the other 'class members are based on the same legal or remedial theory, differing fact situations of the class members do not defeat 'typicality'." *In re Quick Cash, Inc.*, 541 B.R. 526, 534 (Bankr. D.N.M. 2015) (*quoting DG ex rel. Strickland*, 594 F.3d at 1198).

The typicality requirement is satisfied here. Plaintiff's claims and each Class member's claim arise from the same practice; i.e., BANA's alleged failure to provide a HUD-approved form to borrowers who have made a prepayment inquiry, request for payoff figures, or tender of pre-payment. Further, Plaintiff's interest in prosecuting her own case simultaneously advances the interests of the absent Class members because the evidence relevant to Plaintiff's claim that the form she was sent was not approved by the FHA or HUD is the same evidence that is relevant to the absent Class members' claims.

Further, like commonality, typicality is satisfied because this case involves a form contract. "[C]ourts have found typicality where there is a common contract at issue, reasoning that 'the similiarity of the contractual forms . . . is, in the Court's view, a significant factor favoring a finding of typicality.'" *Med. Protective Co. v. Center for Advanced Spine Tech.*, No. 1:14-cv:5, 2015 WL 4653220, at *9 (S.D. Ohio Aug. 5, 2015) (quoting *In re Arthur Treacher's Franchise Litig.*, 93 F.R.D. 590, 596–97 (E.D. Pa. 1982)). *See also Doherty v. Hertz Corp.*, No. 10-359, 2014 WL 2916494, at *4 (D.N.J. June 25, 2014) (typicality satisfied because the case involves "the use of a form Hertz contract"); *Brown v. Consumer Law Assocs., LLC*, 283

F.R.D. 602, 613 (E.D. Wash. 2012) (typicality satisfied in case involving a form contract because plaintiff and the class "will be asserting identical claims involving a similar injury and arising from a same course of conduct").

Adequacy – "Adequacy exists where the named plaintiffs share common interests with the class members and seek the same type of relief for themselves as they seek for the class." *In re Checking Account Overdraft Litig.*, 286 F.R.D. 645, 654 (S.D. Fla. 2012). Here, Plaintiff and the Class all share the same factual and legal positions given that Plaintiff and the Class all are subject to, and assert a breach of, the same provisions of the uniform note. Further, Plaintiff and the Class share the common objective of recovering the post-payment interest BANA collected in breach of the uniform note.

Class Counsel also satisfies the adequacy requirement. Bondurant, Mixson & Elmore, LLP ("BME") has extensive experience handling class actions, having litigated over 50 class actions on behalf of both plaintiffs and defendants. *See* Exhibit 4 (Rosenwasser Affidavit) ¶ 4 and Exhibit 1 thereto. Further, Class Counsel has personally litigated numerous class actions, including, without limitation: (i) Steven Rosenwasser litigated a class action race discrimination case against The Coca-Cola Company (which settled for $192.5 million, the largest settlement of a discrimination case at the time), Federal Express (which settled for $21.5 million) and Synovus Bank (which settled for $34 million); (ii) Naveen Ramachandrappa has served as counsel of record in a class action against Federal Express Corporation (which settled for $21.5 million) and as counsel of record in a class action against ADP; (iii) Adam Hoipkemier, Jeffrey DeLoach and Kevin Epps have been appointed as lead counsel in a class action that recovered more than $3 million and obtained injunctive relief on behalf of a class of more than 12,000 customers of a chain of rent-to-own stores; and (iv) Brett Amron, who has been recognized among the *Best Lawyers in America*, has served as Special Counsel to the Official Committee of Unsecured Creditors and Liquidating Trustee in several matters, resulting in millions of dollars being recovered by creditors. *See* Ex. 4 (Rosenwasser Aff.) ¶ 5; Exhibit 5 (Ramachandrappa Decl.) ¶¶ 5–6; Exhibit 6 (Hoipkemier Decl.) ¶ 5-6; Exhibit 7 (Amron Dec.) ¶¶ 7, 9. Moreover, Rosenwasser, Ramachandrappa, Hoipkemier, DeLoach and Epps have all been named as class counsel with respect to the settlement of a case involving similar allegations against SunTrust Bank, N.A. *See Felix, et al. v. SunTrust Bank, N.A.*, No. 2:16-cv-66-RWS (N.D. Ga.).

Third, Rule 23(b)(3) is satisfied. Rule 23(b)(3) requires that "the questions of law or fact common to the class members predominate over any questions affecting individual members, and that a class action is superior to other available methods to fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3). Here, the common questions predominate. Plaintiff's individual claim, and each Class member's claim, stand or fall on the common question of whether BANA sent them a form that was approved by the FHA or HUD in response to a prepayment inquiry, request for payoff figures, or tender of prepayment.

Further, because the average class member's damages are a few hundred dollars, this case presents a "negative value suit"; i.e., a case where an individual suit will cost a Class member more than he or she could recover. One of the "most compelling rationale[s] for finding superiority in a class action" is "the existence of a negative value suit." *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 748 (5th Cir. 1996). That is because where, as here, the costs of litigating exceed the potential recovery, there is no alternative to class actions for "fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3). Further, even if the cost of individual lawsuits did not exceed the potential recovery, proceeding on an individual basis would result in duplicative, unnecessary work for the parties and the Court. Indeed, the facts and evidence relevant to show that the form documents that BANA provided borrowers in response to inquiries, requests for payoff figures or tenders of prepayment were not approved by the FHA or HUD are the same for every member of the Class. It would be a waste of the parties' and this Court's time and resources if every one of the over 500,000 Class members needed to conduct discovery on the fact that BANA's forms were not FHA approved.

Accordingly, this Court should certify a Class, as defined above, for the purpose of settlement.

## IV. THE COURT SHOULD GRANT PRELIMINARY APPROVAL OF THE PROPOSED SETTLEMENT

### A. The Law Governing Approval of Class Settlements

Approval of a class action settlement occurs in several steps. First, the district court conducts a preliminary evaluation of the fairness and adequacy of the settlement to determine

whether there is good reason to schedule a full fairness hearing and notify the settlement class.[6] This examination is generally "made on the basis of information already known, supplemented as necessary by briefs, motions, or informal presentations by parties."  Manual for Complex Litigation (Fourth) § 21.632, at 320–21.

"The purpose of this cursory examination is to detect defects in the settlement that would risk making 'notice to the class, with its attendant expenses, and a hearing . . . futile gestures.'" *In re Elec. Data Sys. Corp. "ERISA" Litig.*, No. 6:03-MD-1512, 2005 WL 1875545, at *4 (E.D. Tex. June 30, 2005) (quoting Newberg on Class Actions § 11:25 (4th ed. 2002)).  "A preliminary fairness assessment 'is not to be turned into a trial or rehearsal for trial on the merits,' for 'it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements.'  Rather, the Court's duty is to conduct a threshold examination of the overall fairness and adequacy of the settlement in light of the likely outcome and the cost of continued litigation." *In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. 330, 350 (N.D. Ohio 2001) (citation omitted).

If the settlement appears to be fair and adequate upon a preliminary examination, then the district court directs the plaintiff to send notice of the proposed settlement to the class.  After receiving any comments and objections from the class members, the court conducts a final fairness hearing on settlement approval.  Manual for Complex Litigation, Fourth, § 21.632 at 320–21; *In re Skinner*, 206 B.R. at 261–62; *McNamara*, 214 F.R.D. at 426; *In re Prudential Ins.*, 962 F. Supp. at 562.

At this final fairness hearing, the district court evaluates the settlement in light of the following factors: "(1) the existence of fraud or collusion [among the parties in reaching] the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings at which the settlement was achieved and the amount of discovery completed; (4) the probability of the plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of the class counsel, class representatives, and the substance and amount of

---

[6] *See* Manual for Complex Litigation, Fourth § 21.632 at 320–21; *In re Skinner Grp., Inc.*, 206 B.R. 252, 261–62 (Bankr. N.D. Ga. 1997); *McNamara v. Bre-X Minerals Ltd.*, 214 F.R.D. 424, 426 (E.D. Tex. 2002); *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F. Supp. 450, 562 (D.N.J. 1997), *aff'd*, 148 F.3d 283 (3d Cir. 1998).

opposition to the settlement." *Leverso v. SouthTrust Bank of Ala., N.A.*, 18 F.3d 1527, 1531 n.6 (11th Cir. 1994). The district court evaluates these six factors in light of "the strong judicial policy favoring settlement as well as by the realization that compromise is the essence of settlement." *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984). "Particularly in class action suits, there is an overriding public interest in favor of settlement." *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977). "[A]ccordingly class-action settlements will be disapproved only upon 'considerable circumspection.'" *Mashburn v. National Healthcare, Inc.*, 684 F. Supp. 660, 667 (M.D. Ala. 1988) (quoting *Jamison v. Butcher & Sherrerd*, 68 F.R.D. 479, 481 (E.D. Pa. 1975)).

This means that, "in evaluating the terms of the compromise in relation to the likely benefits of a successful trial, the trial judge ought not try the case in the settlement hearings. . . . It cannot be overemphasized that neither the trial court in approving the settlement nor this Court in reviewing that approval have the right or the duty to reach any ultimate conclusions on the issues of fact and law which underlie the merits of the dispute." *Cotton*, 559 F.2d at 1330. "Neither should it be forgotten that compromise is the essence of a settlement. The trial court should not make a proponent of a proposed settlement 'justify each term of settlement against a hypothetical or speculative measure of what concessions might have been gained; inherent in compromise is a yielding of absolutes and an abandoning of highest hopes.'" *Id.* (quoting *Milstein v. Werner*, 57 F.R.D. 515, 524–25 (S.D.N.Y.1972)). "In performing this balancing task, the trial court is entitled to rely upon the judgment of experienced counsel for the parties. Indeed, the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel." *Cotton*, 559 F.2d at 1330 (citation omitted).

### B. The Court Should Grant Preliminary Approval of the Settlement

This Settlement is at the first stage described above, in which the Court conducts a preliminary examination to determine whether the settlement appears to be fair, reasonable and adequate and that there is good reason to give notice to the Class. With a forward eye towards the factors for final approval identified in *Cotton* and *Bennett*, the Court should grant preliminary approval of the Settlement and order Plaintiff to notify the Class.

<u>"The existence of fraud or collusion among the parties in reaching the settlement"</u> – "Where the parties have negotiated at arm's length, the Court should find that the settlement is not the product of collusion." *Saccoccio v. JPMorgan Chase Bank, N.A.*, 297 F.R.D. 683, 692 (S.D. Fla.

2014). Here, the Settlement was the result of hard-fought negotiations, which required the intervention of an independent third-party mediator, Jeff Grubman. Courts have consistently held that the presence of an independent mediator belies any suggestion of fraud or collusion. *See, e.g.*, *Montoya v. PNC Bank, N.A.*, No. 14-2-474-CIV-Goodman, 2016 WL 1529902, at *8 (S.D. Fla. Apr. 13, 2016) (use of mediator indicates that there is "no suggestion of fraud or collusion"); *In re WorldCom, Inc. ERISA Litig.*, No. 02-Civ-4816, 2004 WL 2338151, at *6 (S.D.N.Y. Oct. 18, 2004) (presence of mediator negates any suggestion of collusion).

"The complexity, expense and duration of the litigation" – In the event that this case was not settled, Plaintiff and the Class faced the prospect of a long and potentially expensive litigation. For one, given that this case was still in the midst of discovery, if there is no settlement, the case would likely continue for several additional years before a final, non-appealable judgment would be reached. The early settlement accomplished in this matter provides the Class with the opportunity to avoid that delay, and to obtain a recovery now.

Further, this matter would have likely included a meaningful amount of additional expense. Indeed, if this matter continued through expert discovery, class certification, trial and appeal, it is likely that Class Counsel would incur over a million dollars in attorneys' fees and over a quarter of a million dollars in expenses (for experts and depositions). *See* Ex. 4 (Rosenwasser Aff.) ¶ 10.

In addition, while Plaintiff believes that resolution of this case involves a straightforward question of whether the form documents that BANA sent Plaintiff and the Class in response to a prepayment inquiry, request for payoff figures, and tender of prepayment were approved by the FHA or HUD, BANA has raised defenses that make this matter more complicated, including, but not limited to, claiming that (i) Plaintiff is attempting to create a private cause of action to enforce HUD regulations; (ii) the HUD regulations are not incorporated into the uniform note; and (iii) Plaintiff and each member of the Class must show that he or she would have changed the closing date if an approved form were provided. While Plaintiff is confident she can defeat each of these defenses, they nonetheless created issues that Plaintiff would have to address and overcome.

"The Stage of Proceedings at which the settlement was achieved and the amount of discovery completed" – As stated above, the Settlement was achieved in the middle of discovery. This fact militates in favor of approving the Settlement for at least two reasons. First, by settling the

litigation now, the Class avoids the risk of losing summary judgment or having Plaintiff's motion for class certification denied. Second, a settlement allows Class members to obtain recovery several years faster than they would have if this case proceeded through trial and appeal.

With respect to the amount of discovery completed, Plaintiff and Class Counsel were able to make an informed decision regarding the settlement amount. For one, Plaintiff obtained in discovery BANA's mortgagee data, which identified, among other things, each borrower who paid post-payment interest and provided data that allowed for the calculation of the amount of post-payment interest paid. *See* Ex. 3 (Newman Aff.) ¶¶ 3, 6. Thus, Plaintiff had more than sufficient information upon which to base her damages claim to negotiate a fair and reasonable settlement.

In addition, through discovery, Plaintiff obtained a copy of each form and payoff statement that BANA used during the applicable statutes of limitations periods, and information as to whom each form was sent. Through that discovery, Plaintiff was able to evaluate the strengths and weaknesses of BANA's claims relating to each of the forms, and was able to apply that evaluation to the damages given that BANA provided an affidavit in connection with the settlement identifying the number of class members to whom BANA sent each form.

"The probability of plaintiffs' success on the merits" – Although Plaintiff strongly believes in the strength of her claims, Plaintiff nonetheless faces hurdles before obtaining a final judgment. Indeed, among other things, Plaintiff would still have to obtain class certification, defeat summary judgment (and any associated 23(f) appeal) and then succeed at trial.

"The range of possible recovery" – The proposed Settlement constitutes roughly 14% of the recovery the Group 1 Class Members could have received and 46% of the recovery the Group 2 Class Members could have received if this case was successfully litigated this action through trial and appeal. *See* Ex. 4 (Rosenwasser Aff.) ¶ 10. This percentage recovery is substantially higher than settlements that this and other courts have approved. *See, e.g.*, *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 325 (N.D. Ga. 1993) (approving class settlement equal to **12–15%** of potential recovery); *In re Motorsports Merch. Antitrust Litig.*, 112 F. Supp. 2d 1329, 1335 (N.D. Ga. 2000) (approving class settlement of **less than 10%** of the potential damages); *Strube v. American Equity Inv. Life Ins. Co.*, 226 F.R.D. 688, 698 (M.D. Fla. 2005) (approving settlement equal to **about 2%** of expert's damages calculation); *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 542–43 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990)

(approving settlement equal to **3 to 5%** of the per share recovery sought by plaintiffs and observing that "the fact that a proposed settlement amounts to only a fraction of the potential recovery does not mean the settlement is unfair or inadequate"); *In re Currency Conversion Fee Antitrust Litig.*, 2006 WL 3247396, at *6 (S.D.N.Y. Nov. 8, 2006) (approving settlement of antitrust and consumer protection claims by all defendants for "**roughly 10–15%**" of the allegedly illegal fees collected from the class); *In re Linerboard Antitrust Litig.*, 296 F. Supp. 2d 568, 581 & n.4 (E.D. Pa. 2003) (collecting cases approving antitrust settlements for low fractions of potential recovery). See also *In re Cendant Corp. Litig.*, 264 F.3d 201, 231 (3d Cir. 2001) (approving settlement of 36% of total damages and noting that typical recoveries in complex securities class actions range from 1.6%–14% of estimated damages); *In re Aetna*, No. CIV. A. MDL 1219, 2001 WL 20928, at *4 (E.D. Pa. Jan. 4, 2001) (approving settlement of approximately **10%** of total damages of $830 million); *Stop & Shop Supermarket Co. v. SmithKline Beecham Corp.*, No. Civ. A. 03-4578, 2005 WL 1213926, at *9 (E.D. Pa. May 19, 2005) (recovery of **11.4%** of estimated single damages "compares favorably with the settlements reached in other complex class action lawsuits").

Indeed, **this Court has found that a settlement equal to "nine percent [of the estimated damages] or higher constitutes a fair settlement**." *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1346 (S.D. Fla. 2011) (emphasis added). See also *Behrens*, 118 F.R.D. at 542 (King, C.J.) ("A settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery."); *Newbridge Networks Sec. Litig.*, No. CIV. A. 94-1678-LFO, 1998 WL 765724, at *2 (D.D.C. Oct. 23, 1998) ("an agreement that secures roughly six to twelve percent of a potential recovery . . . seems to be within the targeted range of reasonableness"); *In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706, 715 (E.D. Pa. 2001) (noting that since 1995, class action settlements have typically "recovered between 5.5% and 6.2% of the class members' estimated losses").

"The opinions of class counsel, the class representatives, and the substance and amount of opposition to the settlement" – As stated above, Class Counsel has extensive experience litigating class actions on both the plaintiff and defense side. Class Counsel would not have agreed to the settlement, and would not request approval from this Court, if they did not believe that this settlement was fair, reasonable and adequate. Indeed, it is Class Counsel's opinion that the Class members' ability to recover 14% and 46% of their damages (before reduction for fees)

provides the Class with a substantial benefit given the risks and delays that the settlement avoids. *See* Ex. 4 (Rosenwasser Aff.) ¶ 10.

## V. Plaintiff's Proposed Schedule for Settlement Approval

Plaintiff has proposed a form of order that will address the schedule and course of proceedings for settlement approval. *See* Ex. 1. BANA has consented to entry of this order. In sum, the order proposed by Plaintiff would place settlement approval on the following schedule:

| | |
|---|---|
| Individual notice in the form of Exhibits 8 and 9 will be mailed to class members. | Thirty calendar days from grant of preliminary approval |
| Publication notice in the form of Exhibit 10 will be published in *USA Today* and *Wall Street Journal* | Thirty calendar days from grant of preliminary approval |
| Class Counsel will file motions (1) for reimbursement of expenses and for award of attorney fees and (2) for service award to the plaintiff | Forty-five calendar days from grant of preliminary approval |
| Deadline to (1) request exclusion from the Settlement Class or (2) file objections to the settlements or to motion for reimbursement of expenses and for award of attorneys' fees or the service award | Sixty calendar days from grant of preliminary approval |
| Final Approval Hearing | Ninety calendar days from grant of preliminary approval |

Plaintiff has attached forms of the full mailed notices and publication notice for the Court's review and approval as Exhibits 8, 9 and 10 respectively. BANA has consented to these forms of notice.

## CONCLUSION

For the reasons set forth above, Plaintiff asks the Court to enter the proposed Order attached hereto as Exhibit 1.

WHEREFORE, Plaintiff respectfully requests that the Court enter the proposed Order attached to this Motion as Exhibit 1, and grant Plaintiff such other and further relief as the Court deems just and proper.

Dorado submits this Motion on November 21, 2016.

/s/ Brett M. Amron
Brett M. Amron
Fla. Bar No. 148342
Jeremy S. Korch
Fla. Bar No. 14471
BAST AMRON, LLP
One Southeast Third Ave Ste 1400
Miami, FL 33131
305-379-7904
bamron@bastamron.com
jkorch@bastamron.com

Steven J. Rosenwasser
Ga. Bar No. 614908
Naveen Ramachandrappa
Ga. Bar No. 422036
Fredric J. Bold, Jr.
Ga. Bar No. 544604
BONDURANT, MIXSON &
ELMORE, LLP
1201 W Peachtree St NW
Ste 3900
Atlanta, GA  30309
404-881-4100
rosenwasser@bmelaw.com
ramachandrappa@bmelaw.com
bold@bmelaw.com
*pro hac admitted*

Kevin E. Epps
Ga. Bar No. 785511
Adam Hoipkemier
Ga. Bar No. 745811
EPPS, HOLLOWAY, DELOACH &
HOIPKEMIER, LLC
1220 Langford Dr Bldg 200 Ste 101
Watkinsville, GA 30677
706-508-4000
kevin@ehdlaw.com
adam@ehdlaw.com
*pro hac admitted*

## CERTIFICATE OF SERVICE

I certify that, on November 21, 2016, I filed **PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT** using the CM/ECF system, which will provide electronic notification and service on the following counsel:

William K. Pao
O'Melveny & Myers LLP
400 South Hope Street
Los Angeles, CA 90071
*wpao@omm.com*

Allen Burton
O'Melveny & Myers LLP
Times Square Tower
7 Times Square
New York, NY 10036
*aburton@omm.com*

Alex J. Sabo
Bressler, Amery & Ross, P.C.
SunTrust International Center
One SE 3rd Avenue, Suite 1980
Miami, FL 33131
*asabo@bressler.com*

*/s/ Brett M. Amron*
Brett M. Amron