# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA
# MIAMI DIVISION

| | |
|---|---|
| VERONICA DORADO, individually and on behalf of a class of similarly situated persons,<br><br>    Plaintiff,<br><br>v.<br><br>BANK OF AMERICA, N.A.,<br><br>    Defendant. | Case No. 1:16-CV-21147-UU<br>Ungaro/Otazo-Reyes<br><br>CLASS ACTION<br>JURY TRIAL |

## PLAINTIFF'S MOTION FOR AN AWARD OF
## ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES
## AND MEMORANDUM OF LAW IN SUPPORT

As the result of extensive due diligence, comprehensive fact discovery and legal analysis, and well-drafted pleadings and motions, Class Counsel[1] reached a settlement before the close of discovery, which provides the class with substantial benefits without the years of delay that typically accompany class actions like this one. As discussed below, Class Counsel has been able to achieve a settlement that requires Bank of America, N.A. ("Bank of America") to pay tens of millions of dollars to the class and to agree to a three-year injunction, without the risks and delays associated with Bank of America's continued opposition through the class certification, summary judgment, trial, and appellate stages of this litigation. Through this motion, Class Counsel respectfully seeks to be compensated for the work they performed to provide the class with timely and substantial relief.

**ARGUMENT AND CITATION TO AUTHORITY**

**I.    Summary of the Law Governing Fee Applications**

It is well established that when a representative party has created a "common fund" for or has conferred a "substantial benefit" upon an identifiable class, its counsel is entitled to attorneys' fees based upon the benefit obtained. *Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980); *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375 (1970); *Camden I Condominium Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 771 (11th Cir. 1991); *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 349 (N.D. Ga. 1993); *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188 (6th Cir. 1974).[2]

The "common fund" and "substantial benefit" doctrines are exceptions to the general rule that each party must bear its own litigation costs, and they serve the "twin goals of removing a potential financial obstacle to a plaintiff's pursuit of a claim on behalf of a class and of equitably

---

[1] "Class Counsel" herein refers to Bondurant, Mixson & Elmore, LLP; Epps, Holloway, DeLoach & Hoipkemier, LLC; and Bast Amron, LLP. *See* Dkt. 113 at ¶ 5 (appointing class counsel).

[2] The criteria for application of the common fund doctrine are satisfied when "each member of a certified class has an undisputed and mathematically ascertainable claim to part of a lump-sum judgment recovered on his behalf." *Boeing*, 444 U.S. at 479. In *Allapattah Services, Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1199 (S.D. Fla. 2006), the court identified the following attributes of a "common fund" settlement: (1) the beneficiary class is sufficiently identifiable; (2) the benefits can be accurately traced to them; and (3) the fee can be shifted with some exactitude to those benefiting from the settlement. In this case, all of the elements of a "common fund" are present. In fact, a monetary settlement fund to be divided among the class is the most obvious type of common fund.

distributing the fees and costs of successful litigation among all who gained from the named plaintiff's efforts." *In re Gould Sec. Litig.*, 727 F. Supp. 1201, 1203 (N.D. Ill. 1989); *see also Ramey*, 508 F.2d at 1195; *Reiser v. Del Monte Props. Co.*, 605 F.2d 1135, 1139 (9th Cir. 1979). These concepts are based on the premise that those who receive the benefit of a lawsuit without contributing to its costs are "unjustly enriched" at the expense of the successful litigant. *Boeing*, 444 U.S. at 478; *Mills*, 396 U.S. at 392.

Courts also have recognized that appropriate awards of attorneys' fees in cases such as this encourage attorneys to seek redress for wrongs caused to entire classes of persons and discourage future misconduct of a similar nature:

> [C]ourts . . . have acknowledged the economic reality that in order to encourage "private attorney general" class actions brought to enforce . . . laws on behalf of persons with small individual losses, a financial incentive is necessary to entice capable attorneys, who otherwise could be paid regularly by hourly-rate clients, to devote their time to complex, time-consuming cases for which they may never be paid.

*Mashburn v. Nat'l Healthcare, Inc.*, 684 F. Supp. 679, 687 (M.D. Ala. 1988); *see also Deposit Guaranty Nat'l Bank v. Roper*, 445 U.S. 326, 338-39 (1980); *Pinto v. Princess Cruise Lines, Ltd.*, No. 05-23087, 2007 WL 853431, at *4 (S.D. Fla. Feb. 16, 2007); *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. at 348-49.

Indeed, adequate compensation promotes the availability of plaintiff's counsel:

> If the plaintiffs' bar is not adequately compensated for its risk, responsibility, and effort when it is successful, then effective representation for plaintiffs in these cases will disappear. . . . We as members of the judiciary must be ever watchful to avoid being isolated from the experience of those who are actively engaged in the practice of law.  It is difficult to evaluate the effort it takes to successfully and ethically prosecute a large plaintiffs' class action suit.  It is an experience in which few of us have participated.  The dimensions of the undertaking are awesome.

*Muehler v. Land O'Lakes, Inc.*, 617 F. Supp. 1370, 1376 (D. Minn. 1985) (awarding requested 35% of common fund as fee).

The United States Supreme Court has consistently upheld the percentage-of-the-fund basis for making common fund fee awards. *See Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984). Indeed, the Eleventh Circuit *requires* that attorneys' fees in common fund cases must be determined based

upon this approach.  *See Camden I*, 946 F.2d at 774.  By contrast, the Eleventh Circuit rejected the "lodestar/multiplier" approach, which involves multiplying the number of hours expended by counsel by their hourly rates, and then adjusting that figure (the "lodestar") by a discretionary "multiplier" to reflect such factors as the riskiness of the particular litigation or the excellence of the result achieved.  *Id.*

"There is no hard and fast rule mandating a certain percentage of a common fund which may reasonably be awarded as a fee because the amount of any fee must be determined upon the facts of each case."  *Id.*  The Eleventh Circuit articulated various factors that it regards as "appropriately used" in determining the proper amount of the fee award, including:

(1) the time invested;
(2) the complexity and difficulty of the issues;
(3) the skills required to produce the results obtained;
(4) preclusion of other employment;
(5) customary fees in similar circumstances;
(6) the contingent nature of plaintiffs' counsel's fees;
(7) time limitations imposed by the circumstances;
(8) the amount involved and the results achieved;
(9) the skills of the attorneys;
(10) the undesirability of the action;
(11) the nature and length of the professional relationships with the class representatives and members; and
(12) awards in similar cases.

*See id.* at 772 (citing *Johnson v. Ga. Hwy. Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), abrogated on other grounds, *Blanchard v. Bergeron*, 489 U.S. 87 (1989)); *see also Ingram v. Coca-Cola Co.*, 200 F.R.D. 685, 688 (N.D. Ga. 2001).[3]

**II.  Class Counsels' Request for Attorneys' Fees Is Appropriate in This Case.**

As shown below, Class Counsel submits that their request for the Court's approval of fees of 33% of the Settlement Fund is amply justified in light of the *Johnson* factors.

---

[3] These factors are often referred to as the "*Johnson* factors."  The *Camden I* Court also identified additional factors that may be considered when evaluating a percentage fee award: the time required to reach the settlement, objections from the class to "settlement terms or the fees requested," non-monetary benefits, the "economics involved in prosecuting a class action," and other factors "unique to a particular case."  *Camden I*, 946 F.2d at 775.  To the extent relevant here, these factors are evaluated below.

Time Involved Investigating and Pursuing the Claims

Before filing the lawsuit, Class Counsel spent several months conducting extensive due diligence to investigate, analyze, and develop the class claims. *See* Ex. A (Rosenwasser Decl.) ¶ 4; Ex. B (Ramachandrappa Decl.) ¶ 4; Ex. C (Hoipkemier Decl.) ¶ 4; Ex. D (Korch Decl.) ¶ 4; *see also, e.g.*, *Hetherington v. Omaha Steaks, Inc.*, No. 3:13-CV-02152, 2016 WL 4374947, at *3 (D. Or. Aug. 12, 2016) (in approving fee, noting that class counsel devoted substantial effort to pre-filing investigation); *In re Facebook, Inc. IPO Secs. & Derivative Litig.*, No. 12-2389, 2015 WL 6971424, at *10 (S.D.N.Y. Nov. 9, 2015) (one factor in determining fee is the "extensive investigation" into the matter); *Mills v. Capital One, N.A.*, No. 14-CV-1937, 2015 WL 5730008, at *15 (S.D.N.Y. Sept. 30, 2015) (noting that "investigation of plaintiffs' claims" was a factor warranting requested fee). That due diligence included, but was not limited to, (i) reviewing the uniform notes underlying FHA-insured loans and documents relating thereto; (ii) analyzing HUD regulations; (iii) researching and analyzing case law relating to claims for breach of HUD regulations incorporated into contracts; and (iv) requesting, obtaining, and reviewing loan files. *See* Ex. A ¶ 5; Ex. B ¶ 5; Ex. C ¶ 5; Ex. D ¶ 5. Class Counsel undertook this investigation, which took dozens of hours, without being paid an hourly rate; *i.e.*, Class Counsel fully assumed the risk that the investigation would not result in identifying a viable claim and, thus, Class Counsel would not be paid for their time.

After deciding to move forward with litigation, Class Counsel incurred substantial time and expense preparing the Complaint, including reviewing the underlying documents, drafting the Complaint, and conducting extensive legal research to ensure that the proper claims were brought. *See* Ex. A ¶ 6; Ex. B ¶ 6; Ex. C ¶ 6; Ex. D ¶ 6. This included research on breach of contract and associated law not only in California but nationwide (given that this is a nationwide class action).

After filing the lawsuit, Class Counsel faced the immediate challenge of responding to Bank of America's motion to dismiss, which raised numerous grounds for dismissal. Preparing the response included, *inter alia*, researching responses to Bank of America's argument that Plaintiff was allegedly asserting a private cause of action to enforce HUD regulations, as well as Bank of America's voluntary payment and causation defenses. *See* Ex. A ¶ 7; Ex. B ¶ 7; Ex. C ¶ 7; Ex. D ¶ 7. Related, Class Counsel also opposed Bank of America's motion to stay all discovery pending the

Court's resolution of Bank of American's motion to dismiss.  *See* Order [Dkt. 34].  The Court denied those motions by Bank of America.

Class Counsel also incurred substantial time and expense engaging in five months of vigorously contested discovery.  Class Counsel exchanged hundreds of emails about discovery, conferred by phone with defense counsel more than ten times, moved to compel discovery from Bank of America, and moved to compel Bank of America to comply with the Court's discovery order.  *See* Dkts. 65, 86.  Class counsel responded to Bank of America's document requests, interrogatories, and requests for admission and collected and produced responsive documents from Ms. Dorado.  In addition, Class Counsel drafted and served eight sets of document requests, five sets of interrogatories, and three sets of requests for admission.  Class Counsel reviewed and analyzed almost 4,000 pages of documents produced by Bank of America.  In addition to those documents, Class Counsel negotiated for the production of over half a million rows of Excel-based mortgagee data for each of Bank of America's customers who were a part of the class.  Class Counsel engaged expert witnesses to manage that voluminous data set and to write formulas so that Class Counsel could determine the amount of post-payment interest that Bank of America collected.  *See* Ex. A ¶ 8; Ex. B ¶ 8; Ex. C ¶ 8; Ex. D ¶ 8.  Altogether Class Counsel spent over ***792 hours*** between the filing of the complaint and the mediation engaged in the motion practice and discovery process discussed above.  *See* Ex. A ¶ 9; Ex. B ¶ 9; Ex. C ¶ 9; Ex. D ¶ 9.

Further, Class Counsel participated in a mediation and settlement of this class action, which involved over ***195 hours*** collectively spent by Class Counsel preparing for, attending the mediation, and then drafting the settlement documents.  *See* Ex. A ¶ 10; Ex. B ¶ 10; Ex. C ¶ 10; Ex. D ¶ 10.

Altogether, Class Counsel and their paralegal-related staff have spent over ***1,038 hours*** investigating, researching, and litigating this case.  *See* Ex. A ¶ 11; Ex. B ¶ 11; Ex. C ¶ 11; Ex. D ¶ 11.

Timing of the Settlement

Class Counsel was able to obtain a settlement in this action just over six months after the complaint was filed and approximately one month before the close of discovery.  Thus, the Class will obtain their recovery ***<u>years earlier</u>*** than they otherwise would have if this case proceeded through class certification, summary judgment, trial, and appeal.  This militates in favor of a higher attorneys' fee award:

> All of the benefits the settlement confers upon the class as described above, and as more particularly described in this Court's companion memorandum opinion approving the settlement, are magnified by the fact that class counsel were able to achieve these results in a very short period of time. From the time the complaint was filed in this lawsuit until the time notice of the proposed settlement was mailed to all class members, less than one year had passed.
>
> Had the case not been settled at this early stage, it is this Court's opinion that it would have been *at least* another year until trial. During that year, the expenses incurred by class counsel would have multiplied by several times due to the increased need for the taking of a substantial number of depositions, perhaps numbering as many as a hundred or more, and the need to hire numerous expert witnesses on several issues including accounting issues, class-wide damages, and expert testimony regarding the professional duties and responsibilities of attorneys. Even if class counsel had prosecuted this case until its ultimate end in this court, it is likely that they would not have achieved any result for the class for several years, and, even then, the final result may not have been as favorable to the class as the settlement heretofore approved by this Court.

*Mashburn*, 684 F. Supp. at 693. Indeed, in *Asare v. Change Group N.Y., Inc.*, No. 12 Civ. 3371, 2013 WL 6144764 (S.D.N.Y. Nov. 18, 2013), the Court cited the fact that the case was settled "at an early stage of litigation" as a factor that "strongly supports" the attorneys' fee award requested in that case. *See also Ramirez v. Lovin' Oven Catering Suffolk, Inc.*, No. 11 Civ. 0520, 2012 WL 651640, at *4 (S.D.N.Y. Feb. 24, 2012) (in determining the fee award, the Court noted that Class Counsel achieved an "excellent result for the Class in a highly efficient manner at an early stage of litigation").

Further, while Plaintiff strongly believes in her claims, by settling this case now, the Class avoided the risks associated with having the Court rule on the motions that Bank of America would inevitably file, including its opposition to Plaintiff's motion for class certification and a motion for summary judgment. *See, e.g.*, *Curtis-Bauer v. Morgan Stanley & Co.*, No. 06-3903, 2008 WL 4667090, at *4 (N.D. Cal. Oct. 22, 2008) ("Settlement avoids the complexity, delay, risk and expense of continuing with the litigation and will produce a prompt, certain, and substantial recovery for the Plaintiff class."); *Brown v. Lowe's Cos., Inc.*, No. 5:13-CV-00079, 2016 WL 3457025, at *2 (W.D.N.C. June 21, 2016) ("The settlement will avoid substantial additional costs to all parties as well as the delay and risks that would be presented by further prosecution of this litigation.").

### The Novelty and Difficulty of the Issues Involved

While Class Counsel believe that the issues in this case are straightforward, this case is nonetheless a nationwide class action. And, "[i]t is common knowledge that class action suits have a well deserved reputation as being most complex." *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977). *See also In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000) ("Most class actions are inherently complex"); *Francisco v. Numismatic Guaranty Corp. of Am.*, No. 06-61677, 2008 WL 649124, at *15 (S.D. Fla. Jan. 31, 2008) ("Class actions are inherently complex to prosecute because the legal and factual issues are complicated and uncertain in outcome.").

Moreover, despite the straightforward issues raised by Plaintiff's claims, Bank of America has endeavored to create complexity by raising a number of affirmative defenses, including, but not limited to, the voluntary payment doctrine and causation. While Class Counsel can demonstrate that those defenses are without merit, Class Counsel was nonetheless required to engage in legal research and analysis to respond to those defenses.

### The Skill Required to Perform the Legal Services Properly

Class Counsels' fees should also reflect the degree of experience, competence, and effort necessary to achieve the proposed settlement. As recognized in *Edmonds v. United States*, 658 F. Supp. 1126, 1137 (D.S.C. 1987), the "prosecution and management of a complex national class action requires unique legal skills and abilities." Those unique skills were called upon here. The quality of Class Counsels' work on this case is ultimately reflected in the amount of the $29 million settlement before the Court. From the outset, Class Counsel marshaled considerable resources and time in the research, investigation, and presentation of the facts and applicable law. Class Counsel put together a case and were able settle with terms favorable to the Class without the extensive risks and delay typically associated with class actions.

Further, the Court should consider the quality of the opposition when assessing the quality of Class Counsels' representation. *See, e.g.*, *Ressler v. Jacobson*, 149 F.R.D. 651, 654 (M.D. Fla. 1992); *Johnson*, 488 F.2d at 718. Bank of America is represented by O'Melveny & Myers, a prominent international law firm with substantial resources and a zealous commitment to defeating Plaintiff and the putative class. This litigation and the settlement clearly demanded skilled and experienced Class Counsel.

<u>Preclusion of Other Employment and Time Limitations</u>

The *Johnson* Court held that a fee award should be increased if the attorney was precluded from accepting other employment due to the acceptance of the case. *See Johnson*, 488 F.2d at 718. The *Johnson* Court observed that "[p]riority work that delays the lawyer's other legal work is entitled to some premium." *Id.*

This case has required substantial attention from Class Counsel. Indeed, even before the Complaint was filed, Class Counsel devoted over 50 hours of time conducting a factual and legal investigation to ensure that the claims were viable. *See* Ex. A ¶ 4; Ex. B ¶ 4; Ex. C ¶ 4; Ex. D ¶ 4. Further, once the Complaint was filed, Class Counsel had to devote substantial attention to it given the accelerated case schedule and the short deadlines accompanying material pleadings, including Bank of America's motion to dismiss. In short, while Class Counsel was investigating and litigating this case, they were not free to use their time for other purposes.[4]

<u>The Customary Fee</u>

The "customary fee" in class action lawsuits is the "ordinary and customary market rates [charged to] fee-paying clients . . . in the relevant community." *Ressler*, 149 F.R.D. at 654 (citing *Blum*, 465 U.S. at 895); *see also Norman v. Housing Auth. of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988); *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 547 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990). In a class action such as this one, the customary fee is a contingency fee, because virtually no individual possesses a sufficiently large stake in the litigation to justify paying his attorneys on an hourly basis. *See Ressler*, 149 F.R.D. at 654; *see also Norman*, 836 F.2d at 1299.

A "one-third recovery . . . is a customary fee" for class actions. *Diakos v. HSS Sys., LLC*, No. 14-61784, 2016 WL 3702698, at *6 (S.D. Fla. Feb. 4, 2016). For that reason, a fee of 33% of the common fund—the amount Class Counsel seeks here—is consistent with what numerous other courts have awarded in similarly complex class actions and is appropriate here. *See also Morgan v. Public Storage*, No. 14-cv-21559-Ungaro [Dkt. 407] (S.D. Fla. Mar. 10, 2016) (awarding fees of 33% of settlement of $5 million); *Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185 (S.D.

---

[4] Class Counsel has litigated this lawsuit simultaneously with three other class actions against Wells Fargo (No. 1:16-CV-21145-UU), U.S. Bank (No. 1:16-CV-21146-UU), and SunTrust (No. 2:16-cv-00066-RWS, N.D. Ga.), all of which involve single-count, breach-of-contract actions for the banks' improper collection of post-payment interest, just as Plaintiff alleged in this action.

Fla. 2006) (awarding fees of 31 1/3 % of $1.06 billion); *In re: Terazosin Hydrochloride Antitrust Litig.*, 99-1317-MDL-Seitz (S.D. Fla. April 19, 2005) (awarding fees of 33 1/3 % of settlement of over $30 million); *In re: Managed Care Litig. v. Aetna*, MDL No. 1334, 2003 WL 22850070 (S.D. Fla. Oct. 24, 2003) (awarding fees and costs of 35.5% of settlement of $100 million); *Gutter v. E.I. Dupont De Nemours & Co.*, 95-2152-Civ-Gold [Dkt. 626] (S.D. Fla. May 30, 2003) (awarding fees of 33 1/3 % of settlement of $77.5 million); *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291 (11th Cir. 1999) (affirming fee award of 33 1/3 % of settlement of $40 million).

<u>Whether the Fee is Fixed or Contingent</u>

This action was prosecuted by Class Counsel on an entirely contingent-fee basis. The Court should recognize that in undertaking to prosecute this complex action on that basis, counsel assumed a significant risk of nonpayment or underpayment. Indeed, if Plaintiff were not successful in this action and litigated it just through class certification and summary judgment, Class Counsel would have no means of recovering the hundreds of thousands of dollars in attorneys' fees they would have incurred. That risk warrants an appropriate fee.

Numerous cases recognize that the contingent-fee risk is an important factor in determining the fee award. *See In re Continental Ill. Sec. Litig.*, 962 F.2d 566 (7th Cir. 1992) (when a common fund case has been prosecuted on a contingent basis, plaintiffs' counsel *must* be compensated adequately for the risk of non-payment); *Ressler*, 149 F.R.D. at 656 ("Numerous cases recognize that the attorney's contingent fee risk is an important factor in determining the fee award."); *Walters v. Atlanta*, 652 F. Supp. 755, 759 (N.D. Ga. 1985), *modified*, 803 F.2d 1135 (11th Cir. 1986); *City of York v. Ala. State Bd. of Educ.*, 631 F. Supp. 78, 86 (M.D. Ala. 1986).

In *Behrens*, 118 F.R.D. at 548, the court noted that:

> Generally, the contingency retainment must be promoted to assure representation when a person could not otherwise afford the services of a lawyer.
> . . .
> A contingency fee arrangement often justifies an increase in the award of attorney's fees. This rule helps assure that the contingency fee arrangement endures. If this "bonus" methodology did not exist, very few lawyers could take on the representation of a class client given the investment of substantial time, effort, and money, especially in light of the risks of recovering nothing.

*Id.* at 548 (citations omitted).

Thus, the contingency risk in this case was substantial and militates in favor of an award of the requested fee.[5]

The Amount Involved and the Results Obtained

"It is well-settled that one of the primary determinants of the quality of the work performed is the result obtained." *Ressler*, 149 F.R.D. at 655; *see also Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983); *In re King Resources Co. Sec. Litig.*, 420 F. Supp. 610, 630 (D. Colo. 1976). Here, the Settlement provides a total cash recovery of $29 million allocated across two separate groups of class members, depending upon the type of payoff statement that Bank of America provided.

As set forth in the motion for preliminary approval [Dkt. 107], there are two groups of settlement class members: Group 1 Class Members and Group 2 Class Members. **The $29 million settlement constitutes approximately _14%_ of the recovery that the Group 1 Class Members could have received and _46%_ of the recovery that the Group 2 Class Members could have received if this case were successfully litigated through trial and appeal.**

This is a significant recovery, particularly given that it was obtained relatively early in the case and before the conclusion of discovery. Indeed, courts have found that a settlement equal to just "nine percent [of the estimated damages] or higher constitutes a fair settlement." *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1346 (S.D. Fla. Nov. 22, 2011). *See also Behrens*, 118 F.R.D. at 542 ("A settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery."); *In re Newbridge Networks Sec. Litig.*, No. 94-1678, 1998 WL 765724, at *2 (D.D.C. Oct. 22, 1998) ("an agreement that secures roughly six to twelve percent of a potential trial recovery . . . seems to be within the targeted range

---

[5] Courts have also made clear that if, by reason of their professional skill and determined efforts, plaintiffs' counsel are ultimately able to secure a settlement, that fact does not diminish the fact that they took an extreme risk at the time of filing. *See Harman v. Lyphomed, Inc.*, 945 F.2d 969, 976 (7th Cir. 1991) (contingent multiplier "is designed to reflect the riskiness of the case at the outset."); *Skelton v. Gen. Motors Corp.*, 860 F.2d 250, 258 (7th Cir. 1988) ("The point at which plaintiffs settle with defendants . . . is simply not relevant to determining the risks incurred by their counsel in agreeing to represent them."); *Lindy Bros. Builders, Inc. v. Am. Radiator & Std. Sanitary Corp.*, 540 F.2d 102, 112 (3d Cir. 1976) ("*Lindy II*"). The relevant risks must be evaluated as of the time plaintiffs' counsel commenced the suit, not retroactively with the benefit of hindsight.

of reasonableness"); *In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706, 715 (E.D. Pa. 2001) (noting that since 1995, class action settlements have typically "recovered between 5.5% and 6.2% of the class members' estimated losses"); *In re Linerboard Antitrust Litig.*, 296 F. Supp. 2d 568, 581 (E.D. Pa. 2003).

The settlement also contains injunctive relief, requiring Bank of America to provide an approved form for at least three years. Given that Bank of America was improperly collecting millions of dollars per year in post-payment interest, this three-year period of injunctive relief affords substantial additional value to consumers above and beyond Bank of America's $29 million monetary payment.

### The Expertise, Reputation, and Ability of the Attorneys

As set forth in their previously filed declarations, Class Counsel are highly experienced in class actions such as this case. *See* Dkts. 107-4 to 107-7. They have been involved in many other precedent-setting and important cases and have furthered the rights of thousands or millions of class members by their efforts. Their expertise and commitment to this litigation were essential in achieving the settlements that have been presented to the Court.

The Court should also consider the standing of Defendant's counsel, as it reflects on the challenges faced by Class Counsel. *See Ressler*, 149 F.R.D. at 654. Bank of America was represented by O'Melveny & Myers, an experienced international law firm, which vigorously represented Bank of America's interests. Given the expertise, reputation, resources, and ability of all of the attorneys associated with this litigation, this Court should grant Class Counsels' request for attorneys' fees.

### The Undesirability of the Action

This Court recognizes the potential risk and difficulty inherent in class actions like this one. Few firms would consider undertaking such representation, knowing that Bank of America would be represented by powerful counsel and that the case would require expenditure of hundreds or thousands of hours (on a contingent basis) and the advancement through trial and appeal of hundreds of thousands of dollars in out-of-pocket expenses. The risk of failing to obtain any settlement or judgment, combined with the deferral of fees and the need to advance tremendous expenses, would deter most firms. Plaintiffs' counsels' willingness to assume those risks should be reflected in the fee.

### The Relationship with Class Representatives and Class Members

Regarding this factor, the *Johnson* court wrote that "[a] lawyer in private practice may vary his fee for similar work in the light of the professional relationship of the client with his office." 488 F.2d at 719.  The class representatives in this case did not have professional relationships with counsel before this matter, so there is no expectation that a pre-existing relationship might warrant a reduced fee:

> Petitioners had not represented the named class plaintiff before he approached [one of Plaintiffs' Co-Lead Counsel] to ask it to undertake an investigation into the underlying facts and circumstances of this lawsuit.  Thus, to the extent this factor may have independent significance in the context of a class action, it militates in favor of the 33% fee award sought here because plaintiff did not have a "track record" with the law firms that agreed to prosecute this action on his behalf.

*Ressler*, 149 F.R.D. at 655.

This factor thus also weighs in favor of the requested fee.  This is not a situation such as a defendant's attorney might face in which discounted fees are given or extra risks assumed because the attorney knows that he or she will benefit from repeat business with that client.  *See Braun v. Culp, Inc.*, No. C-84-455-G, 1985 WL 5857, at *4 (M.D.N.C. 1985) ("There is little likelihood that plaintiff's counsel will be sought after to do legal work for members of the plaintiff class. . . . The attorneys' relationship with the class members is thus not analogous to one in which a lawyer may 'discount' certain work to a client because of the likelihood of a continuing profitable association.").

### Awards in Similar Cases

Although there is no set rule governing what constitutes a reasonable fee, a review of common-fund cases confirms that district courts in the Eleventh Circuit and others have awarded percentages within the range of this request.  *See Waters*, 190 F.3d at 1292-98 (affirming award of 33-1/3% attorneys' fee on $40 million common fund); *Morgan v. Public Storage*, No. 14-cv-21559-Ungaro [Dkt. 407] (S.D. Fla. Mar. 10, 2016) (awarding 33%); *Allapattah Servs.*, 454 F. Supp. 2d at 1199 (awarding 31-1/3%); *Grier v. Chase Manhattan Auto. Fin. Co.*, No. 99-180, 2000 WL 175126, at *16 (E.D. Pa. Feb. 16, 2000) (awarding fee of 33.33% of the net settlement fund); *Ratner v. Bennett*, No. 92-4701, 1996 WL 243645 (E.D. Pa. May 8, 1996) (approving award of 35% of the settlement fund); *In re Crazy Eddie Sec. Litig.*, 824 F. Supp. 320 (E.D.N.Y. 1993) (awarding 33.85% of settlement fund).  Given the complexity, burden and risk associated with this case, the requested

fee of 33% is well in line with the case law.

### III. Reimbursement of Class Counsels' Expenses Is Appropriate in This Case

It is appropriate to award of out-of-pocket expenses to counsel whose efforts created substantial benefit for the class. *See, e.g.*, *Camden I*, 946 F.2d at 771; *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. at 348.

Class Counsel have applied for reimbursement of expenses that they incurred in prosecuting the litigation in the total amount of **$54,119.01**, which includes amounts incurred through January 16, 2017, which is one week before the filing of this motion. *See* Ex. A ¶ 12; Ex. B ¶ 12; Ex. C ¶ 12; Ex. D ¶ 12. These amounts were reasonably and necessarily incurred in connection with this case for filing fees; legal research; consulting experts; the mediation; and other customary expenditures. *Id.*

As set forth in the accompanying declarations (Exhibits A-D), these expenses and other expenses were reasonable and necessary to prosecute the case and obtain the Settlement, and they are reflected in the books and records of Class Counsels' firms.

## CONCLUSION

Class Counsel respectfully submit that, under the relevant criteria, their application for attorneys' fees and reimbursement of out-of-pocket expenses is reasonable and should be approved.

Respectfully submitted this 23rd day of January, 2017.

        */s/ Brett M. Amron*
        Brett M. Amron
        Fla. Bar No. 148342
        Jeremy S. Korch
        Fla. Bar No. 14471
        BAST AMRON LLP
        One Southeast Third Avenue
        Suite 1400
        Miami, FL 33131
        Telephone: 305-379-7904
        bamron@bastamron.com
        jkorch@bastamron.com

Steven J. Rosenwasser
Ga. Bar No. 614908
Naveen Ramachandrappa
Ga. Bar No. 422036
Fredric J. Bold, Jr.
Ga. Bar No. 544604
Michael B. Terry
Ga. Bar No. 702582
BONDURANT, MIXSON &
ELMORE, LLP
1201 W Peachtree St NW, Ste 3900
Atlanta, GA 30309
Telephone: 404-881-4151
rosenwasser@bmelaw.com
ramachandrappa@bmelaw.com
bold@bmelaw.com
terry@bmelaw.com
*Admitted pro hac vice*

Kevin E. Epps
Ga. Bar No. 785511
Jeffrey W. DeLoach
Ga. Bar No. 081669
Adam Hoipkemier
Ga. Bar No. 745811
EPPS, HOLLOWAY, DELOACH &
HOIPKEMIER, LLC
1220 Langford Dr. Bldg. 200 Ste 101
Watkinsville, GA 30677
Telephone: 706-508-4000
kevin@ehdlaw.com
jeff@ehdlaw.com
adam@ehdlaw.com
*Admitted pro hac vice*

**Attorneys for Plaintiff**

## CERTIFICATE OF SERVICE

      I hereby certify that the foregoing **PLAINTIFF'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES AND MEMORANDUM OF LAW IN SUPPORT** was electronically filed with the Clerk of Court using the CM/ECF system, which will automatically serve notification of such filing to all counsel of record as follows:

    William K. Pao, Esq.
    O'Melveny & Myers LLP
    400 South Hope Street
    Los Angeles, CA 90071
    wpao@omm.com

    Allen Burton, Esq.
    O'Melveny & Myers LLP
    Times Square Tower
    7 Times Square
    New York, NY 10036
    aburton@omm.com

    Danielle Oakley, Esq.
    O'Melveny & Myers LLP
    610 Newport Center Dr., 17th Floor
    Newport Beach, CA  92660
    doakley@omm.com

    Alex J. Sabo, Esq.
    BRESSLER, AMERY & ROSS, P.C.
    SunTrust International Center
    One SE 3rd Avenue, Suite 1980
    Miami, FL 33131
    asabo@bressler.com

This 23rd day of January, 2017.

                                      */s/ Brett M. Amron*
                                      Brett M. Amron