IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

| | |
|---|---|
| VERONICA DORADO, individually and on behalf of a class of similarly situated persons,<br><br>       Plaintiff,<br><br>vs.<br><br>BANK OF AMERICA, N.A.,<br><br>       Defendant. | CIVIL ACTION<br>NO. 1:16-cv-21147-UU<br><br>CLASS ACTION<br>JURY TRIAL DEMANDED |

**PLAINTIFF'S MOTION AND
INCORPORATED MEMORANDUM IN SUPPORT OF
FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

By Order of December 7, 2016, this Court preliminarily approved the settlement of the class claims alleged in this action.  Dkt. 113.  Under this settlement, Defendant Bank of America, N.A. ("BANA") will, *inter alia*, pay $29 million to compensate Settlement Class members and provide for a period of three years a disclosure in compliance with HUD regulations  in response to inquiries, requests for payoff information, or tenders of prepayment.[1]

The Court's Preliminary Approval Order also established deadlines for submission of additional materials in support of the Settlement and set a hearing for final approval on March 23, 2017.  Dkt. 113 at 4.  In accordance with that schedule, on January 23, 2017, Plaintiff filed her Application for Class Representative Service Award (Dkt. 117) and Motion for Attorneys' Fees and Reimbursement of Expenses (Dkt. 116), and Plaintiff now submits this motion for final approval.

Significantly, the response to the Settlement has been overwhelmingly positive.  Of the

---

[1] A copy of the parties' proposed settlement agreement has been filed with the Court as an exhibit to the Motion for Preliminary Approval.  Dkt. 107-2.  It is referred to herein as the "Settlement."

00440594 DOCX 2 1531522.1

over 574,000 class members (Dkt. 107-3 ¶ 6), **there were only 15 timely opt-outs, which represent a mere 0.0026**% of the Settlement Class.  Ex. 1 (Declaration of Robert C. Jindra) ¶ 14.   And, there were **no valid objections**; *i.e.*, objections that met the requirements of this Court's Preliminary Approval Order.[2]  *Id.* at ¶¶ 15-16.  In addition, none of the federal or state governmental agencies notified of the Settlement pursuant to 28 U.S.C. § 1715 has asserted any objection.

Plaintiff Veronica Dorado respectfully submits this motion and memorandum in support of final approval of the Settlement reached in this class action.  For the reasons set forth herein and in the pleadings previously submitted, the Settlement is fair, adequate, and reasonable and is in the best interests of the Settlement Class.  Accordingly, Plaintiff respectfully requests that the Court grant final approval to the Settlement by: (1) determining that adequate notice was provided to the class; (2) approving the proposed Settlement as fair, adequate, and reasonable for the certified Settlement Class; (3) granting the requested attorneys' fees, costs, and incentive award; and (4) entering the proposed Final Approval Order attached as Exhibit 2.

## I.   REPORT ON MAILED NOTICE, PUBLICATION NOTICE AND THE SETTLEMENT WEBSITE AND THE RESPONSE OF THE CLASS.

As an initial matter, Plaintiff provides the Court with an update regarding events that have occurred since the Court's Preliminary Approval Order.

### A.   Appointment of the Settlement Administrator

As set forth in the Joint Notice Regarding Notice and Claims Administrator, the parties have selected Garden City Group, LLC to serve as the notice and claims administrator in this action (the "Administrator").  Dkt. 114.

---

[2] The parties, Administrator and/or the Court have received a handful of letters or other documents.  *See* Ex. 1 at Ex. E; Dkts. 118-121, 123.  As discussed below, none of the letters complied with the Court's Preliminary Approval Order.  Further, only one letter contains a substantive objection to the Settlement, and only one letter objects to counsel's motion for attorneys' fees (though, this letter is from an individual who is **not** in the Settlement Class). The other letters did not include substantive objections, but rather address matters such as updating contact information, providing a death certificate, asking to participate in the Settlement, or complaining about issues unrelated to this case or the Settlement.

**B.      Notice to the Settlement Class**

The motion for preliminary approval proposed a process for notifying the Settlement Class of the Settlement.  Dkt. 107 at 15.  In its Preliminary Approval Order, the Court evaluated the proposal and "approve[d] the form and substance" of the notice, which the Court attached to the Order.  Dkt. 113 at 5.  In so approving, the Court found that the "[t]he form and content of the Mailed Notices and the Publication Notice, and the method set forth herein of notifying members of the Settlement Class of the Settlement and its terms and conditions, meet the requirements of Rule 23 of the Federal Rules of Civil Procedure and due process. The Court finds that the Mailed Notices and Publication Notice constitute the best notice practicable under the circumstances, and that they are reasonably calculated, under the circumstances, to apprise members of the Settlement Class of the pendency of this Action and their right to object or exclude themselves from the Settlement, and shall constitute due and sufficient notice to all persons and entities entitled thereto." *Id.* at 6.  Thus, this Court has already determined that the notice program in this case meets the requirements of due process and applicable law, provides the best notice practicable under the circumstances, and constitutes due and sufficient notice to all individuals entitled thereto. *Id.*

Since the Preliminary Approval Order, this notice program has been fully implemented by the Administrator.  Dkt. 115; *see also* Ex. 1.  Indeed, (i) within fifteen calendar days of the parties' selection of the Administrator, BANA provided the Administrator the available information identified in Paragraph 9 of this Court's Preliminary Approval Order; (ii) on January 3, 2017, the Administrator launched a publicly-accessible website relating to this matter and the parties' Settlement, which contains all of the information required by Paragraph 12 of the Preliminary Approval Order; (iii) on January 3-5, 2017, the Administrator caused the Publication Notice to be published in *USA Today* with the specifications required by Paragraph 10 of the Preliminary Approval Order, and (iv) on January 6, 2017, the Administrator caused the Mailed Notices to be mailed in the form approved by the Court and as required by Paragraph 9 of the Preliminary Approval Order. *Id.*

The mailed and publication class notices informed the class of, among other things: (1) information about this case, the Settlement, and the release; (2) deadlines for Settlement Class

members to opt out or to object to the Settlement; (3) the date by which a motion for attorneys' fees and costs and a motion for the proposed incentive award for Plaintiff must be filed with the Court; and (4) the date and location of the Fairness Hearing.  *See id.* at Exhibits A, B & C.

Thus, the notice program approved by this Court has been fully implemented.  It has successfully provided notice of these proceedings and of the matters set forth therein, including the Settlement, to all parties entitled to such notice, and satisfied the requirements of Fed. R. Civ. P. 23 and due process.

### C.      Requests for Exclusion and Objections

Pursuant to the Court's Preliminary Approval Order and as repeated in the mail and publication notices and on the Settlement website, the deadline for Settlement Class members to request exclusion from the class Settlement or to object to the Settlement was February 6, 2017. Dkt. 113 at 7-8.  No Settlement class members properly objected to the Settlement per the requirements set out in the Court's Preliminary Approval Order.  Ex. 1 ¶¶ 15-16.  And only 15 Settlement class members opted out of the Settlement.  *Id.* ¶ 14.  Further, no Settlement class member has filed an objection to Plaintiff's motion for an award of attorney fees and reimbursement of expenses or the Plaintiff's motion for a service award to the class representative.

The parties, the Court and/or the Administrator received a handful of letters styled as "objections."  Ex. 1 ¶ 15.  None of those letters complied with the Court's Preliminary Approval Order because, *inter alia*, they do not provide sufficient information demonstrating that the individual is part of the Settlement Class, were not filed with the Court and/or do not state whether the Settlement Class member objected to any other class action settlements in the past five years.  *Id.* ¶¶15-16, Ex. E.

Moreover, nearly all of the letters do not contain substantive objections to the Settlement or any motion associated therewith.  More specifically:

Koshy/Oommen Letter  - The only "objection" this letter raises is the authors' claim that, although they closed their loan on "10th April 2015" they were "charged interest of $925.48, ie for full month interest."  Dkt. 119.  The authors then request that the Court "look into this matter" and "instruct Bank of America to refund this excess interest collected from us."  *Id.*  This

letter is thus not an objection to the Settlement, but simply recounts the precise claim that Plaintiff raised in this case and that has been resolved through the Settlement.

Ara Letter – This letter is not an "objection," but rather appears to be an attempt to **participate** in the Settlement.  Dkt. 118.  Indeed, the introductory paragraph to the letter states that the information contained therein is being provided "to aid in the eligibility process for the settlement." *Id.*  Further, the only "objection" to the Settlement contained in this letter is a single sentence reading: "Violation of FHA regulation 24 C.F.R. 203.558."

Ramsey Letter  - This letter does not comply with the Court's Preliminary Approval Order, as it was not sent to counsel and it does not state whether Ms. Ramsey has objected to other class action settlements in the past five years.  Regardless, Ms. Ramsey's only objection is to claim that "the settlement amount may need to be re-examined and increased" because of the amount of post-payment interest Ms. Ramsey believes Bank of America collected.  But, as set forth below, the 46% and 14% recoveries achieved by the Settlement are well within the range of class action settlements this and other courts routinely approve.

Myers Letter – This letter is not an objection to the Settlement, but rather claims that the individual received a W-2 from Bank of America but "did not receive this money."  This issue has no bearing on this case or the Settlement.

McBride Letter – As set forth in Plaintiff's response to the McBride letter, Mr. McBride is not a member of the Settlement Class and thus has no standing to raise any objections.  Dkt. 126.

As the above demonstrates, there are no valid, substantive objections to the Settlement or Plaintiff's requests for a class representative service award or award of attorneys' fees and expenses.[3]

---

[3] Plaintiff notes that other letters were filed with the Court (though, not provided to counsel and/or the Administrator), which did not substantively object to the Settlement or the motions for attorneys' fees or a class representative service award.  *See, e.g.,* Dkt. 120 (change of address request); Dkt. 121 (question about the settlement, answered by BANA as shown in Dkt. 124); Dkt. 123 (instructions where to send settlement proceeds); Dkt. 125 (requesting to participate in settlement); Dkt. 128 (discussing irrelevant foreclosure matters).

## II.    FINAL APPROVAL OF THE CLASS SETTLEMENT IS APPROPRIATE.

### A.    Standards for Approving Class Action Settlements

Rule 23(e) of the Federal Rules of Civil Procedure governs court approval of a class settlement.  A district court evaluates a proposed class-action settlement to determine if it "is fair, adequate and reasonable and is not the product of collusion between the parties." *Bennett v. Behring* Corp., 737 F.2d 982, 986 (11th Cir. 1984); *see* also Fed. R. Civ. P. 23(e)(2).

A settlement is fair, adequate, and reasonable, and merits final approval, when "the interests of the class as a whole are better served by the settlement than by further litigation." Manual for Complex Litig. (4th) § 21.61 (2010).  In determining whether a class settlement is fair, adequate, and reasonable, courts of this Circuit have considered factors such as "(1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved." *Bennett*, 737 F.2d at 986.

Significantly, the court evaluates these so-called *Bennett* factors in light of "the strong judicial policy favoring settlement as well as by the realization that compromise is the essence of settlement." *Id.*; *In re Motorsports Merch. Antitrust Litig.*, 112 F. Supp. 2d 1329, 1333 (N.D. Ga. 2000).  "Particularly in class action suits, there is an overriding public interest in favor of settlement." *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977). "Class-action settlements [are] disapproved only upon 'considerable circumspection.'" *Mashburn v. Nat'l Healthcare, Inc.*, 684 F. Supp. 660, 667 (M.D. Ala. 1988) (quoting *Jamison v. Butcher & Sherrerd,* 68 F.R.D. 479, 481 (E.D. Pa. 1975)).

This means that, "in evaluating the terms of the compromise in relation to the likely benefits of a successful trial, the trial judge ought not try the case in the settlement hearings." *Cotton*, 559 F.2d at 1330.  As appellate courts have cautioned: "It cannot be overemphasized that neither the trial court in approving the settlement nor this Court in reviewing that approval have the right or the duty to reach any ultimate conclusions on the issues of fact and law which underlie the merits of the dispute." *Id.*  "Neither should it be forgotten that compromise is the

00440594 DOCX 2 1531522.1

essence of a settlement." *Id.* In deciding whether to grant final approval, a court should not require the parties to "'justify each term of settlement against a hypothetical or speculative measure of what concessions might have been gained; inherent in compromise is a yielding of absolutes and an abandoning of highest hopes.'" *Id.* (quoting *Milstein v. Werner*, 57 F.R.D. 515, 524-25 (S.D.N.Y. 1972)). Moreover, "[i]n performing this balancing task, the trial court is entitled to rely upon the judgment of experienced counsel for the parties. Indeed, the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel." *Cotton*, 559 F.2d at 1330 (citation omitted).

Last, **a district court "[c]onfronted with a request for settlement-only class certification ... need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial."** *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997); *see also Columbus Drywall & Insulation, Inc. v. Masco Corp.*, 258 F.R.D. 545, 558 (N.D. Ga. 2007) (in approving a class settlement, the "Court need not consider whether the class will present intractable management problems at litigation").

Thus, for example, alleged "variations in state laws are not obstacles to certification in the settlement context." *In re National Collegiate Athletic Assoc. Student-Athlete Concussion Injury Litig.*, 314 F.R.D. 580, 595 n.15 (N.D. Ill. 2016); *see also In re Mex. Money Transfer Litig.*, 267 F.3d 743, 747 (7th Cir. 2001) ("Given the settlement, no one need draw fine lines among state-law theories of relief."); *In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*, 789 F.Supp.2d 935, 974 (N.D.Ill. 2011) (differences in state law do not defeat predominance for the purposes of certifying a settlement class); *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 298–99 (3d Cir. 2011) (certifying a settlement class despite the fact that variances in state law would likely have defeated predominance if the class was being certified for trial); *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 529 (3d Cir. 2004) ("variations [in state laws] are irrelevant to certification of a settlement class").

And, in the settlement class context, any alleged "individual issues relating to causation, injury and damage also disappear because the settlement's objective criteria provide for an objective scheme of compensation." *In re Diet Drugs,* 2000 WL 1222042, at *43 (E.D. Pa. Aug. 28, 2000); *Yaeger v. Subaru of America, Inc.*, 2016 WL 4541861, at *7 (D.N.J. Aug. 31,

2016) (holding, in approving class settlement, that issues relating to "the existence, causation, and cure of the problem are resolved in the settlement and need not be proved in individual cases"); *In re Inter-Op Hip Prothesis Liability Litig.*, 204 F.R.D. 330, 347 (N.D. Ohio 2001) ("when taking the proposed settlement . . . into consideration for purposes of determining [settlement] class certification, "individual issues which are normally present in personal injury litigation become irrelevant, allowing the common issues to predominate."); *Legacy Ranch, LLP v. Sprint Comm. Co. L.P.*, 2012 WL 12860867, at *1 (D. Wy. Feb. 29, 2012) (in approving settlement class, noting that the settlement caused the "elimination of individual issues that Defendants contend preclude certification of a litigation class.").

**B.      The Settlement Is the Result of Informed, Arm's Length Negotiations Absent Collusion.**

A proposed class settlement is presumptively fair where it "is the product of arm's length negotiations, sufficient discovery has been taken to allow the parties and the court to act intelligently, and counsel involved are competent and experienced."  4 Herbert Newberg & Alba Conte, NEWBERG ON CLASS ACTIONS § 11:41 (4th ed. 2002); *accord In re Checking Account Overdraft Litig.*, 275 F.R.D. 654, 661-62 (S.D. Fla. 2011).  The Settlement satisfies this test.

To reach this Settlement, the Parties engaged in extensive arm's-length negotiations, which included the assistance of an experienced, independent, third-party mediator, Jeff Grubman of JAMS.  Courts have consistently held that the involvement of a mediator belies any suggestion of fraud or collusion.  *See*, *e.g.*, *Montoya v. PNC Bank, N.A.*, No. 14-2-474-CIV-Goodman, 2016 WL 1529902, at *8 (S.D. Fla. Apt. 13, 2016) (citing use of mediator as indication that there is "no suggestion of fraud or collusion"); *In re WorldCom, Inc. ERISA Litig.*, No. 02-CIV-4816, 2004 WL 2338151, at *6 (S.D.N.Y. Oct. 18, 2004) (presence of mediator negates any suggestion of collusion).

The Parties' settlement discussions culminated in a Settlement Agreement that provides substantial relief to the Settlement Class.  Under the Settlement, BANA agreed to create a cash settlement fund of $29,000,000.00, which will be distributed to Settlement Class members after payment of class counsel's attorneys' fees and costs and approved class representative service award. Dkt. 107-2 at 2-4.  As explained in the motions filed by the Plaintiff on January 23, 2017,

the class representative service award and the award of attorneys' fees and costs that the Plaintiff has requested the Court to authorize are appropriate in this case and comparable to such awards in other class actions. *See generally* Dkt. 116 & 117. Significantly, no Settlement Class member has objected to these motions or to the Settlement as a whole.

The Settlement is also the result of an informed decision-making process. At the time of the mediation, Plaintiff had already engaged in substantial discovery and was well-informed of BANA's defenses through its motion to dismiss and discovery responses. Further, Plaintiff had received BANA's mortgagee data, which provided Plaintiff with detailed information about the number of class members and the amount of post-payment interest each class member paid. This information permitted Plaintiff to effectively negotiate on behalf of the Settlement Class and ultimately achieve the exemplary Settlement for which approval is now sought.

Last, the Parties are represented by highly competent counsel who have years of experience litigating and settling complex class actions. *See generally* Dkt. 116.

For the foregoing reasons, there is no evidence of collusion and the Settlement is the result of arms-length, informed negotiations between experienced counsel. Therefore, the Settlement is entitled to a presumption of fairness.

### C.      The Settlement is Fair, Reasonable, and Adequate.

In assessing the fairness, reasonableness, and adequacy of a settlement, courts view the facts in the light most favorable to the settlement. *Isby v. Bayh*, 75 F.3d 1191, 1199 (7th Cir. 1996); *see also In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992) ("Public policy strongly favors the pretrial settlement of class action lawsuits.") (citation omitted); *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1341 (S.D. Fla. 2011) ("'Settlement agreements are highly favored in the law and will be upheld whenever possible because they are a means of amicably resolving doubts and uncertainties and preventing lawsuits.'") (quoting *In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1105 (5th Cir. 1977)).

Applying the *Bennett* factors cited *supra* at 4 to this case, the relevant criteria support final approval of the Settlement.

### 1.      Likelihood of Success at Trial

The first *Bennett* factor to consider in determining whether a settlement is fair, reasonable,

and adequate is the likelihood of success at trial.  Here, BANA has vigorously defended its position throughout the litigation and negotiation process, and has expressed every intention of continuing a spirited defense, absent settlement, through class certification, summary judgment, trial, and appeal.  As such, Plaintiff's success at trial is not guaranteed, supporting final approval of the Settlement.

Although Plaintiff has thoroughly investigated the factual and legal bases for her claims and has developed substantial evidence supporting her allegations, she and the Settlement class still face risks had settlement not occurred.  Indeed, BANA has denied, and continues to deny, that it has any liability and has indicated its intention to assert multiple defenses against Plaintiff's allegations, including attacks on the substance of Plaintiff's claims and attacks on the Plaintiff's ability to pursue this action on behalf of a class.  *See generally* Dkt. 23 (BANA's Motion to Dismiss).

And, if BANA were able to present convincing arguments to support its position, the Court could have refused to certify a class, leaving Plaintiff with the ability to pursue her claims only on an individual basis (which Plaintiff contends would result in no claims at all, given that the cost of litigation is greater than the recovery in any individual suit).  Settlement allows the Settlement Class to avoid the inherent risk, complexity, time, and cost associated with continued litigation.  *See United States v. City of Miami*, 664 F.2d 435, 439 (5th Cir. 1981) ("[C]ompromise and settlement not only save the time, expense, and psychological toll but also avert the inevitable risk of litigation.") (quoting *United States v. Armour & Co.*, 402 U.S. 673, 681 (1971)).

In approving class settlements, courts recognize that there is a material substantial risk of losing inherent in any jury trial.  And even if Plaintiff prevailed at trial, BANA would almost certainly appeal, threatening a reversal of any favorable outcome and causing significant delays in obtaining any relief for Settlement Class members.  Under the Settlement, Settlement Class members avoid all of the risks and obstacles to recovery and will receive substantial benefits in a timely fashion.

Plaintiff and Class Counsel have negotiated an excellent settlement for the Settlement Class that includes injunctive relief and requires BANA to pay Settlement Benefits of

00440594 DOCX 2 1531522.1

$29,000,000. Dkt. 107-2 at 4. Settlement Class members can recover a portion of the Settlement benefits after Settlement Administration Costs, Court-approved attorneys' fees and costs for Class Counsel, and any Court-approved Class Representative Award. *See id.* at §§ III(C) & (D).

In light of the risks outlined above combined with the fact that Plaintiff and Settlement Class members faced lengthy, protracted, and expensive litigation had they not settled, this is a fair settlement that requires prompt payments to Settlement Class members. The Settlement should be approved.

### 2. Range of Possible Recovery and Point at which Settlement is Fair, Reasonable, and Adequate

The second and third *Bennett* factors—the range of possible recovery and the point on or below the range at which a settlement is fair, adequate, and reasonable—are often analyzed together. *See Figueroa v. Sharper Image Corp.*, 517 F. Supp. 2d 1292, 1326 (S.D. Fla. 2007). However, "the Court is not confined to the mechanistic process of comparing the settlement to the estimated recovery times a multiplier derived from the likelihood of prevailing on the merits." *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 323 (N.D. Ga. 1993) (quoting *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 217 (5th Cir. 1981)). "[T]he Court's role is not to engage in a claim-by-claim, dollar-by-dollar evaluation, but rather, to evaluate the proposed settlement in its totality." *Figueroa*, 517 F. Supp. 2d at 1326; *see also In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. at 325 ("That the proposed settlement amounts to a fraction of potential recovery does not render the proposed settlement inadequate and unfair. 'In fact, there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery.'") (quoting *Detroit v. Grinnell Corp.*, 495 F.2d 448, 455 n.2 (2d Cir. 1974)).

Here, the Settlement constitutes roughly 14% of the recovery that Group 1 Class Members could recover and 46% of the recovery that Group 2 Class Members could recover in the event that they successfully litigate this action through trial and appeal. Dkt. 107 at 13. Although the Settlement does not provide Settlement Class members 100% of the amount that they could potentially receive if they sued on their own and prevailed, the "fact that a proposed settlement amounts to only a fraction of the potential recovery does not mean the settlement is

unfair or inadequate.  This is because a settlement must be evaluated "in light of the attendant risks with litigation."  *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d at 1350 (citation omitted).

A 14% and 46% recovery is substantially higher than settlements that this and other courts have approved.  *See e.g. In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. at 325 (approving class settlement equal to **12-15**% of potential recovery); *see also Strube v. American Equity Inv. Life Ins. Co*., 226 F.R.D. 688, 698 (M.D. Fla. 2005) (approving settlement equal to about **2%** of expert's damages calculation); *Behrens v. Wometco Enters., Inc*., 118 F.R.D. 534, 542-43 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990) (approving settlement equal to **3 to 5%** of the per share recovery sought by plaintiffs and observing that "the fact that a proposed settlement amounts to only a fraction of the potential recovery does not mean the settlement is unfair or inadequate"); *In re Currency Conversion Fee Antitrust Litig*., No. 01MDL1409, M-21-95, 2006 WL 3247396, at *6 (S.D.N.Y. Nov. 8, 2006) (approving settlement for "roughly **10-15%**" of the allegedly illegal fees collected from the class);  *In re Aetna*, No. Civ. A. MDL 1219, 2001 WL 20928, at *4 (E.D. Pa. Jan. 4, 2001) (approving settlement of approximately **10%** of total damages of $830 million); *Stop & Shop Supermarket Co. v. SmithKlineBeecham Corp*., 2005 WL 1213926, at *9 (E.D. Pa. May 19, 2005) (recovering **11.4%** of estimated damages "compares favorably with the settlements reached in other complex class action lawsuits."). Indeed, **this Court has held that a settlement equal to "nine percent [of the estimated damages] or higher constitutes a fair settlement.**"  *In re Checking Account Overdraft Litig*., 830 F. Supp. 2d at 1346.  *See also Newbridge Networks Sec. Litig*., No. Civ. A. 94-1678, 1998 WL 765724, at *2 (D.D.C. Oct. 23, 1998) ("an agreement that secures roughly six to twelve percent of a potential trial recovery . . . seems to be within the targeted range of reasonableness"); *In re Rite Aid Corp. Sec. Litig*., 146 F. Supp. 2d 706, 715 (E.D. Pa. 2001) (noting that since 1995, class action settlements have typically "recovered between 5.5% and 6.2% of the class members' estimated losses").  The settlement of this class action compares favorably with those described above.  Therefore, these *Bennett* factors support approval of the Settlement.

### 3.      Complexity, Expense, and Duration of Litigation

The next *Bennett* factor is the complexity, expense, and duration of litigation.  As the Eleventh Circuit has noted, "settlements contribute greatly to the efficient utilization of our scarce judicial resources." *Cotton*, 559 F.2d at 1331.  "The law favors compromises in large part because they are often a speedy and efficient resolution of long, complex, and expensive litigations." *Behrens*, 118 F.R.D. at 543.  In evaluating this *Bennett* factor, courts "'should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere probability of relief in the future, after protracted and expensive litigation.'" *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. at 326 (quoting *Oppenlander v. Standard Oil Co.*, 64 F.R.D. 597, 624 (D. Colo. 1974)); *see also In re Motorsports Merch. Antitrust Litig.*, 112 F. Supp. 2d at 1333 ("Settlements conserve judicial resources by avoiding the expense of a complicated and protracted litigation process and are highly favored by the law.") (citations and quotations omitted).  This factor weighs in favor of approval.

In the absence of the Settlement, it is certain that the expense, duration, and complexity of protracted litigation would be substantial.  Aside from the substantive, adversarial discovery (and related motion practice) that the parties would have needed to pursue absent settlement, the parties have yet to file and brief motions for class certification and summary judgment, which would have comprised major investments of time, energy, and capital in the form of expert witness fees, for both sides (as shown by the extensive briefing in the *Miller* and *Smith* matters). Additionally, if the Court were to grant class certification or summary judgment in either side's favor, given the amount at issue, the losing side would likely seek relief from the Eleventh Circuit. Fed. R. Civ. P. 23(f).  In either case, continued litigation of this matter would delay its resolution and inflict unnecessary additional expense on both sides.   Where unnecessary additional costs and delay are likely to be incurred absent a settlement, "'it [is] proper to take the bird in the hand instead of a prospective flock in the bush.'" *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. at 326 (quoting *Oppenlander*, 64 F.R.D. at 624).  The complexity, expense, and duration of litigation thus weigh in favor of approving the Settlement.

**4.      Substance and Amount of Opposition to Settlement**

The next *Bennett* factor is the substance and amount of opposition to the settlement. Here, as set forth in detail in Section, I(C), *supra*, out of over 574,000 Class Members, just 15 opted out of the Settlement, and none made proper objections.  This is strong circumstantial evidence that the Settlement is fair, especially because class settlements are often approved even over the objections of class members.  *See Cotton*, 559 F.2d at 1331 ("A settlement can be fair notwithstanding a large number of class members who oppose it[,]" citing *Bryan v. Pittsburgh Plate Glass Co.*, 494 F.2d 799 (3d Cir. 1974), in which more than 20% of the class objected). But here, the absence of a single proper objection strongly signals the fairness of the Settlement.

Moreover, while notice of the Settlement was sent to State and Federal officials pursuant to 28 U.S.C. § 1715, none has voiced any opposition to the terms of the Agreement.  This lack of governmental opposition to the Settlement likewise militates in favor of its approval.  *See Fresco v. Auto. Directions, Inc.*, No. 03-61063, 2009 WL 9054828, at *5 (S.D. Fla. Jan. 20, 2009) (noting, in addressing this *Bennett* factor and approving settlement, that "[n]o state or federal government officials have filed objections"). The opposition to the Settlement is almost non-existent, and thus weighs in favor of final approval.

**5.      Stage of Proceedings at which Settlement Was Achieved**

The final *Bennett* factor looks to the stage of proceedings at which the settlement was achieved.  Courts look at this factor "to ensure that the plaintiffs have access to sufficient information to adequately evaluate the merits of the case and weigh the benefits of the settlement against further litigation."  *Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1383 (S.D. Fla. 2007).

Here, the Settlement was reached only after the parties had engaged in significant discovery about the merits of Plaintiff's claims, the size of the putative class, range of damages, and the contrasting strengths of the parties' claims and defenses.  *See, e.g.*, Dkts. 23, 27, 37, 107. Indeed, Plaintiff obtained data regarding over 574,000 loans so that she and her counsel could determine the size of the class and the total amount of damages at stake.  Hence, there should be no question that, by the time the Settlement was reached, Plaintiff had enough information to sufficiently evaluate the strength of the claims of the class and weigh the benefits of settlement against continued litigation.  The thorough investigation and evaluation of Plaintiff's legal

claims, extensive informal discovery, and numerous arm's-length negotiations—including before a third-party mediator—favor final approval of the Settlement.

### 6.     The Opinion of Counsel

"Courts often accord great weight to the opinions of counsel for the class in approving class action settlements." *Meyer v. Citizens & S. Nat'l Bank*, 677 F. Supp. 1196, 1209-10 (M.D. Ga. 1988) (citing *Holmes v. Continental Can Co.*, 706 F.2d 1144, 1149 (11th Cir. 1983)).   In fact, "the trial court is entitled to rely upon the judgment of experienced counsel for the parties . . . [and], absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel." *Cotton*, 559 F.2d at 1330 (citing *Flinn v. FMC Corp.*, 528 F.2d 1169, 1173 (4th Cir. 1975)).   Here, Class Counsel—with substantial experience in class action litigation and with the benefit of sufficient information from the Defendant—believe that the Settlement is fair, reasonable, adequate, and in the best interest of the Settlement class as a whole.  *See* Dkts. 107-4, ¶ 10, 107-5 ¶ 8.  This factor, therefore, further supports approval of the Settlement.

## III.     CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant final approval to the Settlement and enter the proposed Final Approval Order attached hereto as Exhibit 2.

Dated:  March 3, 2017           Respectfully submitted,

VERONICA DORADO, on behalf of herself
and all others similarly situated

By:  */s/ Brett M. Amron*
Brett M. Amron
Florida Bar No. 148342
Jeremy S. Korch
Florida Bar No. 14471
BAST AMRON LLP
One Southeast Third Avenue, Suite 1400
Miami, Florida  33131
Telephone:  (305) 379-7904
*bamron@bastamron.com*
*jkorch@bastamron.com*

Steven J. Rosenwasser
Ga. Bar No. 614908
Naveen Ramachandrappa
Ga. Bar No. 422036
BONDURANT, MIXSON & ELMORE, LLP
1201 W Peachtree St NW Ste 3900
Atlanta, Georgia  30309
404-881-4151
*rosenwasser@bmelaw.com*
*ramachandrappa@bmelaw.com*

Kevin E. Epps
G. Bar No. 785511
Adam Hoipkemier
Ga. Bar No. 745811
Jeffrey W. DeLoach
Ga. Bar No. 081669
Epps, Holloway, DeLoach & Hoipkemier, LLC
1220 Langford Drive, Suite 101, Bldg. 200
Watkinsville, Georgia  30677
*kevin@ehdlaw.com*
*jeff@ehdlaw.com*
*adam@ehdlaw.com*

*Counsel for Plaintiff and the Class*

00440594 DOCX 2 1531522.1

16

## CERTIFICATE OF SERVICE

I certify that, on March 3, 2017, I filed **PLAINTIFF'S MOTION AND INCORPORATED MEMORANDUM IN SUPPORT OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT** using the CM/ECF system, which will provide electronic notification and service on the following counsel:

William K. Pao
O'Melveny & Myers LLP
400 South Hope Street
Los Angeles, CA 90071
*wpao@omm.com*

Allen Burton
O'Melveny & Myers LLP
Times Square Tower
7 Times Square
New York, NY 10036
*aburton@omm.com*

Alex J. Sabo
Bressler, Amery & Ross, P.C.
SunTrust International Center
One SE 3rd Avenue, Suite 1980
Miami, FL 33131
*asabo@bressler.com*

*/s/ Brett M. Amron*
Brett M. Amron