IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

| | |
|---|---|
| VERONICA DORADO, individually and on behalf of a class of similarly situated persons,<br><br>    Plaintiff,<br><br>vs.<br><br>BANK OF AMERICA, N.A.,<br><br>    Defendant. | CIVIL ACTION<br>NO. 1:16-cv-21147-UU<br><br>CLASS ACTION<br>JURY TRIAL DEMANDED |

## ORDER GRANTING FINAL APPROVAL OF SETTLEMENT

This case is before the Court on Plaintiff's Motion for Final Approval of Settlement. The proposed settlement agreement ("Settlement") was filed with the Court as an exhibit to Plaintiff's Motion for Preliminary Approval. Dkt. 107-2. The Court preliminarily approved the Settlement on December 7, 2016. Dkt. 113. On March 23, 2017, the Court held a hearing to determine whether to grant final approval of the Settlement ("Final Approval Hearing").

Based on the pleadings and documents that have been filed in this action and the arguments presented at the Final Approval Hearing, and having considered the almost complete absence of objections to the Settlement, the Court finds that the proposed Settlement is fair, reasonable, and adequate and that the proposed Settlement Class and Settlement Class claims meet the requirements for certification of a settlement class under Federal Rule of Civil Procedure 23.

The Court thus **GRANTS** Plaintiff's Motion for Final Approval of Settlement, **APPROVES** the proposed Settlement, **CERTIFIES** the Settlement Class defined below for settlement purposes, **APPOINTS** Plaintiff Veronica Dorado as Class Representative, and **APPOINTS** Bondurant, Mixson & Elmore, LLP; Epps, Holloway, DeLoach & Hoipkemier, LLC; and Bast Amron , LLP as Class Counsel.

Also pending are Plaintiff's Application for Class Representative Service Award and Motion for Attorney Fees and Reimbursement of Expenses. Dkts. 116, 117. Based on all of the documents on file with the Court, the argument of counsel, and the absence of opposition to

1

these motions, the Court hereby **GRANTS** Plaintiff's Application for Class Representative Service Award [Dkt. 117] and **GRANTS IN PART and DENIES IN PART** Plaintiff's Motion for Attorney Fees and Reimbursement of Expenses [Dkt. 116].[1]

The reasons for the Court's rulings are set forth in more detail below.

I.   **Background of the Litigation**

Plaintiff brought this action on March 31, 2016 as a class action against Bank of America, N.A. ("BANA"). Plaintiff alleges that BANA breached Plaintiff's and the other class members' promissory notes containing uniform provisions when it collected post-payment interest on FHA-insured loans that were (i) entered into between June 1, 1996 and January 20, 2015 and (ii) prepaid within the statute of limitations applicable to the loan. Plaintiff contends that under the uniform provisions of the promissory notes at issue, BANA can only collect post-payment interest as permitted by HUD regulations incorporated into the note, and that BANA did not comply with those regulations. In particular, Plaintiff contends BANA did not comply with 24 C.F.R. § 203.558, which requires that, in response to an inquiry, request for payoff figures, or tender of pre-payment, BANA must make certain disclosures regarding post-payment interest "in a form approved by the [HUD/FHA] Commissioner." 24 C.F.R. § 203.558. Further, Plaintiff contends that because BANA did not comply with 24 C.F.R. § 203.558, which was incorporated into the note, BANA had no right to collect post-payment interest, and breached the note by doing so. Plaintiff also contends that by requiring Plaintiff and the class to pay interest they did not owe, Plaintiff and the class were harmed.

---

[1] The Court does not accept the Objection of L. David McBride because he failed to comply with this Court's objection requirements. Dkt. 126. Among other things, under this Court's Preliminary Approval Order and the Notice, an objection is not valid unless, prior to February 6, 2017, the objector provides "a statement, and documentation, demonstrating you are a Class Member" and "identification, with specificity, of each instance in which you or your counsel has objected to a class action settlement in the last five years." Dkt. 113 ¶ 16; Dkt. 132-1 at Ex. B. This Court's Preliminary Approval Order made clear that "[a]n objection will be barred if the requirements set forth herein are not followed." Dkt. 113 ¶ 16. Prior to February 6, 2017, Mr. McBride did not provide a sufficient statement or documentation demonstrating that he is a Settlement Class member, and he still has not identified each instance in which he has objected to a class action settlement in the last five years, if there are any such instances. Further, even if the Court considered the Objection, it would not change the Court's findings and holdings herein, as described in footnote 5 below.

2

Throughout the litigation, BANA has denied the claims of Plaintiff and the class and denied that it is liable for any of the claims asserted in the lawsuit. *See generally* Defendant's Motion to Dismiss. Dkt. 23.

## II.     The Settlement and Preliminary Approval

With the assistance of an independent, neutral mediator, the parties reached an agreement to resolve the claims of Plaintiff and the class, which is documented in the settlement agreement of November 2016 ("Settlement") and is on file with the Court. Dkt. 107-2. In general, that agreement provides for injunctive relief requiring for a period of three years certain disclosures mandated by 24 C.F.R. § 203.558 and for BANA to pay $29 million in exchange for the termination of this action with prejudice and a full release of claims relating to post-payment interest, as further defined and provided for in the Settlement.

The key components of the Settlement are the following:

(i)     BANA must pay $29 million, which will be used to compensate class members, as well as to pay any class representative service award and any award of attorneys' fees and expenses;

(ii)    For a period of three years, BANA must, in response to any inquiry, request for payoff figures or tender of prepayment, provide a disclosure relating to post-payment interest in a form that complies with 24 C.F.R. § 203.558;[2] and

(iii)   BANA must pay all fees and costs associated with providing notice to the class and administering the Settlement, which shall be in addition to the $29 million payment referenced above.

*See* Dkt. 107-2, §§ II & III. In exchange for the benefits described above, class members who do not opt out of the Settlement will release any claims they have against BANA "with respect to post-payment interest as well as any claim or issue relating to or arising out of any of the claims that were asserted in the *Dorado* Litigation." *Id.* § VII(C)(1).

After considering the Settlement and other written submissions provided by the parties, the Court entered an order preliminarily approving the settlement under Fed. R. Civ. P. 23(e), scheduling a final approval hearing, and directing the parties, through the settlement administrator, to mail an approved settlement notice to the Settlement Class members, publish a

---

[2] This injunctive relief pertains solely to the types of loans at issue in this case, i.e., FHA-insured loans dated prior to January 20, 2015.

specified notice in two national newspapers, and create and maintain a website dedicated to the Settlement. Dkt. 113. BANA has informed the Court that the administrator has now fully implemented that plan. Dkt. 115.

### III. Notice to the Settlement Class

BANA has provided notice of the Settlement and Settlement procedures to the Settlement Class in accordance with the Court's Preliminary Approval Order. Dkt. 115. As the Court held in the Preliminary Approval Order and reaffirms now, the method and form of notice to the Settlement Class constitutes the best notice practicable under the circumstances and provides individual notice to all Settlement Class members who can be identified through reasonable effort, in accordance with Rule 23(c)(2)(B).

Specifically, the notice contains a clear and concise statement, in plain, easily understood language, of the following: (i) the nature of the action; (ii) the definition of the Settlement Class certified; (iii) the Settlement Class claims and issues and BANA's denial of liability; (iv) the material terms of the Settlement; (v) that a Settlement Class member may enter an appearance if the member so desires; (vi) that the Court will exclude from the Settlement Class any member who timely requests exclusion; (vii) the time and manner for requesting exclusion; and (viii) the binding effect of a class judgment on Settlement class members under Rule 23(c)(3). Fed. R. Civ. P. 23(c)(2)(B). The Court finds that the notice provided to the Settlement Class members satisfies the requirements of due process.

### IV. CAFA Notice

The Settlement notice was sent to State and Federal officials pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715. Dkt. 115.

### V. Response to the Notice

The December 17, 2016 Preliminary Approval Order established the deadline for the submission of any requests for exclusion (opt-outs) or objections to the Settlement as February 6, 2017. 15 potential members of the Settlement Class (representing a mere 0.0026% of the Settlement Class) timely notified the administrator of their election to opt out of the Settlement. The opt-out statements are attached and filed under eal as Exhibit D to the Declaration of Robert C. Jinda, which is incorporated herein. No Settlement Class member properly objected to the

settlement, motion for attorneys' fees or motion for the class representative service award.[3] Further, no state or federal official notified of the Settlement pursuant to 28 U.S.C. § 1715 has objected. On March 23, 2017, the Court conducted a final hearing on the Settlement, as scheduled in the notice. No Settlement Class member appeared to object to the Settlement.

## VI. Final Approval of the Settlement

Before granting final approval to a class settlement, "the district court must find that it 'is fair, adequate and reasonable and is not the product of collusion between the parties.'" *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984) (quoting *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977)). Generally, a court should evaluate the settlement under the following factors: "(1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved." *Id.* at 986. Courts apply these *Bennett* factors in light of "the strong judicial policy favoring settlement as well as by the realization that compromise is the essence of settlement." *Id*.

### A. The Settlement Is Reasonable in Light of the Possible Recovery and Uncertainty of Outcome at Trial.

The first three *Bennett* factors that the Court considers on final approval are "(1) the likelihood of success at trial; (2) the range of possible recovery; [and] (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable . . . ." *Bennett*, 737 F.2d at 986.

Here, the Court recognizes that while the Plaintiff and her counsel have expressed confidence in their ability to prevail in this action, BANA has expressed confidence in its defenses and provided every indication that in the absence of a settlement, it would mount a

---

[3] *See supra* n.1. The Court notes that it, the Administrator and the parties received letters and other documents from Settlement Class members, which did not constitute proper objections meeting the requirements set out in the Court's Preliminary Approval Order. *See, e.g.,* Dkts. 118-21, 123. Rather, those letters sought information about the case, provided updated addresses or included other information that did not constitute an objection. Regardless, even if the Court accepted all of the "objections," it would not change the findings and conclusions reached in this Order.

5

zealous defense. The Court notes that there are risks to the Plaintiff that are inherent in continuing this litigation. BANA's potential opposition to class certification, potential motion for summary judgment, trial, and appeal all present risk that Plaintiff may not prevail, as well as costs in terms of time and expense.

In terms of recovery, the parties have shown that Settlement Class members in Group 1 will recover about 14% of their damages and Settlement Class members in Group 2 will recover about 46% of their damages. The Court finds that these recoveries, plus the injunctive relief, fall within the range of reasonableness previously approved by this Court and other courts in other class actions. *See, e.g.*, *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 325 (N.D. Ga. 1993) (approving class settlement equal to 12 to 15% of the potential recovery); *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 542-43 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990) (approving settlement equal to 3 to 5% of the per share recovery sought by plaintiffs and observing that "the fact that a proposed settlement amounts to only a fraction of the potential recovery does not mean the settlement is unfair or inadequate"); *Strube v. Amer. Equity Inv. Life Ins. Co.*, 226 F.R.D. 688, 698 (M.D. Fla. 2005) (approving settlement equal to about 2% of expert's damages calculation); *In re Currency Conversion Fee Antitrust Litig.*, No. 01MDL 1409, M-21-95, 2006 WL 3247396, at *6 (S.D.N.Y. Nov. 8, 2006) (approving settlement for "roughly 10-15%" of the allegedly illegal fees collected from the class); *In re Linerboard Antitrust Litig.*, 296 F. Supp. 2d 568, 581 & n.4 (E.D. Pa. 2003) (collecting cases approving settlements for low fractions of potential recovery); *see generally Stop & Shop Supermarket Co. v. SmithKline Beecham Corp.,* No. Civ. A. 03-4578, 2005 WL 1213926, at *9 (E.D. Pa. May 19, 2005) (Recovery of 11.4% of estimated single damages "compares favorably with the settlements reached in other complex class action lawsuits."). In fact, this Court has found that a settlement equal to "nine percent [of the estimated damages] or higher constitutes a fair settlement." *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d at 1346. *See also Newbridge Networks Sec. Litig.*, No. Civ. A. 94-1678, 1998 WL 765724, at *2 (D.D.C. Oct. 23, 1998) ("an agreement that secures roughly six to twelve percent of a potential trial recovery . . . seems to be within the targeted range of reasonableness"); *In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706, 715 (E.D. Pa. 2001) (noting that since 1995, class action settlements have typically "recovered between 5.5% and 6.2% of the class members' estimated losses").

Thus, the first three *Bennett* factors weigh in favor of final approval.

### B. The Settlement is Reasonable in Light of the Complexity, Expense, and Duration of the Litigation.

As a fourth factor, the Eleventh Circuit has directed district courts to consider the reasonableness of proposed class settlements in light of "the complexity, expense and duration of litigation." *Bennett*, 737 F.2d at 986. This factor also favors approval of the Settlement here. As already noted, class action litigation is an uncertain endeavor. The Settlement offers the class a certain and substantial recovery that will be distributed promptly. Therefore, the Settlement reasonably avoids further litigation. *See In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. at 326 (where unnecessary additional costs and delay are likely to be incurred absent a settlement, "it [is] proper to take the bird in the hand instead of a prospective flock in the bush").

### C. The Settlement is Reasonable in Light of the Substance and Amount of Opposition to the Settlement.

As a fifth factor, the Court must consider "the substance and amount of opposition to the settlement" after dissemination of notice. *Bennett*, 737 F.2d at 986. After direct mail notice and publication, not one Settlement Class member has properly objected to the Settlement per the Court's Preliminary Approval Order. Further, even if the Court considered the "objections," there are only four, along with one objection to the Motion for Attorneys' Fees made by an individual who is not a Settlement Class member. That only 4 of over 574,000 Settlement Class members objected weighs heavily in favor of settlement approval.

### D. The Settlement Is Reasonable in Light of the Stage of the Proceedings at Which It Was Achieved.

As a sixth factor, this Court must consider "the stage of proceedings at which the settlement was achieved." *Bennett*, 737 F.2d at 986. This factor also supports approval. The case settled after meaningful discovery occurred, which permitted Plaintiff to evaluate the strengths and any weaknesses in her claim. Further, BANA produced class member data, which allowed Plaintiff to determine the total amount of post-payment interest that Settlement Class members paid. Thus, Plaintiff and her counsel had sufficient information to determine that the Settlement is fair, adequate and reasonable.

### E. There is No Evidence of Collusion or Fraud.

The history of negotiations, use of an independent mediator to resolve this case, the terms of the Settlement, and the absence of objections all confirm that the Settlement is the result of

arms-length negotiations without any collusion. *See Date v. Sony Elecs., Inc.*, No. 07-15474, 2013 WL 3945981, at *12 (E.D. Mich. July 31, 2013) ("Courts respect the integrity of counsel and presume the absence of fraud or collusion in negotiating the settlement, unless evidence to the contrary is offered.").

Accordingly, the Court hereby approves the Settlement under Fed. R. Civ. P. 23(e), finding that the Settlement and its terms are fair, reasonable, and adequate.

### VII. Class Certification

For the reasons set forth below, the Court grants final certification of the proposed Settlement Class, for settlement purposes only, defined as follows:

> Any person who had a FHA-insured loan for which (i) the loan was originated between June 1, 1996 and January 20, 2015; (ii) one of the Releasees (as defined in Section VII(C)(1) of the Settlement Agreement)—as of the date the total amount due on the loan was brought to zero—was the lender, mortgagee, or otherwise held legal title to the note; (iii) one of the Releasees collected interest for any period after the total amount due on the loan was brought to zero (*i.e.*, BANA collected "post-payment interest"); and (iv) one of the Releasees collected post-payment interest during the statute of limitations period applicable for the loan as shown by Exhibit A.[4]

Dkt. 107-2 ¶ 1.

For purposes of settlement only, the Court finds that the proposed Settlement Class meets the requirements of Federal Rule of Civil Procedure 23(a) and 23(b)(3).

The numerosity requirement of Rule 23(a)(1) is satisfied as the Settlement class contains over 574,000 class members. Joinder of all of them would be impracticable.

The commonality requirement of Rule 23(a)(2) is satisfied because the Settlement Class members' claims present common questions of law and fact. Specifically, Plaintiff's and the Settlement Class members' allegations "involve a common course of conduct by the defendant" – namely whether BANA breached the borrowers' promissory note by providing an allegedly inadequate disclosure in violation of 24 C.F.R. §203.558 before collecting post-payment interest.

The typicality requirement of Rule 23(a)(3) is satisfied because Plaintiff Dorado, like the class members, contends that she was not provided with a disclosure regarding post-payment interest that complied with 24 C.F.R. § 203.558 in response to an inquiry, request for payoff figures, or tender of prepayment, and thus BANA breached its contract with her when it nonetheless collected post-payment interest.

---

[4] A copy of Exhibit A is attached at Dkt. 113.

The Court finds no conflict or other reason why the Plaintiff is not adequate to represent the Settlement Class, and the Court is satisfied that class counsel are adequate and competent to serve as Settlement class counsel.

For purposes of settlement only, the requirements of Rule 23(b)(3) are also satisfied. Rule 23(b)(3) requires that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23 (b)(3). In the settlement context, "[t]he Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). Unlike in the context of a litigated class action, when considering certifying a settlement class, the "district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial." *Id.* at 620. Thus, any manageability issues that might or might not arise at trial from proving liability, injury and damages on behalf of the class members are not relevant to the certification of a settlement class.

For example, alleged "variations in state laws are not obstacles to certification in the settlement context." *In re National Collegiate Athletic Assoc. Student-Athlete Concussion Injury Litig.*, 314 F.R.D. 580, 595 n.15 (N.D. Ill. 2016); *see also In re Mex. Money Transfer Litig.*, 267 F.3d 743, 747 (7th Cir. 2001) ("Given the settlement, no one need draw fine lines among state-law theories of relief."); *In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*, 789 F.Supp.2d 935, 974 (N.D. Ill. 2011) (differences in state law do not defeat predominance for the purposes of certifying a settlement class).

And, in the settlement class context, any alleged "individual issues relating to causation, injury and damage also disappear because the settlement's objective criteria provide for an objective scheme of compensation." *In re Diet Drugs,* 2000 WL 1222042, at *43 (E.D. Pa. Aug. 28, 2000); *Yaeger v. Subaru of America, Inc.*, 2016 WL 4541861, at *7 (D.N.J. Aug. 31, 2016) (holding, in approving class settlement, that issues relating to "the existence, causation, and cure of the problem are resolved in the settlement and need not be proved in individual cases.").

In this case, the Court finds that for purposes of settlement, the proposed class is "sufficiently cohesive to warrant adjudication by representation." *Id.* at 623.

9

In addition, settlement of these claims on a class-wide basis is superior to individual suits because this is a case in which the average class member's damages are a few hundred dollars and, therefore, an individual suit will cost a Settlement Class member more than he or she could recover.

## VIII.   Class Representative

The Court hereby makes the final appointment of Plaintiff Veronica Dorado as class representative. Plaintiff Dorado has vigorously and diligently prosecuted the claims of the Settlement Class.

## IX.   Class Counsel

In accordance with Rule 23(g), the Court hereby makes a final appointment of Bondurant, Mixson & Elmore, LLP, Epps, Holloway, DeLoach & Hoipkemier, LLC; and Bast Amron, LLP as class counsel. The Court has considered the work class counsel have done in identifying and investigating potential claims in the action; class counsels' experience in handling class actions, other complex litigation, and the types of claims asserted in this action; class counsels' knowledge of the applicable law and facts; and the resources that class counsel have committed to representing the Settlement Class. The conduct of class counsel in this case, the pleadings, and class counsels' declarations all provide evidence supporting the appointment of class counsel. Class counsel has fairly and adequately represented the interests of the Settlement Class.

## X.   Class Representative Service Award

Service awards for class representatives promote the public policy of encouraging individuals to undertake the responsibility of representative lawsuits. *Smith v. Res-Care, Inc.*, No. 3:13-5211, 2015 U.S. Dist. LEXIS 145266, at *28 (S.D. W. Va. Oct. 27, 2015). "While the Eleventh Circuit has not expressly set forth guidelines for courts to use in determining incentive awards, there is ample precedent for awarding incentive compensation to class representatives at the conclusion of a successful class action." *Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1218 (S.D. Fla. 2006) (quoting *Ingram v. Coca-Cola Co.*, 200 F.R.D. 685, 694 (N.D. Ga. 2001)).

Here, in light of the facts presented and given that there are no objections to the request, the class representative service award of **$10,000** to Veronica Dorado is hereby approved. That award shall be paid as directed in the Settlement.

## XI.     Attorneys' Fees and Expenses of Litigation

It is well established that when a representative party has created a "common fund" for or has conferred a "substantial benefit" upon an identifiable class, its counsel is entitled to attorneys' fees based upon the benefit obtained. *Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980); *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375 (1970); *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. at 349. "There is no hard and fast rule mandating a certain percentage of a common fund which may reasonably be awarded as a fee because the amount of any fee must be determined upon the facts of each case." *Camden I Condo. Ass'n v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991). The Eleventh Circuit articulated various factors that it regards as "appropriately used" in determining the proper amount of the fee award, including: (1) the time invested; (2) the complexity and difficulty of the issues; (3) the skills required to produce the results obtained; (4) preclusion of other employment; (5) customary fees in similar circumstances; (6) the contingent nature of plaintiffs' counsel's fees; (7) time limitations imposed by the circumstances; (8) the amount involved and the results achieved; (9) the skills of the attorneys; (10) the undesirability of the action; (11) the nature and length of the professional relationships with the class representatives and members; and (12) awards in similar cases. *Johnson v. Ga. Hwy. Express, Inc.*, 488 F.2d 714 (5th Cir. 1974).

The Court after fully considering each of the *Johnson* factors set forth above, and noting that there are no *valid* objections to the requested fee, hereby approves an expense award of **$63,844.52** and an attorneys' fee award of **28% or $8,120,000**, which shall be paid as directed in the Settlement.[5] The Court notes that the 28% fee is consistent with and, in many cases, exceeds

---

[5] Even if the Court considered the Objection of L. David McBride, it would not change the Court's findings and holdings with respect to the attorneys' fees award. Class counsel is entitled to the attorneys' fees requested and awarded herein based on this Court's application of the *Johnson* factors and because Mr. McBride's reliance on a lodestar analysis is misplaced. In *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1293 (11th Cir. 1999), the Eleventh Circuit held: "we have decided in this circuit that a lodestar calculation is not proper in common fund cases." And, in *Camden I Condominium Ass'n v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991), the court held that "attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class." Indeed, "[u]nder

awards this and other courts have provided in common fund cases like this one. *Camden I*, 946 F.2d at 774 ("The majority of common fund fee awards fall between 20% to 30% of the fund"); *In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1337 (S.D. Fla. 2001) (Middlebrooks. J.) (awarding 25% fee); *Walco Investments, Inc. v. Thenen*, 975 F. Supp. 1468, 1473 (S.D. Fla. 1997) (Moreno, J.) (awarding 15% fee in common fund case); *In re Carbon Dioxide Antitrust Litig.*, No. 940, 1996 WL 523534, at *5 (M.D. Fla. July 15, 1996) (awarding 18.5% fee); *Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 696 (N.D. Ga. 2001) (awarding 20% fee); *see also Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-1050 (9th Cir. 2002) (affirming 28% award where counsel obtained "exceptional" result); *see also In re Top Tankers, Inc. Sec. Litig.*, No. 06 CIV. 13761 (CM), 2008 WL 2944620, at *13 (S.D.N.Y. July 31, 2008) (collecting cases awarding fees between 25% and 28% of common funds); *Freeport Partners, L.L.C. v. Allbritton*, No. CIV.A. 04-2030 (GK), 2006 WL 627140, at *15 (D.D.C. Mar. 13, 2006) (awarding 22% fee because it was "fair and reasonable compensation for class counsel and more accurately reflects the value of the work they performed"); *In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*, 364 F. Supp. 2d 980, 1002 (D. Minn. 2005) (awarding 25% fee); *In re Lloyd's Am. Trust Fund Litig.*, No. 96 CIV.1262 RWS, 2002 WL 31663577, at *26 (S.D.N.Y. Nov. 26, 2002), *aff'd sub nom. Adams v. Rose*, No. 03-7011, 2003 WL 21982207 (2d Cir. Aug. 20, 2003) (awarding 28% fee); *Lazy Oil Co. v. Wotco Corp.*, 95 F. Supp. 2d 290, 323 (W.D. Pa. 1997), *aff'd sub nom. Lazy Oil Co. v. Witco Corp.*, 166 F.3d 581 (3d Cir. 1999) (awarding 28% fee).

## XII. Judgment To Be Entered.

The case now having settled as to all parties with Court approval, the Court hereby DIRECTS THE ENTRY OF FINAL JUDGMENT INCORPORATING THE TERMS OF THE SETTLEMENT AND DISMISSING THIS ACTION WITH PREJUDICE. The Court retains exclusive jurisdiction over all disputes arising from or relating to the Settlement, including any dispute concerning attorneys' fees. Except as otherwise expressly provided in the Settlement, all parties shall bear their own costs, fees, and expenses.

---

*Camden I*, courts in this Circuit regularly award fees based on a percentage of the recovery, without discussing lodestar at all." *Muransky v. Godiva Chocolatier, Inc.*, 2016 U.S. Dist. LEXIS 133695, at *8 (S.D. Fla. Sept. 28, 2016) (*quoting In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1363 (S.D. Fla. 2011).

**IT IS SO ORDERED.**

Dated: __March 23, 2017_____  _____

URSULA UNGARO
UNITED STATES DISTRICT JUDGE