UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.:  1:16-cv-21147-UU

VERONICA DORADO, individually and
on behalf of a class of similarly situated persons,

    Plaintiff,

v.

BANK OF AMERICA, N.A.,

    Defendant.

_____/

**CLASS COUNSEL'S MOTION TO DETERMINE ALLOCATION OF ATTORNEY
FEE AWARD TO FORMER COUNSEL AND FOR INSTRUCTIONS
FOR RELEASE OF FUNDS HELD BY CLASS ADMINISTRATOR**

Class Counsel Epps, Holloway, DeLoach & Hoipkemier, LLC ("EHDH") moves the Court for an order determining the fee award that Plaintiff Veronica Dorado's former attorneys, Werner & Associates, P.C. ("Werner Firm") and Fortson Bentley & Griffin, P.C. ("FBG"; together, "Former Counsel"), are entitled to for their legal work in this case prior to being discharged by the client.  In support of the motion, EHDH shows as follows:

**I.    INTRODUCTION**

    **a.    Former Counsel's Attorney Fee Claim**

EHDH seeks to resolve Former Counsel's interest in the Court's fee award [Dkt. 154 at 11] based on their work on the case prior to being discharged by Plaintiff Veronica Dorado. EHDH does not dispute the firms are entitled to a reasonable fee in *quantum meruit* for their

- 1 -

work on behalf of the class. EHDH has attempted to privately resolve the matter on several occasions. EHDH and Former Counsel reached an agreement to escrow the fee award at issue until Former Counsel's fee interests are resolved, and the class administrator is currently holding the fee due to disagreement over terms of an escrow agreement. Therefore, the Court's intervention is necessary to determine Former Counsel's fee interests, direct the class administrator's disbursement of the fee award, and close the matter. Accordingly, this motion seeks to resolve a single narrow issue: the value of the 65.6 hours that Former Counsel collectively worked in the case prior to being discharged by the client.

Where, as here, a claim is made to a share of class fee award, the Court's "significant supervisory role" under Rule 23 applies to "protect the continued integrity of its order approving fair and reasonable fees in the first instance."[1] That is, because Former Counsel claim a fee for work on behalf of the class, the Court must determine that their fees are fair and reasonable, as with the original fee award. Indeed, this Court expressly "retain[ed] exclusive jurisdiction over all disputes arising from or **relating to the Settlement**, including **any dispute concerning attorneys' fees**." [Dkt. 154 at 12] (emphasis added). And Former Counsel have agreed that any compensation they receive will be "with the approval and at the direction of the Court."

For these reasons, an order is needed from this Court allocating a fair share of the fee award to Former Counsel and directing the class administrator, which is currently holding the funds, as to how the funds should be disbursed.

b. <u>Determining a Fair Fee for Former Counsel's Work</u>

EHDH submits that a fair fee can be determined simply by awarding Former Counsel a

---

[1] *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1293 (11th Cir. 1999); *Marino v. Pioneer Edsel Sales, Inc.*, 349 F.3d 746, 753 (4th Cir. 2003).

**pro rata** share of the fee award based on their billable hours, i.e. dividing the number of hours worked by each firm by the total hours worked by all of Plaintiff's counsel, and multiplying the resulting percentage by the total fee award.  It is hard to see any reasonable objection to this approach as it would **equally value every hour billed by all Plaintiff's counsel and firms.**

Applying this approach to Former Counsel would work out as follows:

- **FBG: 6.7 hours / 1,100.7 total hours = 0.6% of fee award ($48,720.00).**[2]
- **Werner: 58.9 hours / 1,100.7 total hours = 5.36% of fee award ($435,232.00).**

It is that simple.  The Northern District of Georgia found this same proposal to be "reasonable" and entered a consistent order allocating fees among the same law firms in a related action.  *Felix v. SunTrust Mortgage Company, Inc.,* Case No. 2:16-CV-00066-RWS, Dkt. 50 (April 24, 2017).  Indeed, a reasonable argument could be made that the fair market value of Former Counsel's services is significantly less, and that Former Counsel should not receive the benefit of the same contingency multiplier as Class Counsel because they were terminated long before the contingency occurred.  But this is **less about the precise method** that the Court chooses to calculate the fees and **more about fairly and efficiently resolving the matter**.

Former Counsel may raise the specter of state court litigation with EHDH and its attorneys to distract from the only issue at hand: the value of their work to the client.  Other partnership or employment-related disputes are matters of state law for state court.  As addressed below, the amount of Former Counsel's fee award – and only that issue – is properly resolved by this Court within its ancillary or supplemental jurisdiction because (i) jurisdiction was expressly

---

[2] These percentages are calculated based on the total fee award of $8,120,000.  The result is a slightly higher than pro rata share of the fee to Former Counsel because it does not account for a confidential settlement paid to a class objector by Class Counsel.

- 3 -

reserved in the Final Order, and (ii) the fee award **uniquely implicates Federal Rule 23** and the integrity of the Final Order of this Court.

## II.     STATEMENT OF FACTS

### a. History of the Case

The underlying lawsuit involved a class action claim against Bank of America to recover "post-payment" interest to borrowers of FHA-insured mortgage loans. At the time the Complaint was filed on March 31, 2016, Plaintiff Veronica Dorado was represented by Adam Hoipkemier ("Hoipkemier") of the Werner Firm, Kevin Epps ("Epps") and Jeffrey DeLoach ("DeLoach") of FBG, and counsel from Bondurant Mixson & Elmore LLP ("BME") and Bast Amron LLP.

Hoipkemier left the Werner Firm and Epps and DeLoach left FBG in late June 2016. Together with former FBG attorney Kelly Holloway, Hoipkemier, Epps and DeLoach formed EHDH. Plaintiff Veronica Dorado elected to terminate FBG's and the Werner Firm's representations and retain Epps, Holloway & DeLoach, LLC (which shortly after became EHDH) to continue with her representation in the case.

Following pursuit of the claims by BME, EHDH, and Bast Amron, Plaintiff reached a mediated class settlement in principle with Bank of America for $29 million. On December 7, 2016, the Court entered an order preliminarily approving the settlement class and appointing Bondurant Mixon, EHDH and Bast Amron, LLP as class counsel [Dkt. 113]. On March 23, 2017, the Court entered an Order approving the settlement agreement, certifying a settlement class, and directing the entry of final judgment in favor of the class [Dkt. 154].

The March 23, 2017 Order granting final approval of the settlement provides for an attorney fee award of $8,120,000. [Dkt. 154 at 11]. As noted, that Order further provides that the Court "retains exclusive jurisdiction over all disputes arising from or **relating to the Settlement**, including **any dispute concerning attorneys' fees**." [Dkt. 154 at 12] (emphasis added).[3]

A dispute has arisen between EHDH and Former Counsel as to how a portion of the attorney fees awarded by this Court ($2,863,966.88) are to be allocated between them. The class administrator is currently holding the disputed funds pending further order or direction from the Court. Hoipkemier Decl., ¶ 13. On June 14, 2017, EHDH advised the class administrator of a dispute regarding its $2,863,966.88 share of the fee award and asked the administrator to hold that portion of the fee award in trust upon receipt of the funds from Bank of America. On that same day, the class administrator responded that "GCG will retain the disputed amount of $2,863,966.88 until further direction is provided by the Court." See Hoipkemier Decl., Ex. 3.

EHDH has attempted to resolve its dispute with Former Counsel. Former Counsel have chosen not to respond to EHDH's efforts since July 2016 to reach a resolution of their fee claims.

**b. Former Counsel's Legal Services**

During the approximately three months that the Werner Firm and FBG represented Ms. Dorado, Hoipkemier performed all of the substantive legal work on the case at the Werner Firm, and Epps and DeLoach performed all of the substantive work on the case at FBG. Hoipkemier Decl. ¶ 5; Epps Decl. ¶ 4.

---

[3] The Werner Firm and FBG were counsel of record in this action and did not object to the Court's retention of jurisdiction to address disputes concerning attorney fees arising from or relating to the settlement.

Hoipkemier maintained contemporaneous billing records for the time he spent on the case at the Werner Firm using the firm's Toggl billing program. Hoipkemier Decl. ¶ 6. Hoipkemier billed 58.9 hours on the case while with the Werner Firm. Id., ¶ 6. Likewise, Epps and DeLoach maintained contemporaneous billing records for the time they each expended on the case at FBG using the firm's Orion billing program. Epps, DeLoach and paralegal staff billed approximately 6.7 hours on the case while with FBG. Epps Decl. ¶ 5.

### III. MEMORANDUM OF LAW

#### a. This Court Has Jurisdiction To Determine Former Counsel's Fees

##### i. The Final Order Reserves Exclusive Jurisdiction Over Fee Disputes Arising From or Relating to the Settlement

This Court has jurisdiction to resolve Former Counsel's fee interests as it expressly retained jurisdiction to address such issues. Specifically, in Section XII of its Order granting final approval of the settlement, this Court specified that it "retains exclusive jurisdiction over all disputes arising from or **relating to the Settlement**, including **any dispute concerning attorneys' fees**." [Dkt. 154 at 12] (emphasis added).

##### ii. This Court has Ancillary Jurisdiction to Protect the Integrity of its Final Order and for Judicial Economy

This Court has ancillary jurisdiction to resolve Former Counsel's fee interests as a related matter necessary to the final disposition of this case. The doctrine of ancillary jurisdiction "recognizes federal courts' jurisdiction over some matters (otherwise beyond their competence) that are incidental to other matters properly before them." *Kokkonen v. Guardian Life Ins. Co. of Am*, 511 U.S. 375, 378 (1994). According to the Eleventh Circuit, ancillary jurisdiction allows the court to hear claims that bear a "**logical relationship** to the aggregate core of operative facts

which constitutes the main claim over which the court has an independent basis of federal jurisdiction." *Sweeney v. Athens Reg'l Med. Ctr.*, 917 F.2d 1560, 1565 (11th Cir. 1990) (emphasis added).

Exercising ancillary jurisdiction is "particularly appropriate" in the context of an attorney fee dispute "because courts have inherent jurisdiction to supervise the bar and to insure compliance with the reasonableness standard set forth in the attorneys' rules of ethics and professional responsibility." *Hogben v. Wyndham Int'l, Inc.*, No. 05-20944-Civ, 2007 U.S. Dist. LEXIS 55792, at *13 (S.D. Fla. Aug. 1, 2007). More specifically, in class actions under Rule 23, this Court has the responsibility to approve as fair and reasonable any attorney fee award for legal work performed on behalf of the class. *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1293 (11th Cir. 1999) ("In considering a fee award in the class action context, the district court has a significant supervisory role."). This supervisory authority extends beyond the entry of judgment to subsequent attorney fee claims to ensure the integrity of its Final Order:

> in a class action, whether the attorney's fees come from a common fund or are otherwise paid, the district court must exercise its inherent authority to assure that the amount and mode of payment of attorney's fees are fair and proper. Thus, **when a dispute concerning attorney's fees arises, the district court must have continuing jurisdiction to resolve the dispute in order to <u>protect the continued integrity of its order approving fair and reasonable fees in the first instance</u>.** Moreover, just resolution of the issues raised by attorney's fees disputes requires both an intimate working knowledge of what occurred during the course of the class action and a uniform dispute resolution process.

*Marino v. Pioneer Edsel Sales, Inc.*, 349 F.3d 746, 753 (4th Cir. 2003) (emphasis added). Former Counsel can hardly argue otherwise as Paragraph 4 of the co-counsel agreement provides: "Counsel's work for the Class will be compensated, if at all, **with the approval and at the**

**direction of the Court**…." Amended Co-Counsel Agmt., ¶ 4; Hoipkemier Decl., ¶ 9, Ex. 2 (emphasis added).

Federal courts have recognized that while attorneys' fee arrangements are "matters of primarily state contract law," ancillary jurisdiction covers this type of dispute because the "federal forum has a **vital interest in those arrangements** because they bear directly upon the ability of the court to dispose of cases before it in a **fair manner**." *Novinger v. E.I. DuPont de Nemours & Co.*, 809 F.2d 212, 217 (3rd Cir. 1987) (emphasis added); *Kalyawongsa v. Moffett*, 105 F.3d 283, 287-88 (6th Cir. 1997) ("we hold that although attorneys' fee arrangements are contracts under state law, the federal court's interest in fully and fairly resolving the controversies before it requires courts to exercise supplemental jurisdiction over fee disputes that are related to the main action.").

For example, *In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*, the court held that it had ancillary jurisdiction to resolve a fee dispute between two different law firms arising out of the allocation of fees in a class action.  One of the law firms contended that the court did not have subject matter jurisdiction, there being neither a federal question nor diversity of citizenship. 2011 WL 1044156, at *1 (SDNY 2011). In rejecting that argument and concluding that it had ancillary jurisdiction, the court pointed to, among other things, the fact that it had entered a judgment of dismissal of the class action that reserved jurisdiction to address attorney fee issues.  Id. at *2.  In doing so, the court held that "[o]ne of the best-established uses of ancillary jurisdiction is over proceedings concerning costs and attorney's fees." Id. at *1.  *See also, e.g. Maltman v. Consol. Rail Corp.*, No. 92-3381, 1993 U.S. App. LEXIS 11816, at *5-6 (6th Cir. May 11, 1993) ("In a suit in which the district court has federal question or diversity

jurisdiction, the district court also has ancillary jurisdiction over attorney fee disputes among non-diverse attorneys."); *Cassino v. Reichhold Chem., Inc.*, No. 91-35693, No. 91-35838, 1993 U.S. App. LEXIS 313, at *4 (9th Cir. Jan. 5, 1993) ("A district court's ancillary jurisdiction includes the jurisdiction to determine the division of fees among attorneys."); *Sweeney*, *supra*, 917 F.2d 1560, 1565 (11th Cir. 1990) (affirming order resolving law firm's motions to resolve fee dispute as within district court's ancillary jurisdiction).

Judicial economy also underpins ancillary jurisdiction. This Court is familiar with the underlying case and can decide Former Counsel's fee claim expeditiously on **this motion** as opposed to a **protracted lawsuit** in state court. *E.g.*; *Andrews v. Central Surety Insurance Co.*, 295 F. Supp. 1223, 1230 (D. S.C. 1969) ("It would be a useless waste of judicial time and costs for this court not to accept its responsibility and determine the issues herein presented."); *Grimes v. Chrysler Motors Corp.*, 565 F.2d 841, 843 (2d Cir. 1977) ("considerations of judicial economy, convenience and fairness to litigants will be furthered thereby.").

### iii.   This Court has Supplemental Jurisdiction Pursuant 28 U.S.C. § 1367(a)

Under 28 U.S.C. § 1367(a), the district court's supplemental jurisdiction is codified as follows:

> in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

"The constitutional 'case or controversy' standard confers supplemental jurisdiction over all state claims which arise out of a common nucleus of operative fact with a substantial federal

claim." *Parker v. Scrap Metal Processors, Inc.*, 468 F.3d 733, 743 (11th Cir. 2006). Generally, federal courts addressing the issue have concluded that fee disputes between counsel meet the "relatedness" test for supplemental jurisdiction. *E.g.* n. 2, *supra*.

A district court has authority to reserve jurisdiction over a settlement agreement in the final judgment; in such a case, independent basis for federal jurisdiction is unnecessary to exercise ancillary jurisdiction. *Kokkonen*, 511 U.S. at 381-82 ("we think the court is authorized to embody the settlement contract in its dismissal order (or, what has the same effect, retain jurisdiction over the settlement contract) if the parties agree. **Absent such action**, however, enforcement of the settlement agreement is for state courts, unless there is some independent basis for federal jurisdiction.") (emphasis added). Courts regularly exercise supplemental jurisdiction over fee disputes on this basis. *E.g. Alderman v. Pan Am World Airways*, 169 F.3d 99, 102 (2d Cir. 1999) (district court "properly exercised supplemental jurisdiction over the attorney fee claim arising from [law firms'] dispute."); *Baer v. First Options of Chicago*, 72 F.3d 1294, 1300 (7th Cir. 1995) (concluding that district court had supplemental jurisdiction over post-settlement lawyer-verses-lawyer fee dispute); *Clark v. Kick*, 79 F. Supp. 2d 747, 749 (S.D. Tex. 2000) ("A court has supplemental jurisdiction to hear fee disputes…between groups of attorneys, without regard to the jurisdiction basis of the original action, so long as the fee dispute relates to the original action.").

Accordingly, this Court has jurisdiction to resolve this Motion.

### b. Former Counsel's Fee Interest is in Quantum Meruit

Former Counsel represented Plaintiff Dorado under a contingency fee agreement. Because they were discharged prior to fulfillment of the contingency, Former Counsel have no basis for collecting a fee connected to that contingency.

When an attorney, before he has completely performed under a contingent fee contract, is discharged, his recovery should be limited only to quantum meruit. *See Schwanebeck v. Calzado*, 524 So. 2d 47, 479 (Fla. 3d DCA 1988) (reversing trial court's award of contingency fee because attorney was discharged prior to occurrence of contingency event, and thus was only entitled to quantum meruit recovery for the services he rendered prior to his discharge); *Barwick, Dillian & Lambert, P.A. v. Ewing*, 646 So. 2d 776, 778 (Fla. 3d DCA 1994) (same); *Manzini & Associates, P.A. v. Broward Sheriff's Office,* 976 So. 2d 688, 688 (Fla. 4th DCA 2008) ("An attorney who is employed under a contingency fee contract and discharged prior to the occurrence of the contingency is limited to a quantum meruit recovery").

The "measurement of fees" in quantum meruit consists of taking into account the reasonable hourly rate by the hours reasonably expended, as a starting point, as well as taking into consideration other relevant factors for a consideration of "the totality of the circumstances surrounding the professional relationship." *Ross v. Carnival Corp.*, 09-22834-CIV, 2011 WL 4527425, at *2 (S.D. Fla. Sept. 28, 2011); *Searcy, Denney, Scarola, Barnhart & Shipley, P.A. v. Poletz*, 652 So. 2d. 366, 368–69 (Fla. 1995) ("while the time reasonably devoted to the representation and a reasonable hourly rate are factors to be considered in determining a proper quantum meruit award, the court must consider all relevant factors surrounding the professional relationship…[such as] the fee agreement itself, the reason the attorney was discharged, actions

taken by the attorney or client before or after discharge, and the benefit actually conferred on the client may be relevant to that determination").

Here, Former Counsel's services were minimal in scope and duration. Accordingly, any fees awarded to them should be consistent with that.

### i. The Value of Former Counsel's Limited Legal Services can be Objectively Calculated From Their Billing Records

Former Counsel's billing records reflect limited work on the case. The Werner Firm's records reflect that Hoipkemier billed 58.9 hours on the case. Hoipkemier Decl., Ex. 1. To Hoipkemier's knowledge, no other Werner Firm attorney billed any time or performed any substantive work in the case. Id. Similarly, FBG's billing records reflect approximately 6.7 billable hours that Epps and DeLoach (and paralegal staff) worked on the case.[4] Epps Decl., Ex. 1. To Epps' knowledge, no other FBG attorneys performed any substantive work in the case. Id.

In the absence of an enforceable contingency fee agreement, an attorney seeking quantum meruit damages must show the number of hours the attorney worked on the matter, his hourly rate, or any other evidence sufficient to prove the reasonable value of the attorney's services. *Sohn*, 371 So. 2d at 1093 ("when an attorney, before he has completely performed under a contingent fee contract, is discharged, his recovery should be limited only to quantum meruit."); *Reed & Steven v. HIP Health Plan of Florida, Inc*., 81 F. Supp. 2d 1335, 1339 (S.D. Fla. 1999) ("upon discharge, an attorney who has a contingency relationship with his client has no right to collect his contingent fee.").

---

[4] As explained in his declaration, Epps recalls that he billed some time related to this case to a general matter, but those time records are in the possession of FBG. Epps has estimated that time at 3 hours and assumes FBG will provide corrective information if necessary.

EHDH respectfully submits that awarding a **pro rata** share of the fee based on Former Counsel's actual billable hours is more than reasonable because it **equally values** the time spent by all of the lawyers, a result that is especially appropriate here where the same lawyers performed all of the work in question, albeit at different firms.[5]

## CONCLUSION

For the foregoing reasons, EHDH respectfully requests that this Court enter an order: (i) determining the Werner Firm's share of the fee award for the 58.9 hours worked in the case; (ii) determining FBG's share of the fee award for the 6.7 hours worked in the case; (iii) authorizing and directing the class administrator (GCG) in possession of the disputed fees ($2,863,966.88) to deposit such funds into the court registry for the Southern District of Florida or providing further instructions to the class administrator for the disbursement of the disputed funds, and (iv) granting such other and further relief as this Court deems just and proper.

---

[5] EHDH has filed a separate Motion to Determine Allocation of Attorney Fee Award to Former Counsel arising out a separate class action involving Suntrust Mortgage, Inc. in the Northern District of Georgia, Case No. 2:16-CV-00066-RWS. Although the parties to that action are different than the one here, the issues in dispute, including the terms of the applicable Co-Counsel Agreements, are largely identical to those here. In that Suntrust case, the Court has granted EHDH's Motion [DE 50], and entered a judgment based on a quantum meruit award of attorney fees to the Former Counsel calculated as a pro rata share of the fee award in that case based on Former Counsel's actual billable hours relative to the total number of hours expended by all Plaintiff's counsel, finding "the proposal to be reasonable." [DE 50; DE 51]. Rather than file a response to EHDH's Motion requesting an allocation of fees, Former Counsel instead filed Motion to Reconsider, Vacate, and Set Aside the Order Allocating Attorney's Fees [DE 54]. EHDH has responded and that motion is ripe for ruling [DE 55].

Dated:  June 23, 2017                                  Respectfully submitted,

/s/ *Edward M. Mullins*
Edward M. Mullins, FBN 863920
REED SMITH LLP
1001 Brickell Bay Drive, Suite 900
Miami, FL 33131
Telephone: +1 786 747 0200
Facsimile: +1 786 747 0299
emullins@reedsmith.com
*Attorneys for EHDH*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed via electronic filing using the CM/ECF system with the Clerk of the Court on June 23, 2017, which sent e-mail notification of such filing to all CM/ECF participants, including:

*Attorneys for Plaintiffs Veronica Dorado, individually and
on behalf of a class of similarly situated persons:*

Adam Hoipkemier, adam@ehdhlaw.com
Jeffrey W. DeLoach, jwd@ehdhlaw.com
Kevin E. Epps, kevin@ehdhlaw.com
**Epps, Holloway, DeLoach & Hoipkemier, LLC**
1220 Langford Drive
Building 200, Suite 101
Watkinsville, GA  30677

Frederic J. Bold, Jr., bold@bmelaw.com
Michael B. Terry, terry@bmelaw.com
Naveen Ramachandrappa, ramachandrappa@bmelaw.com
Steven J. Rosenwasser, rosenwasser@bmelaw.com
**Bondurant Mixson & Elmore, LLP**
3900 One Atlantic Center
1201 West Peachtree Street
Atlanta, GA  30309

Jeremy Simons Korch, jkorch@bastamron.com
Brett Michael Amron, bamron@bastamron.com
**Bast Amron LLP**
One S.E. 3rd Avenue, Suite 1440
Miami, FL  33131

*Attorneys for Defendant Bank of America, N.A.*

Allen W. Burton *(Pro Hac Vice)*
aburton@omm.com
**O'Melveny & Myers, LLP**
Times Square Tower
7 Times Square
New York, NY  10036

Danielle Oakley *(Pro Hac Vice)*
doakley@omm.com
**O'Melveny & Myers, LLP**
610 Newport Center Drive, 17th Floor
Newport Beach, CA  92660

William K. Pao
wpao@omm.com
**O'Melveny & Myers, LLP**
400 South Hope Street
Los Angeles, CA  90071

Alex Joseph Sabo, II
asabo@bressler.com
**Bressler Amery & Ross**
200 East Las Olas Boulevard, Suite 1500
Ft. Lauderdale, FL  33301